SCHWABE WILLIAMSON & WYATT
Richard K. Hansen, OSB #832231
1211 SW Fifth Avenue, Suite 1900
Portland, Oregon 97204
Phone: (503) 222-9981
Email: rhansen@schwabe.com

LATHAM & WATKINS LLP
Robert M. Howard, CSB #145870
*(Pro Hac Vice pending)*
Jeffrey P. Carlin, CSB #227539
*(Pro Hac Vice pending)*
12670 High Bluff Drive
San Diego, California 92130
Phone: (858) 523-5400
Emails: robert.howard@lw.com
jeffrey.carlin@lw.com

KING & SPALDING LLP
Donald F. Zimmer, Jr., CSB #112279
*(Admitted Pro Hac Vice)*
Nicholas D. Kayhan, CSB #129878
*(Admitted Pro Hac Vice)*
Alexandra J. Kennedy-Breit, CSB #316590
*(Admitted Pro Hac Vice)*
101 Second Street, Suite 2300
San Francisco, California 94105
Phone: (415) 318-1200
Emails: fzimmer@kslaw.com
nkayhan@kslaw.com
akennedy-breit@kslaw.com

*Attorneys for Defendants Monsanto Company, Solutia Inc., and Pharmacia LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| STATE OF OREGON by and through Ellen F. Rosenblum, Attorney General for the STATE OF OREGON,<br><br>Plaintiff<br>v.<br><br>MONSANTO COMPANY; SOLUTIA, INC.; PHARMACIA LLC.; and DOES 1 – 10,<br><br>Defendants. | CASE NO. 3:18-cv-00238-AC<br><br>**DEFENDANTS' MOTION TO DISMISS STATE OF OREGON'S COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Assigned to Judge Mosman_________<br>File Date: January 4, 2018<br>Trial Date: N/A |

TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 4

A. PCBs Were Highly Valued For Their Safety and Fire Resistance Qualities ........ 4

B. Oregon's Discharges and Impairment of State Trust Resources ........ 7

C. Oregon's Interference with the Portland Harbor Litigation and Allocation ........ 8

III. ARGUMENT ........ 9

A. Standard of Review ........ 9

B. Oregon's Trespass, Public Nuisance, Purpresture, and Unjust Enrichment Claims Are Ill-Disguised Product Liability Claims and Must Be Dismissed ........ 10

1. Courts Across the Country Prohibit Tort Claims Disguised as Product Liability Claims ........ 10

2. Oregon Law Instructs that Plaintiff's Public Nuisance, Purpresture, Trespass and Unjust Enrichment Claims Cannot Proceed as Pled ........ 14

C. Oregon Fails to Allege a Product Defect ........ 15

D. If Allowed to Proceed as a "Product Liability Civil Action," Oregon's Damages Claims Are Time-Barred ........ 15

1. Oregon's Trespass, Public Nuisance, Purpresture, and Unjust Enrichment Claims Are Subject to the OPLS ........ 15

2. Oregon's Claims Are Barred by the Two-Year Statute of Limitations ........ 16

3. Oregon's Claims Are Also Barred by the Eight-Year Statute of Repose ........ 18

E. Oregon Fails to State a Claim for Public Nuisance (First Claim for Relief) ........ 20

1. Oregon Cannot Plead a Public Nuisance *Per Se* ........ 20

2. Oregon Cannot Plead Facts Showing Causation for Public Nuisance ........ 21

F. Oregon Fails to State a Claim for Purpresture (Second Claim for Relief) ........ 23

G. Oregon Fails to State a Claim for Trespass (Third Claim for Relief) ........ 25



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

TABLE OF CONTENTS

Page


1. Oregon Lacks Standing to Assert Trespass .... 25

2. Placing a Product into the Stream of Commerce Does Not Give Rise to a Trespass Claim .... 26

H. Oregon Fails to State a Claim for Common Law Indemnity (Fourth Claim for Relief) .... 27

I. Oregon Fails to State a Claim for Unjust Enrichment (Fifth Claim for Relief) .... 29

1. Oregon Cannot Plead It Performed Defendants' Duty .... 30

2. Oregon's Alleged Damages Are Not Recoverable Through Restitution .... 32

J. CERCLA Preempts Oregon's State Common Law Claims .... 33

K. The Port's Prayer for Attorney Fees Should Be Dismissed .... 35

IV. CONCLUSION .... 35




LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Adkins v. Nestle Purina PetCare Co.*,
973 F. Supp. 2d 905 (N.D. Ill. 2013) .......... 13

*Alabama v. Ala. Wood Treating Corp.*,
2006 U.S. Dist. LEXIS 37372 (S.D. Ala. June 6, 2006) .......... 33

*Appleton Papers Inc. v. George A. Whiting Paper Co.*,
901 F. Supp. 2d 1113 (E.D. Wis. 2012) .......... 33, 34

*Arch Chemicals, Inc. v. Radiator Specialty Co.*,
727 F. Supp. 2d 997 (D. Or. 2010) .......... 27, 28

*Arlandson v. Hartz Mountain Corp.*,
792 F. Supp. 2d 691 (D.N.J. 2011) .......... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 9

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.*,
79 F. Supp. 2d 1219 (W.D. Wash. 1999)
*aff'd,* 241 F.3d 696 (9th Cir. 2001) .......... 22, 23

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) .......... 9

*Bayer v. Neiman Marcus Grp., Inc.*,
861 F.3d 853 (9th Cir. 2017) .......... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 9

*Brown v. Abbott Labs., Inc.*,
2011 WL 4496154 (N.D. Ill. Sept. 27, 2011) .......... 13

*City of Bloomington v. Westinghouse Electric Corp.*,
891 F.2d 611 (7th Cir. 1989) .......... 13

*City of Merced Redevelopment Agency v. Exxon Mobil*,
2015 2015 WL 471672 (E.D. Cal. 2015) .......... 11

*City of Perry, Iowa v. Procter & Gamble Co.*,
188 F. Supp. 3d 276 (S.D.N.Y. 2016) .......... 11, 13

*City of Philadelphia v. Lead Indus. Ass'n*,
1992 WL 98482 (E.D. Pa. Apr. 23, 1992) .......... 15



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

TABLE OF AUTHORITIES

Page

*City of Portland v. Monsanto Co.*,
2017 WL 4236583 (D. Or. Sept. 22, 2017) ........ 12, 35

*City of San Jose v. Monsanto Co.*,
2016 WL 4427492 (N.D. Cal. Aug. 22, 2016) ........ 29

*City of Spokane v. Monsanto Co.*,
2016 WL 6275164 (E.D. Wash. Oct. 26, 2016) ........ 23

*Corrie v. Caterpillar, Inc.*,
403 F. Supp. 2d 1019 (W.D. Wash. 2005)
*aff'd*, 503 F.3d 974 (9th Cir. 2007) ........ 22, 23

*Cyprus Amax Minerals Co. v. TCI Pac. Commc'ns, Inc.*,
2013 WL 6238485 (N.D. Okla. Dec. 3, 2013) ........ 33

*Ditto v. Monsanto Co.*,
867 F. Supp. 585 (N.D. Ohio 1993),
*aff'd*, 36 F.3d 1097 (6th Cir. 1994) ........ 15

*E.I. DuPont De Nemours & Co. v. United States*,
460 F.3d 515 (3d Cir. 2006) ........ 34

*Feikema v. Texaco*, Inc.,
16 F.3d 1408 (4th Cir. 1994) ........ 35

*Hinds Investments, L.P. v. Team Enterprises, Inc.*,
2010 WL 796844 (E.D. Cal. Mar. 5, 2010),
*aff'd*, 654 F.3d 846 (9th Cir. 2011) ........ 27

*Hinds Invs., L.P. v. Angioli*,
445 F. App'x 917 (9th Cir. 2011) ........ 11

*Matter of Reading Co.*,
115 F.3d 1111 (3d Cir. 1997) ........ 34

*Miller v. Ford Motor Co.*,
857 F.3d 1016 (9th Cir. 2017) ........ 19

*Nat'l Interstate Ins. v. Beall Corp.*,
2015 WL 1137440 (D. Or. Mar. 11, 2015) ........ 10

*Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*,
319 F. Supp. 2d 1059 (C.D. Cal. 2003),
*on reconsideration in part* (June 5, 2003) ........ 32



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

TABLE OF AUTHORITIES

Page


*NCR Corp. v. George A. Whiting Paper Co.*,
768 F.3d 682 (7th Cir. 2014) .......... 33, 34

*New Mexico v. GE*,
467 F.3d 1223 (10th Cir. 2006) .......... 25, 34, 35

*Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*,
596 F.3d 112 (2d Cir. 2010) .......... 33

*Oregon Laborers-Empr's Health & Welfare Tr. Fund v. Philip Morris Inc.*,
185 F.3d 957 (9th Cir. 1999) .......... 31

*Oregon Teamster Employers Tr. v. Hillsboro Garbage Disposal, Inc.*,
2013 WL 2423795 (D. Or. June 4, 2013),
*aff'd*, 800 F.3d 1151 (9th Cir. 2015) .......... 32

*PMC, Inc. v. Sherwin-Williams Co.*,
151 F.3d 610 (7th Cir. 1998) .......... 35

*Port of Portland v. Monsanto Co.*,
2017 WL 4236561 (D. Or. Sept. 22, 2017) .......... 12, 26

*Providence Health Plan v. McDowell*,
385 F.3d 1168 (9th Cir. 2004) .......... 10

*Redevelopment Agency v. BNSF Ry. Co.*,
643 F.3d 668 (9th Cir. 2011) .......... 11

*San Diego Unified Port Dist. v. Monsanto, et al*,
2016 WL 5464551 (S.D. Cal. Sept. 28, 2016) .......... 23, 25

*Smith v. Merial Ltd.*,
2011 WL 2119100 (D.N.J. May 26, 2011) .......... 13

*Starr v. Dow Agrosciences LLC*,
339 F. Supp. 2d 1097 (D. Or. 2004) .......... 18

*Team Enters., LLC v. W. Inv. Real Estate Trust*,
647 F.3d 901 (9th Cir. 2011) .......... 11

*Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*,
984 F.2d 915 (8th Cir. 1993) .......... 12

*Town of Lexington v. Pharmacia Corp.*,
133 F. Supp. 3d 258 (D. Mass. 2015) .......... 15, 23




LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

TABLE OF AUTHORITIES

Page

*Town of Lexington v. Pharmacia Corp.*,
133 F. Supp. 3d 258 (D. Mass. Sept. 23, 2015) .......... 23

*Town of Westport v. Monsanto Co.*,
2015 WL 1321466 (D. Mass. Mar. 24, 2015) .......... 13, 22, 23

*Town of Westport v. Monsanto Co.*,
2017 WL 1347671 (D. Mass. Apr. 7, 2017),
*aff'd*, 877 F.3d 58 (1st Cir. 2017) .......... 15

*United States v. Parnell*,
2016 WL 1369392 (M.D. Ga. Apr. 6, 2016) .......... 32

*Whittlestone, Inc. v. Handi-Craft, Co.*,
618 F.3d 970 (9th Cir. 2010) .......... 9

*Williams Elecs. Games, Inc. v. Garrity*,
366 F.3d 569 (7th Cir. 2004) .......... 32

*Williams v. Invenergy*,
2016 WL 1725990 (D. Or. Apr. 28, 2016) .......... 21

*Williams v. Invenergy, LLC*,
2014 WL 7186854, (D. Or. Dec. 16, 2014) .......... 20

*Witt Co. v. RISO, Inc.*,
948 F. Supp. 2d 1227 (D. Or. 2013) .......... 25

*XDP, Inc. v. Watumull Properties Corp.*,
2004 WL 1103023 (D. Or. May 14, 2004) .......... 33

**STATE CASES**

*Border v. Indian Head Indus., Inc.*,
101 Or. App. 556 (1990) .......... 19

*Bradbury v. Teacher Standards and Practices Comm'n*,
328 Or. 391 (1999) .......... 16

*Brusco Towboat Co. v. State, By & Through Straub*,
30 Or. App. 509 (1977),
*aff'd in part, rev'd in part*, 284 Or. 627 (1978) .......... 24, 25

*City of Eugene v. Garrett*,
87 Or. 435 (1918) .......... 24

*City of Modesto Redevelopment Agency v. Superior Court*,
119 Cal. App. 4th 28 (Cal. Ct. App. 2004) .......... 11



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

TABLE OF AUTHORITIES

Page

*City of Molalla v. Coover*,
192 Or. 233 (1951) .......... 24, 25

*City of San Diego v. U.S. Gypsum Co.*,
30 Cal. App. 4th 575 (Cal. Ct. App. 1994) .......... 11

*City of Toledo v. Sherwin-Williams Co.*,
2007 WL 4965044 (Ohio Com. Pl. Dec. 12, 2007) .......... 12

*Cty. of Santa Clara v. Atl. Richfield Co.*,
137 Cal. App. 4th 292 (Cal. Ct. App. 2006) .......... 11

*Domingo v. Anderson*,
325 Or. 385 (1997) .......... 35

*Eclectic Inv., LLC v. Patterson*,
357 Or. 25 (2015)
*opinion adhered to as modified on reconsideration*, 357 Or. 327 (2015) .......... 28

*Erickson Air-Crane Co. v. United Technologies Corp.*,
303 Or. 281 (1987) .......... 19

*Fulton Ins. v. White Motor Corp.*,
261 Or. 206 (1972) .......... 27, 28, 31

*Godoy v. EI du Pont de Nemours & Co.*,
319 Wisc. 2d 91 (2009) .......... 15

*Grimstad v. Knudsen*,
283 Or. App. 28 (2016),
*review denied*, 361 Or. 350 (2017) .......... 30, 31

*Gronn v. Rogers Constr., Inc.*,
221 Or. 226 (1960) .......... 21

*Htaike v. Sein*,
269 Or. App. 284 (2015) .......... 15

*Hume v. Rogue River Packing Co.*,
51 Or. 237 (1907) .......... 24

*In re Firearm Cases*,
126 Cal. App. 4th 959 (Cal. Ct. App. 2005) .......... 11

*In re Lead Paint Litig.*,
191 N.J. 405 (2007) .......... 12



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

TABLE OF AUTHORITIES

Page

*Jaqua v. Nike, Inc.*,
125 Or. App. 294 (1993) ........ 30

*Kambury v. DaimlerChrysler Corp.*,
185 Or. App. 635 (2003) ........ 14

*Larisa's Home Care, LLC v. Nichols-Shields*,
362 Or. 115 (2017) ........ 29, 30, 31

*Lytle v. Payette-Oregon Slope Irr. Dist.*,
175 Or. 276 (1944) ........ 30, 32

*Marinelli v. Ford Motor Co.*,
72 Or. App. 268 (1985) ........ 14

*Martin v. Reynolds Metals Co.*,
221 Or. 86 (1959) ........ 25

*New Jersey Dept. of Envtl. Prot. v. Exxon Mobil Corp.*,
2008 WL 4177038 (N.J. Super. Ct. Law Div. Aug. 29, 2008) ........ 26

*New York v. Sturm Ruger & Co.*,
309 A.D. 2d 91 (N.Y. App. Div. 2003) ........ 22

*Owings v. Rosé*,
262 Or. 247 (1972) ........ 28

*Perry v. Hernandez*,
265 Or. App. 146 (2014) ........ 35

*Safeco Ins. Co. of Am. v. Russell*,
170 Or. App. 636 (2000) ........ 28

*Savelich Logging Co. v. Preston Mill Co.*,
265 Or. 460 (1973) ........ 27

*Shasta View Irrigation Dist. v. Amoco Chems. Corp.*,
329 Or. 151 (1999) ........ 16, 19

*Simonsen v. Ford Motor Co.*,
196 Or. App. 460 (2004) ........ 16

*State v. Broyles*,
228 Or. App. 264 (2009) ........ 16

*State v. Lead Indus., Ass'n, Inc.*,
951 A.2d 428 (R.I. 2008) ........ 12



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

TABLE OF AUTHORITIES

Page

*State v. Norris*,
182 Or. App. 547 (2002) .... 13, 23

*Sweet v. Irrigation Canal Co.*,
198 Or. 166 (1953) .... 25

*Tum-A-Lum Lumber v. Patrick*,
95 Or. App. 719 (1989) .... 30

*Wentworth & Irwin v. Sears*,
153 Or. 201 (1936) .... 31

*Wessinger v. Mische*,
71 Or. 239 (1914) .... 24

*Weston v. Camp's Lumber & Bldg. Supply, Inc.*,
205 Or. App. 347 (2006) .... passim

*Weston v. Camp's Lumber & Bldg. Supply, Inc.*,
206 Or. App. 761 (2006) .... 14

*Yanting Zhang v. Superior Court*,
57 Cal. 4th 364 (2013) .... 32

**FEDERAL STATUTES AND REGULATIONS**

15 U.S.C. § 2605 .... 5

42 U.S.C. § 9613 .... 34

42 U.S.C. § 9614 .... 17, 34

F.R.C.P. § 12(b)(6) .... passim

40 C.F.R. § 300 .... 17

40 C.F.R. § 761.30 .... 6

40 C.F.R. Part 761 .... 6

37 Fed. Reg. 2,431 (Feb. 16, 1972) .... 4

44 Fed. Reg. 31,514 (May 31, 1979) .... 6

47 Fed. Reg. 37,342 (Aug. 25, 1982) .... 6

48 Fed. Reg. 124 (Jan. 3, 1983) .... 6



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

TABLE OF AUTHORITIES

Page

49 Fed. Reg. 28,154 (July 10, 1984) .......... 6

50 Fed. Reg. 29,170 (July 17, 1985) .......... 6

53 Fed. Reg. 24,206 (June 27, 1988) .......... 6

53 Fed. Reg. 24,210 (June 27, 1988) .......... 6

55 Fed. Reg. 49,043 (Nov. 26, 1990) .......... 6

65 Fed. Reg. 75,179 (Dec. 1, 2001) .......... 17

66 Fed. Reg. 17,602 (Apr. 2, 2001) .......... 6

72 Fed. Reg. 7,136 (Feb. 14, 2007) .......... 4

**STATE STATUTES AND REGULATIONS**

ORS 12.250 .......... 16

ORS 272.030 .......... 26

ORS 272.040 .......... 26

ORS 30.900 .......... 14, 15, 26, 27

ORS 30.905 .......... passim

ORS 30.920 .......... 26

ORS 448.265 .......... 20, 21

ORS 468B.005 .......... 20

ORS 468B.025 .......... 20, 21

**OTHER**

Cong. Research Serv., Federal Land Ownership Overview and Data (Mar. 3, 2017) .......... 26

Nat'l Fire Prot. Ass'n, Nat'l Elec. Code, Art. 501-2(a)-(b) (1971) .......... 4

Restatement (First) of Restitution § 1 cmt. a (1937) .......... 31

Restatement (Third) of Restitution and Unjust Enrichment § 22 (2011) .......... 30

Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. d (2011) .......... 31



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7-1

In compliance with Local Rule 7-1, counsel for Defendants Monsanto Company, Solutia Inc., and Pharmacia LLC (collectively "Defendants") certify that they conferred in good faith by telephone conference on February 12, 2018, with counsel for Plaintiff State of Oregon ("Oregon" or "the State"), but the Parties were unable to resolve this dispute without the assistance of the Court.

## DEFENDANTS' MOTION TO DISMISS OREGON'S COMPLAINT [F.R.C.P. 12(b)(6)]

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move for an order dismissing with prejudice Oregon's Complaint. This Motion is made on the grounds that the Complaint's First through Fifth Claims for Relief fail to state any basis for relief and fail to comply with the proper pleading standards under Federal Rules of Civil Procedure 8(a), 9(f), and 12(b)(6). This Motion is supported by (i) the accompanying Memorandum of Law, (ii) pleadings and records on file in the case, (iii) matters of which this Court may take judicial notice (including the accompanying Request for Judicial Notice in Support of Defendants' Motion, and exhibits thereto), (iv) Oregon's Complaint, (v) other documents specifically referenced in or integral to the Complaint, and (vi) such arguments as may be presented to the Court. Defendants request oral argument on this Motion.

Dated: February 12, 2018

SCHWABE WILLIAMSON & WYATT

By /s/ Richard K. Hansen
Richard K. Hansen, OSB #832231
rhansen@schwabe.com

*Attorneys for Defendants Monsanto Company, Solutia Inc., and Pharmacia LLC*

**MEMORANDUM OF LAW**

## I. INTRODUCTION

The State of Oregon brings a poorly disguised product liability action against three alleged successors to a former U.S. manufacturer of polychlorinated biphenyls ("PCBs") that left the marketplace four decades ago and never manufactured or released the product within the State.[1] Instead, the State advances public nuisance, purpresture, trespass, equitable indemnity, and unjust enrichment claims based upon the product's alleged innate characteristics, performance, warnings (or lack thereof), broad utilization by third-parties as a component in other products, and the "presence of [] PCBs [the product] in Oregon's waterways and sediments, on Oregon's lands, and throughout Oregon's natural environment. . . ." Compl., ¶¶ 4-6, 15, 31-36, 39, 40-85, 108-09, 111-13, 117, 119-20, 123-27, 138-40.

The Complaint is fundamentally flawed. First, it assumes, incorrectly, that any and all concentrations of PCBs found in Oregon are actionable, requiring state-wide removal by the *presumed* manufacturer. The U.S. Environmental Protection Agency ("EPA") rigorously determines safe levels of PCBs in the environment, and Oregon is under no state-wide remediation order, nor is one threatened. Second, the Complaint is built upon a sweeping false assumption that "PCB contamination throughout Oregon is the result of the actions of one company: Monsanto." Compl., ¶ 4. This view of the world assumes all detectible levels of PCBs found in Oregon (including those in PCB-containing products lawfully used today) were manufactured by a single source prior to 1977 and none thereafter. That is demonstrably false. PCBs have been manufactured continuously since 1977, both inside and outside of U.S., as the byproduct of chemical processing by numerous manufacturers, and they are found in many household products produced today. Third, for manufacturing that occurred 4-8 decades ago, the Complaint assumes, again incorrectly, that anything known scientifically about PCBs in later

---

[1] "Old Monsanto" allegedly made PCBs commercially from 1929 (more correctly, 1935) to 1977, and the three defendants, Monsanto Co., Solutia Inc., and Pharmacia LLC, are alleged to be successors or indemnitors of "Old Monsanto." Pharmacia LLC is the alleged successor to "Old Monsanto."



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

stages of production before federal regulation in the 1970s was known on the first day of production by the product manufacturer in the 1930s. *Compare* Compl., ¶¶ 77-78 *with* ¶ 50. Fourth, despite the sweeping state-wide allegations in the Complaint, the federal government administers over 50% of the land in Oregon and has jurisdiction over many of the resources that the State contends here are uniquely its to administer. And fifth, the Complaint plainly seeks to avoid the application of Oregon's Product Liability Statute ("OPLS") by labeling its product-related grievances for long-terminated production between 1935-77 as a public nuisance, purpresture, trespass, and unjust enrichment subject to no limitations periods whatsoever.

The Complaint's problems do not end there. It also disregards the federal and state statutory processes already underway addressing actionable levels of PCBs at discrete Oregon sites, at which Defendants are *not* liable parties under federal or state Superfund statutes. Instead of focusing on the *actual dischargers*, and by failing to allege *any actionable level of PCBs* and exceedance thereof anywhere in the Complaint, the State seeks to upend Oregon law by radically expanding liability and circumventing existing product liability and cleanup regimes.

Nowhere are the potential adverse effects of the State's strategy more apparent than at the Portland Harbor Superfund Site ("Site"). The State concedes that it is a liable party at the Site, through the Oregon Department of State Lands ("ODSL") and the Oregon Department of Transportation ("ODOT"). Compl., ¶¶ 97-98. The State is participating in an extended, non-judicial allocation effort with approximately 100 other parties to resolve liability for the Site. Nevertheless, the State seeks recovery from Defendants of the exact same response costs at issue in the Site allocation, thus threatening to upend a nearly 20-year effort by EPA, the State, and other potentially responsible parties ("PRPs"), to find and hold accountable actual dischargers. In 2010, this Court determined in *Arkema v. Anderson Roofing Co., Inc. et al.*, Case No. 3:09-cv-00453-PK, that litigation regarding Site response costs should not proceed during the pendency of the non-judicial allocation. That stay continues today.

The State's Complaint should be dismissed in its entirety because of the following irreparable, foundational legal defects:



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

***First***, the State's tort claims for damages are ill-disguised and impermissibly pled product liability claims because the gravamen of its tort claims is that "Old Monsanto" put a defective product into the stream of commerce from the 1930s to 1977.

***Second***, if allowed to proceed under the OPLS, the State's damages claims are time-barred under the statutes of limitation and repose.

***Third***, the State's public nuisance claim fails because (i) there is no Oregon statute under which the State's allegations would qualify as a *per se* public nuisance; and (ii) by ignoring proximate causation, the State asks this Court to depart from accepted common law tort principles and create a limitless and causation-free "super tort" against a former product manufacturer that is not alleged to have discharged PCBs anywhere in Oregon.

***Fourth,*** the State's attempt to resurrect the ancient tort of purpresture fails because it does not allege that Defendants physically constructed an encroachment on State lands or waters without State authorization (nor could it), and the mere presence of trace chemicals in State waters and/or sediment has never been held to constitute purpresture.

***Fifth,*** the State's trespass claim fails because the placement of a product into the stream of commerce does not amount to a cognizable intrusion onto the State's public trust lands, and the State does not have the right to exclusively possess such lands.

***Sixth***, the State's claim for common law indemnity fails because it has not discharged a judgment or liability to a third party, it does not and cannot allege that the State and Defendants share a common duty to the same third party, and its allegations do not support that the State's obligations should be discharged instead by Defendants.

***Seventh***, the State fails to demonstrate that Defendants have been legally enriched through a "benefit"; rather, it seeks restitution for what are in fact damages premised on tort, and thus fails to sufficiently allege an unjust enrichment claim.

***Eighth***, CERCLA preempts the State's claims to the extent they interfere with ongoing CERCLA actions, including the non-judicial allocation underway at the Site.



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

## II. STATEMENT OF FACTS[2]

Oregon falsely contends that the "PCB contamination throughout Oregon is a result of the actions of one company: Monsanto[,]" Compl., ¶ 4, and paints a misleading portrait of Old Monsanto's past manufacture of PCBs that ignores the utility of PCBs,[3] applicable federal regulations including the Toxic Substances Control Act ("TSCA") and CERCLA, *and* Oregon's own prominent role in causing the conditions of which it now complains. Moreover, the State never alleges any applicable action levels for PCBs or the basis for any obligation (for anyone) to remove PCBs from wildlife or across the state. In reality, the contamination of Oregon's lands, waters, and resources by myriad sources and pollutants has been the subject of extensive governmental inquiry for decades.

### A. PCBs Were Highly Valued For Their Safety and Fire Resistance Qualities

PCBs are industrial chemicals that were highly valued by the government and other third-party users for their non-flammability, chemical stability, superior electrical insulating properties, and safety.[4] In the late 1920s, General Electric invented and patented the use of PCBs in electrical transformers and capacitors[5] as a means of materially reducing the risk of workplace and residential fires. The National Electric Code and other government and industry codes commonly mandated the use of PCB-containing fluids in various electrical applications.[6]

From the 1930s onward, PCBs were manufactured around the world by many entities,

---

[2] The history of PCBs, Oregon's discharges, and the ongoing CERCLA remedial actions at Portland Harbor are included to highlight the broader factual context underlying the Complaint. Dismissal of Oregon's Complaint is proper exclusively on the legal grounds set forth herein, regardless of whether the Court takes judicial notice of some, or all, of these records.

[3] *See* U.S. Dept. of Agric., Interdepartmental Task Force on PCBs, "PCBs and the Environment," at 11-13 (May 1972) ("PCBs and the Environment"), RJN, Ex. 1.

[4] *See id.* at 11-13.

[5] *See e.g.*, U.S. Patent No. 1,931,373 (issued Oct. 17, 1933), at 1:8-20.

[6] *See* Nat'l Fire Prot. Ass'n, Nat'l Elec. Code, Art. 501-2(a)-(b) (1971); *see also* 37 Fed. Reg. 2,431 (Feb. 16, 1972) (adopting federal safety codes requiring certain PCB-containing equipment in the workplace); 72 Fed. Reg. 7,136 (Feb. 14, 2007) (explaining historical adoption of the National Electric Code).



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

and used for various different purposes.[7] International PCB manufacturing is estimated to have comprised 50% of worldwide production during the period when Old Monsanto manufactured PCBs.[8] Old Monsanto did not sell PCB-containing products or equipment directly to consumers. Rather, Old Monsanto, among others, provided PCBs to industrial manufacturers in the U.S. Those industrial manufacturers then determined how PCBs would be used in their product, to whom the product would be sold, and how the product would be used. Old Monsanto never controlled how PCB-containing products would be used, serviced, or disposed of by customers.

In the early 1970s (not 1930s, *contra* Comp., ¶ 5), with better testing available, questions arose about the persistence of PCBs in the environment and potential associated health and environmental risks. But a broad consensus existed that certain PCB uses were essential in electrical equipment and components to prevent catastrophic fires and explosions, and substantial benefits remained to warrant their continued use.[9] Congress therefore authorized EPA to promulgate regulations governing the continued use of PCBs when such use would "not present an unreasonable risk of injury to health or the environment."[10] EPA promulgated detailed

---

[7] PCBs were, and in some instances still are, manufactured internationally by various corporations, *see* PCBs and the Environment, *supra* note 3, at 5, RJN, Ex. 1.

It has also been recognized for decades that PCBs continue to be generated today as by-products of various other manufacturing and chemical processes, including the production of dyes, titanium, and colored pigments. *See* Washington Dept. of Ecology, PCB Chemical Action Plan, at 14, 60 (Feb. 2015), RJN, Ex. 2 (estimating 100,000 lbs. of non-Monsanto PCBs are produced annually in the U.S., and determining roughly half of all annual releases of PCBs in the neighboring state of Washington are actually "current generation" PCBs, produced after 1979); Michigan Dept. of Env. Quality Water Bureau, Total Maximum Daily Load for Polychlorinated Biphenyls for the Pere Marquette River Watershed including Pere Marquette Lake, Mason, Oceana, and Newaygo Counties, at 6 (July 18, 2008), RJN, Ex. 3; New York Academy of Sciences, Pollution Prevention and Management Strategies for Polychlorinated Biphenyls in the New York/New Jersey Harbor, at 65-67 (Feb. 2005), RJN, Ex. 4; Spokane River Regional Toxics Task Force, Comprehensive Plan to Reduce Polychlorinated Biphenyls (PCBs) in the Spokane River, at 20 (Nov. 29, 2016), RJN, Ex. 5 (90 million pounds of PCB-containing colored pigments are produced or imported into the U.S. annually, with an estimated additional 1.1 tons of annual inadvertently produced PCBs).

[8] *See* PCBs and the Environment, *supra* note 3, at 5, RJN, Ex. 1.

[9] *See, e.g.*, *id.* at 4.

[10] *See, e.g.*, 15 U.S.C. § 2605(e)(2)(B).



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

regulations under TSCA,[11] allowing certain uses of PCBs, which were deemed essential for the national economy.[12] EPA's regulations allowed (*and continue to allow today*) the use of PCBs in electrical transformers, electromagnets, switches, and voltage regulators, natural gas pipeline systems, capacitors, and circuit breakers.[13] EPA also allowed certain indefinite unenclosed uses of PCBs, such as in carbonless copy paper.[14] EPA-authorized uses were supported by clear evidence "that the risk from [the] activity is *not unreasonable*."[15] Likewise, EPA concluded that the "use, processing, and distribution in commerce of products with less than 50 ppm PCB concentration will not generally present an unreasonable risk of injury to health or the environment."[16]

EPA's regulations also establish procedures for addressing and remediating PCB spills.[17] EPA determined that the cleanup of spills with PCB concentrations of less than 50 ppm is not required, because such concentrations "will not generally present an unreasonable risk of injury to health or the environment."[18] When cleanup is required, EPA's regulations provide that PCBs need not be eliminated to undetectable levels.[19] For decades, these EPA requirements have

---

[11] *See generally* 40 C.F.R. Part 761. *See also* 44 Fed. Reg. 31,514 (May 31, 1979); 47 Fed. Reg. 37,342 (Aug. 25, 1982); 48 Fed. Reg. 124 (Jan. 3, 1983); 50 Fed. Reg. 29,170 (July 17, 1985); 53 Fed. Reg. 24,206 (June 27, 1988); 55 Fed. Reg. 49,043 (Nov. 26, 1990); 66 Fed. Reg. 17,602 (Apr. 2, 2001).

[12] 47 Fed. Reg. 37,342, 37,342 (Aug. 25, 1982) ("An immediate ban of these uses [of PCBs] would not only have disrupted electric service but would also have caused severe economic hardship for the public and United States industry.").

[13] 40 C.F.R. §§ 761.30(a), (h), (i), (l) & (m).

[14] 40 C.F.R. § 761.30(f); 44 Fed. Reg. 31,514, 31,535 (May 31, 1979) ("[B]ecause the potential PCB exposure and risks to human health or the environment are negligible, EPA has concluded that this activity *does not present an unreasonable risk* and is authorizing the continued use of existing PCB carbonless copy paper.") (emphasis added).

[15] 44 Fed. Reg. 31,514, 31,529 (May 31, 1979) (emphasis added).

[16] 40 C.F.R. §§ 761.1(f), 761.3; 53 Fed. Reg. 24,206, 24,210 (June 27, 1988). EPA also granted numerous express exemptions, allowing certain otherwise prohibited PCB uses to continue for certain periods of time based upon findings that those uses would not present unreasonable risks. *See, e.g.*, 49 Fed. Reg. 28,154, 28,162 (July 10, 1984).

[17] 40 C.F.R. §§ 761, Subpts. G, N, O & S.

[18] *Id.* at § 761.120(a); 53 Fed. Reg. 24,210 (June 27, 1988).

[19] *See* 40 C.F.R. § 761.125.



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

governed disposal, management, and remediation of PCB-containing materials.

**B. Oregon's Discharges and Impairment of State Trust Resources**

Oregon's own activities and discharges have contributed significantly to the contamination of which it complains. Tellingly, EPA has named *Oregon* through ODOT and ODSL, *not Defendants*, as a major PRP for the biggest remediation in the State (at Portland Harbor), asserting that ODOT is responsible for "hazardous substances in storm water draining into the Portland Harbor from ODOT-owned highways and bridges," and ODSL is liable for "releases of hazardous substances by third parties on submerged and submersible leased lands owned by the State and administered by [O]DSL."[20]

In fact, ODOT discharges storm water to at least 28 outfalls in Portland Harbor alone, including at least three outfalls owned by ODOT.[21] PCBs have been identified as one of the contaminants of concern at many of these outfalls, and can enter highway runoff through de-icing residues, maintenance products (such as paints), caulking and fillers.[22] ODOT's ongoing use of PCB-containing materials in open applications such as PCB-containing de-icing materials contributes to the discharge of various chemicals, including PCBs, to Oregon's lands and waterways.[23]

ODOT's discharges are not limited to Portland Harbor. As of 2016, ODOT managed more than 1,000 storm water facilities, including over 600 storm water outfalls.[24] In 2009, the

---

[20] Letter from James Paul, Director, Oregon Dep't of State Lands, to The Hon. Lew Frederick, Co-Chair, and The Hon. Brad Witt, Co-Chair, Joint Comm. on Ways & Means Subcomm. on Nat. Res., at 1 (Mar. 17, 2017), RJN, Ex. 6.

[21] Herrera Environmental Consultants, Inc., Stormwater Assessment for Source Control Evaluation, ODOT Facility in Portland Harbor, at 2-1 (Sept. 22, 2015), RJN, Ex. 7.

[22] *Id.* at 5-3, 5-4.

[23] *Id.* at 4-9 (discussing ODOT's application of anti-icing and deicing chemicals); *see also* City of Spokane, Wastewater Management Department, "PCBs in Municipal Products," at B-1–B-2 (July 21 2015), RJN, Ex. 8 (summarizing product sampling results for PCBs, including de-icer); Stormwater Assessment for Source Control Evaluation, *supra* note 21, at 4-9, RJN, Ex. 7 (ODOT found PCBs in bridge coatings on two bridges at Portland Harbor, but "is not pursuing source control measures on bridge paint").

[24] ODOT, Geo-Environmental, Geo-HydroEngineering, Stormwater, at 2, RJN, Ex. 9; ODOT, Stormwater Outfall Inventory Management, at 2, RJN, Ex. 10.



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

Northwest Environmental Defense Center issued a 60-day notice letter to ODOT, alleging significant storm water permit and Clean Water Act violations, and deficiencies in ODOT's storm water treatment and control systems.[25] The resulting settlement required ODOT to invest *$10 million* to install improved storm water treatment and control systems, and to undertake additional monitoring and studies to assess the impact of storm water on water quality.[26] The settlement also led the Oregon Department of Environmental Quality ("ODEQ") to "disagree[] with ODOT's [subsequent] characterization of 'continual compliance' with the MS4 permit."[27] The Complaint is silent on the State's own impact to public trust lands.

**C. Oregon's Interference with the Portland Harbor Litigation and Allocation**

Portland Harbor is the subject of a decades-long investigation, remediation, litigation, and allocation process, pursuant to the federal Superfund (CERCLA) law, including a 2009 litigation brought by the Lower Willamette Group ("LWG") against dozens of entities alleging contribution and cost recovery claims under CERCLA and the Oregon Superfund Act, and an ongoing non-judicial allocation for the Site, in which Oregon is participating.[28] Contrary to its earlier federal court position in 2009 that litigation would risk derailing the CERCLA investigation and cleanup,[29] Oregon now *proliferates* the already staggering volume of litigation

---

[25] Settlement Agreement Between Northwest Environmental Defense Center and ODOT, at 1 (2009), http://media.oregonlive.com/environment_impact/other/ODOTsettlement.txt, RJN, Ex. 11.

[26] *Id.* at 2-5; Letter from L. Alexandra Liverman, Portland Harbor Stormwater Coordinator, ODEQ, to Paul Wirfs, Geo-Environmental Section Manager, ODOT, at 3 (Sept. 4, 2015) ("ODEQ Portland Harbor Report Comments"), RJN, Ex. 12.

[27] ODEQ Portland Harbor Report Comments, at 3, *supra* note 26, RJN, Ex. 12.

[28] Proposed Amicus Curiae's Memorandum in Support of Motion for Leave of Court to File Amicus Memorandum, *Arkema v. Anderson Roofing Co., Inc. et al.*, No. 3:09-cv-00453-PK ("*Arkema*") (D. Or. Dec. 2, 2009), ECF No. 250, at 1-2 (Oregon "is a participant . . . in the ongoing . . . allocation process concerning the Portland Harbor Superfund Site," and has an "interest . . . in maximizing the opportunities for a settlement of the issues of potential liability . . . outside of litigation."), RJN, Ex. 13; Amicus Memorandum in Support of Referral to Alternative Dispute Resolution and the Issuance of a Stay, *Arkema* (D. Or. Dec. 2, 2009), ECF No. 273, at 4 ("*Arkema* Amicus Memorandum") (describing how litigation could potentially derail Site investigation and cleanup), RJN, Ex. 14.

[29] *See Arkema* Amicus Memorandum, *supra* note 28, at 4 RJN, Ex. 14.



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

in an effort to recover through a different pathway the same costs at issue in the nearly decade-long allocation proceedings.

## III. ARGUMENT

### A. Standard of Review

A complaint must contain sufficient facts, which, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); F.R.C.P. 8(a), 9(f). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must include more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Id.* (citation omitted). Courts need not accept as true a plaintiff's (1) conclusory allegations, (2) legal conclusions, or (3) allegations that contradict documents attached to or incorporated by reference into the complaint or matters properly subject to judicial notice. *Id.* A court should dismiss a complaint under Rule 12(b)(6) where there is a lack of a cognizable legal theory or insufficient facts alleged to sustain a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (as amended), *overruled in part on other grounds*. A court may dismiss prayers for relief under Rule 12(b)(6) where the complaint lacks sufficient factual support for the relief sought or where the relief is otherwise unavailable as a matter of law. *See Whittlestone, Inc. v. Handi-Craft, Co.*, 618 F.3d 970, 974 (9th Cir. 2010).



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

**B. Oregon's Trespass, Public Nuisance, Purpresture, and Unjust Enrichment Claims Are Ill-Disguised Product Liability Claims and Must Be Dismissed**[30]

1. <u>Courts Across the Country Prohibit Tort Claims Disguised as Product Liability Claims</u>

The gravamen of Oregon's Complaint, and the basis for every one of its damages claims, is that (1) Old Monsanto "manufacture[d] PCBs for widespread commercial use[,]" Compl., ¶¶ 4, 5, 15, 31, 36, 39, 40, 108, 117, 120, 123, 138; (2) PCBs were defective when they left Old Monsanto's hands, Compl., ¶¶ 5, 31-35, 43-49; (3) Old Monsanto knew of the product's defects no later than 1937, but failed to warn users, the government, and consumers, Compl., ¶¶ 6, 50-85, 112-113, 125, 127; and (4) PCBs' alleged defects harm or interfere with the lands and resources that Oregon owns or holds in trust, Compl., ¶¶ 109, 111, 119, 124-126, 139. These allegations sound in product defect and failure to warn, and are incorporated into each of Oregon's five claims. Additionally, Oregon's Complaint is devoid of *any* allegation of tortious conduct by Old Monsanto (or Defendants) after PCBs were last sold in the late 1970s, confirming that Oregon's alleged torts all sound in product liability alone. *See Nat'l Interstate Ins. v. Beall Corp.*, 2015 WL 1137440, at *3 (D. Or. Mar. 11, 2015) ("[I]f the acts, omissions, or conditions complained of existed or occurred before or at the date on which the product was first purchased for use or consumption, the claim is properly considered a product liability civil

[30] Defendants do not assert that Oregon's common law indemnity claim is a disguised product liability civil action under ORS 30.900. However, Oregon's unjust enrichment claim, ostensibly seeking restitution, Compl., ¶ 143, is quintessentially a claim for damages, and like the State's other tort claims, is an ill-disguised product liability action. *See* Compl., ¶¶ 137-42 (alleging Defendants are liable for "significant remedial action costs" incurred by the State and to be incurred to "monitor, investigate, and abate" PCBs); *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 866 (9th Cir. 2017) ("[M]onetary restitution is appropriately characterized as legal in actions that simply seek to impose general personal liability on a defendant for money allegedly owed to the plaintiff."). When a plaintiff seeks reimbursement of costs and expenses incurred due to a defendant's alleged unlawful conduct—as is the case with Oregon's restitution claim, *see* Compl., ¶¶ 137-43—"such monetary relief is properly characterized as compensatory damages, the classic form of legal relief." *Bayer*, 861 F.3d at 866; *see Providence Health Plan v. McDowell*, 385 F.3d 1168, 1174 (9th Cir. 2004) ("[M]onetary reimbursement . . . [vis-à-vis] the imposition of personal liability for the benefits that they conferred upon respondents" constitutes monetary damages—a legal remedy—"regardless of [plaintiff's] chosen label.").

action, governed by [ORS] 30.900-30.927."). Product liability is the predominant characteristic of Oregon's trespass, public nuisance, purpresture, and unjust enrichment claims.

Courts across the country have determined that ill-disguised product liability actions cannot proceed as alleged here. For example, courts in California have repeatedly held that "the law of nuisance is not intended to serve as a surrogate for ordinary products liability." *City of Modesto Redevelopment Agency v. Superior Court*, 119 Cal. App. 4th 28, 39 (Cal. Ct. App. 2004); *Redevelopment Agency v. BNSF Ry. Co.*, 643 F.3d 668, 674, n.2 (9th Cir. 2011) (California courts "recogni[ze] that manufacturing and distribution activity may be better addressed through the law of products liability."). When a California municipality seeks *damages for public nuisance from a product manufacturer,* it is construed as an improper end-run around product liability laws. *See City of San Diego v. U.S. Gypsum Co.*, 30 Cal. App. 4th 575, 586-87 (Cal. Ct. App. 1994) (rejecting city's public nuisance damages claim for the deterioration of asbestos-containing materials in its buildings because it amounted to "a products liability action in the guise of a nuisance action[,]" and warning that, if such claims were permitted, "nuisance 'would become a monster that would devour in one gulp the entire law of tort.'") (citation omitted); *Cty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 311, 313 (Cal. Ct. App. 2006) (dismissing cities' non-representative claim for *damages* against lead-paint manufacturers for hazards caused by lead paint because it was "much more like a product[] liability" action).[31] Here too, Oregon's tort claims for damages "sound in products liability, for which 'the law of nuisance is not intended to serve as a surrogate[,]'" and must be dismissed. *Hinds Invs., L.P. v. Angioli*, 445 F. App'x 917, 919 (9th Cir. 2011) (citation omitted).[32]

---

[31] Cases before and after the 2006 *Santa Clara* decision underscore that the decision neither rewrote California law nor has it been extensively followed since. *See BNSF Ry. Co.*, 643 F.3d at 674; *Team Enters., LLC v. W. Inv. Real Estate Trust*, 647 F.3d 901, 912 (9th Cir. 2011); *Hinds Invs., L.P.*, 445 F. App'x at 921; *City of Merced Redevelopment Agency v. Exxon Mobil*, 2015 2015 WL 471672, at *20-25 (E.D. Cal. 2015); *In re Firearm Cases*, 126 Cal. App. 4th 959, 991 (Cal. Ct. App. 2005).

[32] The absence of any Oregon state court precedent allowing such claims alone counsels in favor of dismissal. *See City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 291 (S.D.N.Y. 2016) ("Perry's nuisance claim fails as a matter of law[] [because] [t]he parties do not

Courts in the Ninth Circuit and elsewhere overwhelmingly agree.[33] Some courts have dismissed disguised product liability claims outright, while others recharacterize the claims as product liability statutory or common law claims, allowing such claims to proceed to the extent the allegations are sufficient and the claims are not time-barred. In *In re Lead Paint Litig.*, the New Jersey Supreme Court ordered dismissal of plaintiffs' public nuisance claim. 191 N.J. 405, 436 (2007). Like the State's allegations here, "[t]he central focus of [the] plaintiffs' complaints [wa]s that defendants were aware of dangers associated with lead … and failed to warn of those dangers." *Id.* at 437. The court found these allegations fell "squarely within" New Jersey's product liability act, reasoning the New Jersey product liability act "encompasses both the product at issue here and the harms plaintiffs attribute to that product." *Id.*

Other courts have determined such claims to be subsumed by the state's product liability statute and thus subject to (and barred by) the respective statutes of limitation and repose. *See e.g.*, *City of Toledo v. Sherwin-Williams Co.*, 2007 WL 4965044 (Ohio Com. Pl. Dec. 12, 2007). Yet other courts have determined such public nuisance claims against manufacturers fall within the scope of common law product liability, but they have dismissed the claim for failing to meet all required elements. *See, e.g.*, *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 456-57 (R.I. 2008). *See* Attachment 1 for a summary of cases rejecting public nuisance claims against manufacturers as disguised product liability claims.[34]

---

cite, and the Court is not aware of, any cases applying Iowa law that recognize a nuisance claim arising out of the sale or use of a product as opposed to the use of property."); *see also Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993) ("Tioga has not presented us with any North Dakota cases extending the application of the nuisance statute to situations where one party has sold to the other a product that later is alleged to constitute a nuisance. . . . [T]he absence of analogous cases supports an inference that the statute was neither intended nor has it been understood to extend to cases such as the present case.").

[33] In *Port of Portland v. Monsanto Co.*, 2017 WL 4236561, *9 (D. Or. Sept. 22, 2017) ("*Port of Portland*"), this Court found that it "[could not] determine at th[at] stage what the Oregon Supreme Court would do" because the parties did not "brief the question of how an Oregon Supreme Court would decide the [issue]" or "provide[] any substantial argument regarding national trends on this issue[.]" *See also City of Portland v. Monsanto Co.*, 2017 WL 4236583, at *1 (D. Or. Sept. 22, 2017) ("*City of Portland*") (same).

[34] Defendants are not aware of any case nationwide evaluating whether a purpresture sounds in product liability. However, purpresture is a species of public nuisance, and it should be closely



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

Likewise, courts in other jurisdictions routinely dismiss unjust enrichment claims, like the State's, finding that state's product liability statute is the exclusive avenue of relief for claims based on product defect or failure to warn. *See, e.g.*, *Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 911, 916-19 (N.D. Ill. 2013) (dismissing plaintiffs' unjust enrichment claims as improperly pled product liability actions in plaintiffs' home states of Washington, Connecticut, New Jersey, Louisiana, and Tennessee).[35] Courts are also clear that a plaintiff cannot reclassify product liability claims by alleging only economic injury (*e.g.*, costs incurred) and the remedy sought for the economic loss (*e.g.*, "restitution" of money spent) merely "to obviate the [product liability statute]." *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 703 (D.N.J. 2011) (citation omitted); *Smith v. Merial Ltd.*, 2011 WL 2119100, at *4 (D.N.J. May 26, 2011) (applying Tennessee law). "[R]egardless of how a claim is pleaded, where the *core issue* is the harmfulness of the product [to plaintiff or its property], the claim must be pleaded as a [product liability] claim." *Arlandson*, 792 F. Supp. 2d at 703; *Smith*, 2011 WL 2119100, at *4. This is especially true here, where plaintiff's unjust enrichment claim is premised on the same allegations as its tort claims for damages—all of which fall within the product liability statute. *See, e.g.*, *Brown v. Abbott Labs., Inc.*, 2011 WL 4496154, at *5 (N.D. Ill. Sept. 27, 2011) (dismissing unjust enrichment and tort claims as subsumed by the product liability statute).

Trespass claims against product manufacturers premised on the manufacture and sale of a product have met a similar fate. *See City of Bloomington v. Westinghouse Electric Corp.*, 891 F.2d 611, 615 (7th Cir. 1989) (dismissing trespass claim because "courts do not impose trespass liability on sellers for injuries caused by their product after it has left the ownership and possession of the sellers."); *Town of Westport v. Monsanto Co.*, 2015 WL 1321466, at *5 (D. Mass. Mar. 24, 2015) ("That Defendants sold PCBs with the knowledge they would be used in building materials is not analogous to the entry required even for negligent trespass.").

---

analogized as such. *See State v. Norris*, 182 Or. App. 547, 553 (2002) ("one of the earliest recognized forms of public nuisance with which equity has interfered is that of purpresture").

[35] *See also* Attachment 2 for a summary of cases rejecting unjust enrichment claims against manufacturers as disguised product liability claims.



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

2. Oregon Law Instructs that Plaintiff's Public Nuisance, Purpresture, Trespass and Unjust Enrichment Claims Cannot Proceed as Pled

Oregon has a well-developed and comprehensive statute for product liability actions. *See* ORS 30.900, *et seq.*[36] In Oregon, "the definition of a 'product liability civil action' in [ORS 30.900] is *not limited to* negligence, strict liability, or breach of implied warranty claims," *Weston v. Camp's Lumber & Bldg. Supply, Inc.*, 205 Or. App. 347, 356, *opinion adhered to as modified on reconsideration*, 206 Or. App. 761 (2006) (emphasis added), and instead "embraces *all theories* a plaintiff can claim in an action based on a product defect," *see e.g.*, *Kambury v. DaimlerChrysler Corp.*, 185 Or. App. 635, 639 (2003) (emphasis added).

*Weston* is the seminal Oregon decision addressing whether tort claims based on the manufacture or sale of a defective product falls within the OPLS. There, the court found "[p]laintiffs' trespass claim, at its core, is based on one predominant fact: that the [defendants] delivered a defective product to plaintiffs without warning plaintiffs of the defect." *Weston*, 205 Or. App. at 360-61 (similarly holding plaintiff's negligence claims fell within the OPLS). As such, the alleged trespass claim was held not to be a trespass, but rather a product liability civil action under ORS 30.900. *Id.*[37]

*Weston* instructs that if these claims are properly pled and not time-barred, they could proceed as "product liability civil actions" under the OPLS. However, as set forth in Sections III.C and D *infra*, Oregon's trespass, public nuisance, purpresture, and unjust enrichment claims are neither properly pled nor timely and should be dismissed.

---

[36] ORS 30.900 defines a "product liability civil action" as a "civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of: (1) Any design, inspection, testing, manufacturing or other defect in a product; (2) Any failure to warn regarding a product; or (3) Any failure to properly instruct in the use of a product."

[37] There is no basis on which to conclude that the Oregon Supreme Court would rule differently. This Court agrees. *Port of Portland*, 2017 WL 4236561, at *7 ("Although the Weston test has not been formally adopted by the Oregon Supreme Court, I believe the court would adopt that test if presented with a similar case.").



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

### C. Oregon Fails to Allege a Product Defect

Oregon alleges that PCBs are "defective" because of their characteristics—they are toxic, cannot be contained, and persist in the environment. Compl., ¶¶ 5, 31-35, 43-49. While no Oregon court has addressed whether the innate chemical characteristics of molecules constitute "defects" sufficient to state a claim for negligence or product liability, courts in other jurisdictions have recognized that these exact allegations touch upon only the molecular characteristics *inherent to PCBs themselves*, not any design defect.[38] Where, as here, the alleged defect is a characteristic inherent to the chemical product itself, various jurisdictions hold that the product is not "defective" as a matter of law. Accordingly, Oregon's multi-claim "product liability civil action" should be dismissed on this additional basis.

### D. If Allowed to Proceed as a "Product Liability Civil Action," Oregon's Damages Claims Are Time-Barred

#### 1. Oregon's Trespass, Public Nuisance, Purpresture, and Unjust Enrichment Claims Are Subject to the OPLS

Any "[p]roduct liability civil action" is subject to the statutes of limitation and repose in ORS 30.905. *See Weston*, 205 Or. App. at 358 ("[I]f the gravamen of the claim is in fact one that is based on a product defect or failure as defined by ORS 30.900, ORS 30.905 will apply regardless of the characterization of the theory given to it by the plaintiff."); *see also Htaike v. Sein*, 269 Or. App. 284, 294 (2015) ("the 'gravamen or the predominant characteristics' of an action, not the plaintiff's election" determines the applicable limitation period for unjust

---

[38] *See Town of Lexington v. Pharmacia Corp.*, 133 F. Supp. 3d 258, 266, 270 (D. Mass. 2015) (rejecting town's argument that PCBs are defective because they persist in the environment and cannot be contained—"A plaintiff does not meet its burden of demonstrating a design defect by alleging that 'an entire class of products is inherently dangerous.'"); *Town of Westport v. Monsanto Co.*, 2017 WL 1347671, at *5 (D. Mass. Apr. 7, 2017), *aff'd*, 877 F.3d 58 (1st Cir. 2017) (same); *Ditto v. Monsanto Co.*, 867 F. Supp. 585, 593-94 (N.D. Ohio 1993), *aff'd*, 36 F.3d 1097 (6th Cir. 1994) (dangers inherent to PCBs as a class of products is insufficient to establish defective design); *see also Godoy v. EI du Pont de Nemours & Co.*, 319 Wis. 2d 91, 115 (2009) (product toxicity is insufficient to establish defect as a matter of law); *City of Philadelphia v. Lead Indus. Ass'n*, 1992 WL 98482, at *3 (E.D. Pa. Apr. 23, 1992) (same).



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

enrichment claims).[39] As set forth in Section III.B, *supra*, the gravamen of Oregon's trespass, public nuisance, purpresture, and unjust enrichment claims is product defect or a failure to warn. Thus, the limitation periods in ORS. 30.905 bar each of the State's claims for damages.

2. <u>Oregon's Claims Are Barred by the Two-Year Statute of Limitations</u>

Oregon courts dismiss claims at the Rule 12(b)(6) stage that run afoul of the limitation periods set forth in ORS 30.905. *See, e.g.*, *Simonsen v. Ford Motor Co.*, 196 Or. App. 460, 462, 472 (2004). The limitations period applicable to Oregon's product liability claims is two years and has now run here *multiple* times. *See* ORS 30.905(1).[40]

The State's Complaint was filed on January 4, 2018—41 years after the alleged 1977 conclusion of U.S. PCB manufacturing. Compl., ¶¶ 4, 5, 15. Thus, if Oregon's injury occurred before January 4, 2016 (the "bar date"), its claims are barred by the two-year statute of limitations. *See* ORS 30.905(2) (1977) (amended 1993) ("a product liability civil action shall be commenced not later than two years after the date on which the death, injury or damage complained of occurs."). Oregon's own Complaint and judicially noticeable facts foreclose any possibility that its "injury" first occurred after the 2016 bar date.

---

[39] This analysis applies whether or not a product liability claim is alleged. *See Weston*, 205 Or. App. at 352 (complaint before court did not include plaintiff's initial strict liability claims).

[40] Governmental entities are not exempt from the statute. *See Shasta View Irrigation Dist. v. Amoco Chems. Corp.*, 329 Or. 151, 158-59 (1999) ("[T]he exemption granted to the state . . . by ORS 12.250 does not apply . . . outside ORS chapter 12."); *see also State v. Broyles*, 228 Or. App. 264, 271 (2009) (following *Shasta*); *Port of Portland*, 2017 WL 4236561, at *4 ("public corporations are not exempt from the timeliness requirements of the statute of limitations found in § 30.905"). *Shasta* noted limited circumstances under which "the *common-law exemption* has guided this court in determining whether a statute of limitations outside ORS chapter 12 bars an action brought on behalf of the state[.]" 329 Or. at 161 (emphasis added). The public policy basis for the common-law exemption employed in (inapplicable) circumstances is "to protect the public from the negligence of public officials who fail to assert claims in a timely manner[.]" *Id.* at 163. No Oregon court has extended any common-law exemption to ORS 30.905, and there is no public policy rationale for the unprecedented application of any such exemption here, where Oregon is acting on its own behalf to recover damages. *See* Compl., ¶ 25 (alleging proprietary interest in trust resources); *see also Port of Portland*, 2017 WL 4236561, at *4 (rejecting magistrate judge's finding that *Shasta* held that public corporations are exempt from the statute of limitations provision in § 30.905 under Oregon common law, but declining to rule on the issue). Moreover, Oregon cannot blame its delay on mere negligence, as it has been well aware of the alleged PCB contamination for at least two decades.



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

In 2000, EPA identified Portland Harbor as a Superfund Site and placed it on the National Priorities List.[41] Compl., ¶ 91. By 2001, ODEQ had entered into a Memorandum of Understanding ("MOU") with EPA and other parties, whereby ODEQ was designated lead agency for the upland portion of the Site, and the supporting agency for the in-water response actions.[42] Thus, by 2001, *at the latest*, the State had assumed responsibility for certain remedial actions at the Site and knew that it would incur PCB-related costs. In 2006, members of the LWG entered into a Consent Judgment with Oregon, under which the LWG agreed to reimburse the State certain response and oversight costs that the State had incurred and to perform the Remedial Investigation and Feasibility Study ("RI/FS").[43] Thus, Oregon cannot credibly argue that its alleged injury occurred after 2001, when it assumed responsibility for certain remedial actions and response costs at the Site.

The "discovery rule"—first enacted by amendments to ORS 30.905 in 2003—dictates that the statute of limitations begins to run "after the plaintiff discovers, or reasonably should have discovered, the personal injury or property damage and the causal relationship between the injury or damage and the product, *or* the causal relationship between the injury or damage and

---

[41] In 1998, at the request of ODEQ, EPA released a study finding that sediments in the bed of the Lower Willamette River contained a number of pollutants, including PCBs. EPA, Portland Harbor Sediment Investigation Report, at 1-1, 2-2, 2-5, 4-3, 4-5, 4-6 (May 1998), RJN, Ex. 15. On December 1, 2000, Portland Harbor was officially placed on the National Priorities List. 65 Fed. Reg. 75,179, 75,186 (Dec. 1, 2001) (codified at 40 C.F.R. Part 300).

[42] EPA, Memorandum of Understanding for Portland Harbor Superfund Site, at 1, 3 (Feb. 2001) ("2001 MOU"), RJN, Ex. 16. Also in 2001, EPA entered into an Administrative Order on Consent ("AOC") with members of the Lower Willamette Group ("LWG"), in part to "recover response and oversight costs incurred by EPA and its Support Agency, [ODEQ], with respect to this Consent Order[.]" Administrative Order on Consent, *In re: Portland Harbor Superfund Site*, at 1, 4, ECF No. CERCLA-10-2001-0240 (Sept. 2001) ("2001 AOC"), RJN, Ex. 17. The 2001 AOC reiterates that "EPA and [O]DEQ have agreed to share responsibility for investigation and cleanup of the Site." *Id.* at 5.

[43] Consent Judgment, *State of Oregon v. Arkema Inc., et. al.*, Case No. 0610-10510 (Nov. 6, 2006) ("2006 Consent Judgment"), RJN, Ex. 18. Thus, by September 2006, Oregon had already incurred remedial action costs related to the RI/FS for the Site. Pursuant to the 2006 Consent Judgment, Oregon already recovered these costs from the LWG, and thus may not obtain double recovery from Defendants for those same costs. *See* 42 U.S.C. § 9614(b) ("Any person who receives compensation for removal costs or damages or claims pursuant to this chapter shall be precluded from recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law."); *see also* Section III.J, *infra*.



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

the conduct of the defendant." ORS 30.905(1) (emphasis added). However, the "discovery rule" applies only to injuries occurring after January 1, 2004.[44] Here, Oregon's "injury" occurred by 2001, *at the latest*, when it assumed responsibility for certain remedial actions and PCB-related response costs at Portland Harbor. But even if the discovery rule applied, Oregon's own Complaint and judicially noticeable documents establish that the alleged presence of PCBs in "Oregon's natural environment" and various "State-owned waters" was publicly known *at least nineteen years* before Oregon filed suit in 2016. Compl., ¶¶ 88-90. In 1997, ODEQ reported on PCBs' "widespread manufacture and use" and the presence of PCBs at "large numbers of sites" throughout Oregon.[45] Moreover, ODEQ expressly identified Old Monsanto to be the sole domestic manufacturer of PCBs until operations ceased in 1977.[46] Thus, the State knew of the alleged presence of PCBs in Oregon *no later* than 1997—and specifically at the Site by 2001 when it entered into the MOU with EPA to manage the PCB-related investigation and cleanup at Portland Harbor—and believed Old Monsanto to be the manufacturer of those PCBs.[47] All of Oregon's claims for damages are therefore time-barred even if the discovery rule applies.

3. <u>Oregon's Claims Are Also Barred by the Eight-Year Statute of Repose</u>

Oregon's former eight-year statute of repose, in effect through 2009 and thus well beyond when the Port's claims accrued, also independently bars Oregon's tort claims. ORS 30.905(1) (1977) (amended 1983, 1987, 1993, 2003). Oregon's current statute of repose, applicable since January 1, 2010 to product liability civil actions for property damage, states that such an action must be commenced before the later of: (a) "[t]en years after the date on which the product was first purchased for use or consumption;" or (b) "[t]he expiration of any statute of repose . . . in the state in which the product was manufactured[.]" ORS 30.905(2). The (current and former)

---

[44] No discovery rule applied to the two-year product liability statute of limitation until 2004. *See Starr v. Dow Agrosciences LLC*, 339 F. Supp. 2d 1097, 1102 n.3 (D. Or. 2004) (C.J. Mosman)).

[45] ODEQ, Generic Remedies for Soils Contaminated with Polychlorinated Biphenyls (PCBs), at A-2 (Dec. 1997), RJN, Ex. 19.

[46] *Id.* at A-1, A-2.

[47] *Id.*; 2001 MOU, *supra* note 42, RJN, Ex. 16.



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

statute of repose reflects the Oregon legislature's intent "that manufacturers . . . should have the benefit of a limited and predictable time period during which they would be exposed to liability for defects that existed when the product left a respective party's hands."[48]

Section (b) of ORS 30.905(2) is referred to as a "look away" provision and looks back to the statute of repose in the state in which the product was manufactured, if known.[49] However, the 2009 amendments expressly apply only to causes of action that arise on or after January 1, 2010, confirmed by case law. The pre-2009 statute of repose contains no such "look away" provision and simply states that a product liability civil action must be commenced not later than "*eight years after the date on which the product was first purchased for use or consumption*." ORS 30.905(1) (1977) (amended 1983, 1987, 1993, 2003) (emphasis added).

By 2001, *at the latest*, Oregon was aware of PCB contamination at the Site and had incurred obligations and costs to address it. Accordingly, the eight-year statute of repose in effect through 2009 applies, under which Oregon was required to commence this suit not later than 1985, eight years after the date when Old Monsanto is alleged to have last manufactured or sold PCBs. Compl., ¶¶ 4, 5, 15. The State's damages claims are 33 years too late.

---

[48] *Erickson Air-Crane Co. v. United Techs. Corp.*, 303 Or. 281, 288 (1987); *see also Shasta View Irrigation Dist.*, 329 Or. at 162 ("Statutes of ultimate repose set maximum times to file a claim, regardless of the date of discovery of an injury . . . .") *Border v. Indian Head Indus., Inc.*, 101 Or. App. 556, 560 (1990) ("A plaintiff who is injured more than eight years after the first purchase of the product for use or consumption simply never has a claim.").

[49] No Oregon court has interpreted the "look away" provision of the 2009 amendment. In 2017, the Oregon Supreme Court accepted jurisdiction over a certified question from the Ninth Circuit in *Miller v. Ford Motor Co.*, which asks, when a court "looks away" to the state of manufacture and finds no relevant statute of repose, whether Oregon's statute of repose applies, or is a plaintiff entitled to an unlimited period (subject to the statute of limitations) in which to bring suit in an Oregon court. 857 F.3d 1016, 1017 (9th Cir. 2017). An opinion has not yet issued, but the question has been fully briefed and argued. The outcome of that question is not determinative because the pre-2010 statute of repose governs and bars Oregon's claims here.



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

### E. Oregon Fails to State a Claim for Public Nuisance (First Claim for Relief)[50]

#### 1. Oregon Cannot Plead a Public Nuisance *Per Se*

Oregon alleges, without identifying any statutory authority in support thereof, that "[t]he continuous presence of PCBs on [public trust property] constitutes a *per se* public nuisance." Compl., ¶ 110. But Defendants have discharged no PCBs in Oregon and cannot be liable for a public nuisance *per se* because no Oregon statute declares the manufacture and sale of a legal product to be a public nuisance. *Williams v. Invenergy, LLC*, 2014 WL 7186854, at *9 (D. Or. Dec. 16, 2014) ("[T]he existence of a nuisance is determined on a case-by-case basis, depending on the facts of the condition giving rise to the claim, unless a statute or regulation meets specific, narrow criteria which allow the creation of a nuisance *per se* cause of action.").

There is no authority for the State's public nuisance *per se* allegations—ORS 448.265 and ORS 468B.025 both set forth statutory requirements for public nuisance *per se*, but neither applies here. ORS 448.265(1)(b) cannot be the basis for any alleged public nuisance *per se* because neither Old Monsanto nor Defendants are alleged to have released PCBs in Oregon, much less "pollute[d] a source of a water system or [] destroy[ed] or endanger[ed] a water system" by "[d]eposit[ing] or maintain[ing] any unclean or unwholesome substance." ORS 468B.025 is similarly inapplicable by its terms because Old Monsanto and Defendants did not "[c]ause pollution of any waters of the state or place or cause to be placed any wastes in a location where such wastes are likely to escape or be carried into the waters of the state by any means."[51] ORS 468B.025(1)(a). Nor did Old Monsanto or Defendants "[d]ischarge any wastes

---

[50] At present, Defendants do not dispute that Oregon has standing to bring a public nuisance claim for property the State owns or holds in trust for the benefit of the public. *See* Compl., ¶ 86 (alleging impairment by PCBs of 2.8 million acres of land and various waters, which the State owns or holds in trust for the benefit of the people). Defendants do not concede, however, that Oregon has standing to bring a public nuisance claim for property it does not own or hold in trust.

[51] The terms "pollution" and "water pollution" "mean[] such alteration of the physical, chemical or biological properties of any waters of the state, . . . or such *discharge* of any liquid, gaseous, solid, radioactive or other substance into any waters of the state . . . ." ORS 468B.005(5) (emphasis added). Old Monsanto and Defendants are not alleged to have discharged a single molecule of PCBs in Oregon.



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

into the waters of the state," and Oregon does not (and cannot) allege otherwise. ORS 468B.025(1)(b). Old Monsanto and Defendants unequivocally cannot be the cause of any "pollution" in Oregon, as they are not alleged to have ever discharged a single PCB molecule into any waters of the State or elsewhere.

Any implication that ORS 448.265 or ORS 468B.025 establishes a *per se* public nuisance for the manufacture and sale of a product incorporated by third parties into other products is dispelled by the statutes' plain terms, which address the *use or discharge* of a product (or by-product), not its manufacture or sale. Neither ORS 448.265 nor ORS 468B.025 has ever been applied against a product manufacturer in the absence of a defendant's direct discharge into a natural resource, and neither supports Oregon's public nuisance *per se* claim here.

2. <u>Oregon Cannot Plead Facts Showing Causation for Public Nuisance</u>

No Oregon state court has ever recognized a public nuisance action against a product manufacturer for placing a lawful product into the stream of commerce; instead, Oregon precedent strongly supports that liability cannot attach based merely on the manufacture of PCBs decades ago. *Williams v. Invenergy*, 2016 WL 1725990, at *18 (D. Or. Apr. 28, 2016) (plaintiff may recover damages only for injuries which are "causally linked" to nuisance) (citation omitted); *Gronn v. Rogers Constr., Inc.*, 221 Or. 226, 238-39 (1960).

Oregon relies on threadbare assertions that "Defendants' production and use of PCBs in the various chemical and industrial applications [] caused the continuous presence of PCBs on [public trust property]." Compl., ¶ 108. The State cannot allege that Old Monsanto *ever* manufactured or discharged PCBs in Oregon, and it never owned, operated, or disposed of any equipment containing PCBs in Oregon. Old Monsanto also did not sell PCB-containing products or equipment containing PCBs directly to consumers. Instead, it sold PCBs to sophisticated end-users like the military and pursuant to strict specifications, who then incorporated PCBs into their products. Old Monsanto never controlled how products incorporating PCBs would be used, serviced, or disposed of by its customers (or its customers' customers). While Old Monsanto (and Defendants) are not alleged to have done *anything* since 1977, the Complaint is silent



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

regarding the actions of potentially thousands of intervening actors, including ODOT, which are more closely tied to how PCBs reached water, land, and natural resources in Oregon.

At least 40 cases in almost 30 different state and federal courts have dismissed public nuisance claims against product manufacturers at the Rule 12(b)(6) stage for a variety of public policy reasons, and 18 of those dismissals were expressly due to a lack of proximate causation. *See* Attachment 3.[52] Courts have consistently rejected such claims, recognizing:

> [a]ll a creative mind would need to do is construct a scenario describing a known or perceived harm of a sort that can somehow be said to relate back to the way a company or an industry makes, markets and/or sells its nondefective, lawful product or service, and a public nuisance claim would be conceived and a lawsuit born.

*New York v. Sturm Ruger & Co.*, 309 A.D. 2d 91, 96 (N.Y. App. Div. 2003).[53]

Similar PCB-related public nuisance actions brought against one or more of the Defendants here have already been dismissed outside Oregon on *three occasions* for lack of causation. In *Town of Westport v. Monsanto Co.*, 2015 WL 1321466, a comparable bare-bones theory was advanced against the Defendants here—that the use of PCB-containing building materials in town and school buildings created a public nuisance, and Defendants were liable as

---

[52] As set forth in Section III.B.2, *supra*, Oregon's public nuisance claim is nothing more than a disguised product liability claim and should be dismiss on that basis alone. *See* Attachment 1.

[53] In *Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019, 1030 (W.D. Wash. 2005) *aff'd*, 503 F.3d 974 (9th Cir. 2007), plaintiffs brought public nuisance claims against a U.S. product manufacturer for the demolition of their homes by Israeli Defense Forces using Caterpillar bulldozers. The Washington court found there could be no liability for selling a legal, non-defective product and that no causation existed, as the Israeli Defense Forces' conduct with respect to the plaintiffs was too remotely connected to the sale of bulldozers. *Id.* at 1030-31. The Ninth Circuit upheld dismissal of plaintiff's claims. *See* 503 F.3d 974.

Likewise, in *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.*, 79 F. Supp. 2d 1219 (W.D. Wash. 1999) *aff'd*, 241 F.3d 696 (9th Cir. 2001), Washington public hospital districts brought a public nuisance claim against tobacco product manufacturers, which allegedly "engaged in deceptive acts and conspired to perpetuate smoking and nicotine addiction in the United States," which "forced the public hospitals and others to bear [unreimbursed health care costs associated with treating patients with smoking-related injuries]." *Id.* at 1221. The manufacturers moved to dismiss, claiming the hospitals' claims were "too remote and wholly derivative of injuries to unnamed smoker-patients." *Id.* at 1222. The court dismissed the public nuisance claim for lack of proximate causation, finding there was "no direct link" between the alleged misconduct of the tobacco product manufacturers and the public hospitals' claimed damages. *Id.* at 1224, 1229. Again, the Ninth Circuit affirmed. 241 F.3d 696, 707.



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

the successors and/or indemnitors of the "sole" U.S. manufacturer of PCBs. *Id.* at *1-3. Such allegations did not survive a Rule 12(b)(6) motion because Defendants were not liable for the actions of Old Monsanto's customers. *See id*. at *4 (without "the power or authority to maintain or abate these PCB-containing building materials, [defendants] cannot be liable for a public nuisance.") (citation omitted). Likewise, the Seventh Circuit dismissed a city's public nuisance claim for damages against (today's) Monsanto for the cleanup of PCB wastes deposited into a city landfill and the municipal sewer system by one of Old Monsanto's customers. *City of Bloomington*, 891 F.2d at 614 (holding that *the customer* was "solely responsible for the nuisance it created by not safely disposing of the [PCB] product."); *see also Town of Lexington v. Pharmacia Corp.*, 133 F. Supp. 3d 258, 261-62, 273 (D. Mass. Sept. 23, 2015) (dismissing class action against Defendants for remediation costs for PCB-containing caulk because town disregarded third-party actor who incorporated PCBs in the caulk).[54]

Oregon's First Claim for Relief falls squarely into the majority of public nuisance cases and must be dismissed for lack of causation.

### F. Oregon Fails to State a Claim for Purpresture (Second Claim for Relief)[55]

"Purpresture" is a throwback to another era for which few Oregon cases exist, and those

---

[54] In *City of Portland* and *Port of Portland*, this Court found that the City of Portland and the Port of Portland adequately pled that Old Monsanto's conduct caused at least some of the complained-of injuries. *City of Portland*, ECF. No. 59, at 38, RJN, Ex. 20; *City of Portland*, 2017 WL 4236583, at *1; *see also Port of Portland*, ECF. No. 43, at 38, RJN, Ex. 21; *Port of Portland*, 2017 WL 4236561, at *8. Additionally, the Eastern District of Washington reached a similar decision contrary to over 125 years of Washington state law, and, in so doing, never addressed the only two cases on point in Washington (*Corrie* and *Phillip Morris*, described above). *See City of Spokane v. Monsanto Co.*, 2016 WL 6275164, at *8-9 (E.D. Wash. Oct. 26, 2016) (City of Spokane adequately pled causation to support a public nuisance claim with respect to the Spokane River). Similarly, the Southern District of California found that the San Diego Unified Port District sufficiently pled causation to support its *representative public nuisance* claim without addressing whether a damages claim is viable. *San Diego Unified Port Dist. v. Monsanto*, *et al*, 2016 WL 5464551, at *8 (S.D. Cal. Sept. 28, 2016) (finding City of San Diego alleged sufficient facts to support public nuisance claim). Those federal cases were all sitting in diversity, but Defendants respectfully submit that none sufficiently looked to relevant state court decisions on public nuisance, as they must. For the reasons set forth above, Defendants respectfully disagree with these decisions.

[55] To the extent the Court views purpresture as a "species" of public nuisance, Defendants incorporate herein all arguments in Section III.B.1, *supra*. *See Norris*, 182 Or. App. at 553.



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

that do are entirely inapposite here.[56] Historically, "purpresture" referred to the unapproved appropriation or enclosure for private use of property of the state. *See Hume v. Rogue River Packing Co.*, 51 Or. 237, 257 (1907). A state could invoke "purpresture" in an effort to compel removal of a privately constructed enclosure or obstruction in navigable waters. *See, e.g.*, *Brusco Towboat Co. v. State, By & Through Straub*, 30 Or. App. 509, 526 (1977), *aff'd in part, rev'd in part*, 284 Or. 627 (1978) ("[e]very structure which was erected below the high-water mark without license was a mere purpresture which could, at the suit of the sovereign, be either removed or demolished") (citation omitted). To state a claim for purpresture in Oregon, a plaintiff must allege a defendant (1) appropriated public uplands, submerged lands, or submersible lands, (2) for private use, (3) by constructing an enclosure or obstruction thereon, (4) without authorization from the State. *See, e.g., Hume*, 51 Or. at 257; *City of Eugene v. Garrett*, 87 Or. 435, 444-45 (1918); *Wessinger v. Mische*, 71 Or. 239, 243 (1914); *Brusco Towboat*, 30 Or. App. at 525-29 (the state has the authority to authorize what would otherwise be a purpresture). The State's claim for "purpresture" here, Compl., ¶¶ 116-121, is woefully vague, but it appears to be based on the alleged presence (measured in parts per billion) of dilute concentrations of PCBs in Oregon waters and on State-owned or administered land, Compl., ¶¶ 119. Oregon's purpresture claim fails as a matter of law for three fundamental reasons.

First, the State does not and cannot allege that Old Monsanto or Defendants appropriated or enclosed any Oregon property for any private use. Defendants had no PCB manufacturing presence in Oregon and are alleged by the State of nothing more than selling a product used by third-parties as a component in their products. Second, the mere presence of dilute concentrations of chemicals (including PCBs) in the water and sediment is not a limit to

---

[56] Purpresture's relevance in navigational cases largely pre-dates environmental laws commencing in the 1970s. Modern environmental laws so extensively govern today's dredging and construction in waters of the U.S. that "purpresture" has become an increasingly obsolete legal tool. By way of example, the most *recent* Oregon case to successfully compel removal of a privately constructed obstruction on public lands, arguably under a theory of purpresture, is approaching its 70th anniversary. *See City of Molalla v. Coover*, 192 Or. 233, 253 (1951).



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

navigation, and the State cannot plausibly argue otherwise.[57] No purpresture case has ever held that legacy contamination (released by third parties) in public waters or sediments constitutes the manufacturer's private appropriation and use of public land.[58] Third, a claim for purpresture requires the private party's physical construction of an encroachment or enclosure on public lands or navigable waterways. *See, e.g.*, *Brusco Towboat*, 30 Or. App. at 529 (structures erected in submerged and submersible lands); *Sweet v. Irrigation Canal Co.*, 198 Or. 166, 191 (1953) (irrigation canal built along a highway); *City of Molalla*, 192 Or. at 238, 253 (fencing and building constructed in public street). Oregon does not and cannot allege that the presence of PCB molecules in the water and sediment is tantamount to the physical construction of an encroachment or enclosure on public lands. Oregon's Second Claim for Relief must be dismissed.

### G. Oregon Fails to State a Claim for Trespass (Third Claim for Relief)

#### 1. <u>Oregon Lacks Standing to Assert Trespass</u>

A trespass is defined as "any *intrusion* which invades the possessor's protected interest in *exclusive possession* [of land]." *Martin v. Reynolds Metals Co.*, 221 Or. 86, 94 (1959) (emphasis added). The gravamen of trespass is interference with a party's exclusive possession of property. But, Oregon does not have the right to exclusive possession of public trust lands, which it admits are "for public use."[59] Compl., ¶ 10. *See New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1247 n.36 (10th Cir. 2006) ("[T]he State as guardian of the public trust has no possessory interest in

---

[57] The State's contention that "increasing the costs of dredging" interferes with public navigation is meritless on its face. Compl., ¶ 119. If the sediments underneath a waterway are being dredged, the *cost* of that dredging plainly has no bearing on actual *navigation*.

[58] In *San Diego Unified Port Dist.*, 2016 WL 5464551, at *10-11, the court found in response to a Rule 12(b)(6) motion that the San Diego Unified Port District adequately pled purpresture where it alleged that navigation was permanently prohibited above and around two engineered caps built on the bed of San Diego Bay. Defendants respectfully disagree with that court's decision, but note that it is inapposite given that the State makes no such physical construction allegation here by Defendants or anyone else.

[59] Oregon's conclusory allegation that it has the right to exclusive possession of public trust resources, Compl., ¶ 124, cannot be reconciled with its admission that it holds such property "in trust for the public" for "public use[,]" Compl., ¶ 10. *See Witt Co. v. RISO, Inc.*, 948 F. Supp. 2d 1227, 1234 (D. Or. 2013) ("the court need not accept conclusory allegations as truthful").



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

the [trust resources]—a necessary requisite to maintaining a trespass action.") (citation omitted); *New Jersey Dept. of Envtl. Prot. v. Exxon Mobil Corp.*, 2008 WL 4177038 (N.J. Super. Ct. Law Div. Aug. 29, 2008) (rejecting claim "that land subject to the public trust is in the 'exclusive possession' of the State"). Because Oregon does not exclusively possess public trust resources, its trespass claim fails as a matter of law.[60]

2. Placing a Product into the Stream of Commerce Does Not Give Rise to a Trespass Claim

No Oregon state court has ever found a viable trespass claim against a product manufacturer for placing a legal product into the stream of commerce.[61] The State has not—and cannot—allege that Old Monsanto discharged a single PCB molecule anywhere in Oregon. Instead, the State's trespass claim is premised entirely upon the theory that Old Monsanto placed PCBs into the stream of commerce four to eight decades ago.[62] That unprecedented theory of

---

[60] Oregon cannot allege the right to exclusively possess any portion of the State's vast federal lands; statutory authority is clear that Oregon has no such interest. *See, e.g.*, ORS 272.030 (consenting to the U.S. entry, occupation, and acquisition of lands for purposes of erecting federal buildings); ORS 272.040 (consenting to the U.S. acquisition of land for national forests); *see also* Cong. Research Serv., Federal Land Ownership Overview and Data, at 6, 8-9 (Mar. 3, 2017) (federal agencies administer approximately 32,644,541 acres (53%), of Oregon's total 61,598,720 acres as of 2015), RJN, Ex. 22.

[61] In the *City of Portland* and *Port of Portland* actions, this Court rejected Defendants' argument that substantially similar allegations amounted to a product liability civil action under the OPLS, finding that "neither [ORS 30.900 nor *Weston*, 205 Or. App. 347,] stand for the proposition that a trespass claim is not cognizable in Oregon if it is based on allegations that an unreasonably dangerous product intruded on a plaintiff's property." *Port of Portland*, 2017 WL 4236561, at *9. Respectfully, that is precisely what the *Weston* court held—"[p]laintiffs' trespass claim, at its core, is based on one predominant fact: that [] defendants delivered a defective product to plaintiffs without warning plaintiffs of the defect." *Weston*, 205 Or. App. at 360. Here too, the gravamen of Oregon's complaint is that Old Monsanto manufactured a defective product that is now present on public trust property. Compl., ¶ 124. And like *Weston*, Oregon does not allege any loss of use or enjoyment of such public trust property unrelated to the defective nature of the product. *See Weston*, 205 Or. App. at 360. Moreover, Defendants respectfully disagree that "[ORS] 30.900 merely defines 'product liability civil actions' for the purposes of determining whether a claim is timely under other provisions of the statute." *Port of Portland*, 2017 WL 4236561, at *9. The definition of a "product liability civil action," as set forth in ORS 30.900 expressly applies to ORS 30.920, "Liability of seller or lessor of product."

[62] *See* Compl., ¶¶ 4, 5, 15, 31, 36, 39, 40, 108, 117, 120, 123, 138 (Old Monsanto was the sole domestic manufacturer of PCBs from 1932 to 1977); *id.* ¶ 42 (PCBs were used by third parties "in a wide range of commercial and industrial applications"); *id.* ¶ 43 ("PCBs enter the natural environment in a variety of ways[,]" including third-party disposal of PCB-containing products);



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

trespass finds no support in Oregon law. As set forth in Section III.B.2, *supra*, where an allegedly unauthorized intrusion is the result of a defendant's manufacture of an unreasonably dangerous product, the claim is not for trespass, but rather for product liability under ORS 30.900. *Weston*, 205 Or. App. at 360-61. That logic applies with equal force here and bars Oregon's Third Claim for Relief in its entirety.

### H. Oregon Fails to State a Claim for Common Law Indemnity (Fourth Claim for Relief)

In Oregon, a party claiming common law indemnity "must plead and prove that (1) [it] has discharged a legal obligation owed to a third-party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter." *Fulton Ins. v. White Motor Corp.*, 261 Or. 206, 210 (1972). Oregon has not pled any of the three required elements.

First, a plaintiff must show that it has discharged an obligation owed to a third party "so as to extinguish both its own and defendants' liability." *Savelich Logging Co. v. Preston Mill Co.*, 265 Or. 460, 509 (1973). At most, Oregon alleges that it has incurred costs (1) remediating PCBs, Compl., ¶ 130; (2) for "source control actions" at Portland Harbor, Compl., ¶ 132; (3) as a PRP at Portland Harbor, Compl., ¶ 132; and (4) developing Total Maximum Daily Load ("TMDL") estimates and administering a toxic monitoring program, Compl., ¶ 133. But such obligations are not a judgment or liability *owed to a third party*. *See Arch Chems., Inc. v. Radiator Specialty Co.*, 727 F. Supp. 2d at 1000 ("*[P]robable* liability is not enough for an indemnity claim; an indemnity claimant's liability must be established by a *judgment* or by

---

*id.* ¶ 7 ("PCBs persist in Oregon's lands, rivers, and waterways, in its sediments, soils, and in the bodies of animals and humans.").

Oregon alleges that Old Monsanto's conduct "allowed or caused" the PCBs to trespass upon public trust property, Compl., ¶¶ 124, 125, and Old Monsanto engaged in "ultrahazardous conduct" when it manufactured and distributed PCBs without warning the general public about their associated risks, *id.* ¶ 127. Aside from the fact that Oregon's trespass allegations fall squarely within the ambit of the OPLS, *see* Section III.B.1, *supra*, courts do not accept such "platitudes" where, as here, the Complaint is entirely devoid of the necessary supporting factual averments. *Hinds Invs., L.P. v. Team Enters., Inc.*, 2010 WL 796844, at *4, *16 (E.D. Cal. Mar. 5, 2010), *aff'd*, 654 F.3d 846 (9th Cir. 2011).



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

pleading and proving *facts establishing liability*.") (emphasis added); *see also Fulton Ins.*, 261 Or. at 212 (same). Oregon does not and cannot allege that any remedial or administrative costs extinguish Defendants' purported liability (if any)—and the fact that the City and Port of Portland have sued Defendants for similar costs at Portland Harbor indicates that other governmental entities in Oregon do not believe Defendants' liability has been extinguished.[63]

Second, common law indemnity "requires that a common duty be mutually owed to a third party." *Safeco*, 170 Or. App. at 639 (citations omitted). Oregon does not and cannot allege that the State and Defendants share a common duty *or* a duty to the same person. Defendants do not share the State's obligations to remediate the Site or any Orphan Sites in Oregon, develop and administer Oregon's toxic monitoring program, or develop TMDL estimates.

Third, Oregon gives lip service to the requirement that "as between the claimant and the defendant, the obligation ought to be discharged by the latter." *Fulton Ins.*, 261 Or. at 210. Oregon alleges, "Defendants, not Plaintiff, are responsible for the presence of PCBs . . . on each of the designated Orphan Sites and in other areas throughout the State for which Plaintiff has incurred or will incur remedial action, toxic monitoring, or other costs." Compl., ¶ 134. To meet that requirement, this Court should determine whether Oregon's liability was "'secondary' or [its] fault merely 'passive,' while that of [Defendants was] 'active' or 'primary.'" *Eclectic Inv., LLC v. Patterson*, 357 Or. 25, 34 (2015), *opinion adhered to as modified on reconsideration*, 357 Or. 327 (2015) (citing *Fulton Ins.*, 261 Or. at 210). The facts alleged are insufficient, as Oregon pleads that it (*and not Defendants*) is authorized or obligated to take various remedial actions at Orphan Sites, that it (*and not Defendants*) is a CERCLA PRP, and that it (*and not Defendants*) is authorized or obligated to develop and administer its toxic monitoring program and TMDL estimates. *See* Compl., ¶¶ 130-133. In contrast, Old Monsanto is a former out-of-state PCB

---

[63] To the extent Oregon alleges it anticipates future costs, *see, e.g.*, Compl., ¶¶ 130-132, its claim is not ripe because such costs are not established by judgment and are probable at best. *Arch Chemicals, Inc. v. Radiator Specialty Co.*, 727 F. Supp. 2d 997, 1000 (D. Or. 2010) (probable liability is insufficient); *Safeco Ins. Co. of Am. v. Russell*, 170 Or. App. 636, 639 (2000) (a common law indemnity claim does not accrue until the indemnitee has paid the loss) (citing *Owings v. Rosé*, 262 Or. 247, 261-63 (1972)).



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

manufacturer that terminated production four decades ago, and it is not alleged to have ever discharged PCBs in Oregon. Compl., ¶¶ 4, 5, 15. The Complaint fails to show that any legal obligation owed by the State should be discharged by Defendants.

Notably, this Court recently rejected a substantively identical indemnity theory in *City of Portland* and *Port of Portland*. There, the Court adopted Judge Papak's recommendation that plaintiffs' claims were not ripe because they "ha[d] not alleged that any liability [they] owed . . . was established by judgment, and ha[d] not alleged facts tending to establish that, absent [their] voluntary consent to a remediation agreement, [they are] or [were] liable as a matter of law to either the State of Oregon or the EPA." *City of Portland*, ECF. No. 59, at 40, RJN, Ex. 20; *City of Portland*, 2017 WL 4236583, at *3; *Port of Portland*, ECF. No. 43, at 40, RJN, Ex. 21; *Port of Portland*, 2017 WL 4236561, at *11.[64] Oregon's Fourth Claim for Relief for indemnity should be dismissed for similar reasons.

### I. Oregon Fails to State a Claim for Unjust Enrichment (Fifth Claim for Relief)

Oregon's claim for unjust enrichment, Compl., ¶¶ 140-143, is a plea for an "abstract moral judgment" that it would be unfair for the State to pay to remove PCBs on lands it owns or holds in trust. But, there is nothing "unfair" about the State paying to remediate its *own discharges* of PCBs, or requiring the State to seek contribution for its response costs from *actual dischargers*.[65] And fundamentally, Oregon's allegations are insufficient to plead unjust enrichment, which requires that a plaintiff demonstrate the defendant has, in fact, been "*enriched*." *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 124-32 (2017). That question "does not turn on . . . some abstract sense of moral judgment," but rather it demands "greater specificity based on articulated legal standards." *Id.* at 126; *see also Grimstad v.*

---

[64] *See also City of San Jose v. Monsanto Co.*, 2016 WL 4427492, at *5 (N.D. Cal. Aug. 22, 2016) (dismissing equitable indemnity claims in three similar public nuisance lawsuits where municipalities had alleged only that they "have had to pay because of a regulatory requirement, not an adverse judgment.").

[65] In fact, CERCLA sets forth the framework for the State to do precisely that, which serves as an independent ground for dismissal of the State's complaint. *See* Section III.J., *infra*.



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

*Knudsen*, 283 Or. App. 28, 47 (2016), *review denied*, 361 Or. 350 (2017) (plaintiffs must "show more than abstract unfairness"). Moreover, the State may not bypass Oregon's tort laws by seeking restitution for what are more accurately damages premised on tort. *Lytle v. Payette-Oregon Slope Irr. Dist.*, 175 Or. 276, 289 (1944). Oregon cannot meet the legal standard for unjust enrichment.

1. <u>Oregon Cannot Plead It Performed Defendants' Duty</u>

Until recently, Oregon required three elements to state a claim for unjust enrichment: (1) a benefit conferred on the defendant; (2) the defendant's awareness of the benefit; and (3) under the circumstances, it would be unjust for the defendant to retain the benefit without paying compensation. *Larisa's Home Care,* 362 Or. at 129 (citing *Jaqua v. Nike, Inc.*, 125 Or. App. 294, 298 (1993)). In *Larisa's Home Care*, the Oregon Supreme Court abandoned *Jaqua*'s three-part test, instead opting for an "incremental rule development on a case-by-case basis." 362 Or. at 127. Under this new rule, courts are to examine "whether the case type [presented] matches *already recognized* forms of unjust enrichment." *Id.* at 128 (emphasis added).

The State's claim for unjust enrichment is helplessly vague, but it appears to allege that the State performed Defendants' or Old Monsanto's "duty" to investigate and remediate any and all PCB contamination in Oregon. Compl., ¶¶ 140-142. Performing another's duty is a recognized form of unjust enrichment. *See* Restatement (Third) of Restitution and Unjust Enrichment ("Third Restatement") § 22 (2011).[66] But the State misses a fundamental point: "There is no unjust enrichment and no claim in restitution by [performing another's duty] *except insofar as the claimant's intervention has relieved the defendant of an otherwise enforceable obligation*." *Id.* at § 22(3) (emphasis added). Thus, the central question is whether Oregon, by incurring costs to investigate and remediate PCBs on its property and trust resources, relieved Old Monsanto or Defendants of an enforceable obligation. It did not.

---

[66] Oregon courts routinely rely on both the First and Third Restatements when analyzing unjust enrichment claims. *See, e.g.*, *Grimstad*, 283 Or. App. 28 at 45 & n.5; *Tum-A-Lum Lumber v. Patrick*, 95 Or. App. 719, 721 (1989).



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

Where, as here, a plaintiff seeks restitution from a defendant for costs the plaintiff incurred, the plaintiff must demonstrate that the defendant had a "legal obligation to pay" the costs. *Oregon Laborers-Empr's Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 968 (9th Cir. 1999). Absent this showing, no "benefit" has been conferred on the defendant, and the defendant has not been enriched—unjustly or otherwise. *Id.*; *see also* Restatement (First) of Restitution ("First Restatement") § 1 cmt. a (1937) ("A person is *enriched* if he has received a *benefit*[.]") (emphasis added).[67]

Neither Defendants nor Old Monsanto have ever had *any* "legal obligation to pay" Oregon's costs to "to monitor, investigate, and abate" any and all PCBs on the State's property or trust resources.[68] Compl., ¶ 140. Oregon argues that Defendants "would have incurred, or in the future will incur" the costs the State incurred to address alleged PCB contamination on State property or trust resources. *Id.* ¶ 141. As with common law indemnity, such hypothetical suppositions do not establish that Defendants are *in fact* "legally obligated" to pay the State's investigatory or remediation costs. *See Wentworth & Irwin v. Sears*, 153 Or. 201, 218 (1936) ("speculative" or "conjectural" liability does not establish legal obligation); *Fulton Ins. Co.*, 261 Or. at 212 (1972) ("[p]robable liability is not enough" to establish legal obligation).

Oregon pleads that it (*and not Defendants*) is a CERCLA PRP, Compl., ¶¶ 96-98; that countless other "industrial landowners and users" (*and not Defendants*) "handled, used, and disposed of . . . PCBs or PCB-containing materials," Comp., ¶ 95; that it (*and not Defendants*) is authorized (or obligated) to take various remedial actions at Orphan Sites, Compl., ¶¶ 101-102;

---

[67] *See also* Third Restatement § 1 cmt. d (2011) ("Restitution is the law of nonconsensual and nonbargained benefits in the same way that torts is the law of nonconsensual and nonlicensed harms."). *Larisa's Home Care* did not take issue with the first element of *Jaqua*'s three-part test—requiring a benefit—and did not change this universally required element. 362 Or. at 129-32.

[68] Oregon's vague and conclusory allegations that Old Monsanto and/or Defendants owed Oregon a "duty"—without specifying what that duty or "otherwise legally enforceable obligation" is—Compl., ¶¶ 137, 142, are insufficient to state a claim for unjust enrichment. *See Grimstad*, 283 Or. App. at 48 (Unjust enrichment requires a "specifically identif[iable] legally recognized source of [the] right" for which plaintiff is entitled to restitution from defendant).



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

and that it (*and not Defendants*) is authorized (or obligated) to develop and administer its toxic monitoring program and develop TMDL estimates, Compl., ¶ 133. In contrast, Old Monsanto is a former PCB manufacturer that terminated production decades ago, and it is not alleged to have ever discharged PCBs anywhere in Oregon. Compl., ¶¶ 4, 5, 15. The Complaint fails to show that Defendants had any legal obligation to pay Oregon's investigation and remediation costs.

2. Oregon's Alleged Damages Are Not Recoverable Through Restitution

Oregon law is clear that the State may not bypass Oregon's tort laws—not to mention the OPLS, *see* Section III.B.1, *supra*—by seeking restitution for what are fundamentally damages premised on tort. *Lytle*, 175 Or. at 289. Unlike tort damages, "[r]estitution is awarded, not upon the theory that the [defendant] is guilty of any wrongdoing," but instead because a benefit has been conferred on defendant by plaintiff or a third party assuming defendant's legal obligation(s). *Id.* at 286. As such, restitution measures the extent to which defendant received unjust *gains*, as opposed to plaintiff's alleged *losses* in tort. *See Oregon Teamster Emp'rs Tr. v. Hillsboro Garbage Disposal, Inc.*, 2013 WL 2423795, at *12 (D. Or. June 4, 2013), *aff'd*, 800 F.3d 1151 (9th Cir. 2015); *Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1086 (C.D. Cal. 2003), *on reconsideration in part* (June 5, 2003). For this reason, "damages sounding in tort cannot be recovered" through restitution. *Lytle*, 175 Or. at 289.[69]

Rather, when the conduct underlying plaintiff's restitution claim is premised on tort—as it is here—restitution is only available if defendant's alleged legal benefit *exceeds* plaintiff's alleged damages. Third Restatement § 44 (Reporter's Note); *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 576 (7th Cir. 2004). Here, the State's claim for restitution seeks the *exact same costs* based on *the exact same conduct* as its claims for public nuisance, trespass, and purpresture. *See* Compl., ¶¶ 8, 107, 111, 115-116, 121-122, 128, 140. The State does not allege that Defendants' "benefit" exceeds the State's tort damages based on the same conduct.

---

[69] *See also Yanting Zhang v. Superior Court*, 57 Cal. 4th 364, 371 (2013) ("[c]ompensatory damages are not recoverable as restitution") (citation omitted); *United States v. Parnell*, 2016 WL 1369392, at *6 (M.D. Ga. Apr. 6, 2016) ("tort damages [are] not recoverable as restitution").



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

In sum, Oregon does not and cannot allege that Defendants or Old Monsanto have ever been legally obligated to pay for the State's investigatory or remediation costs. Instead, the State conflates its alleged tort damages with unjust enrichment, thereby seeking restitution in contravention of settled law. Accordingly, the State's Fifth Claim for Relief for unjust enrichment fails.

**J. CERCLA Preempts Oregon's State Common Law Claims**

"State common law claims may be preempted if they interfere with the execution of the purposes and objectives of a federal statute." *XDP, Inc. v. Watumull Props. Corp.*, 2004 WL 1103023, at *9 (D. Or. May 14, 2004) (citation omitted). Oregon's common law claims do precisely that—they interfere with the purposes and objectives of an ongoing non-judicial allocation of past and future CERCLA response costs at Portland Harbor among the *actual dischargers*, of which the State is an integral part.[70] *See* Compl., ¶¶ 91-98, 132.

In *XDP*, the plaintiff brought a claim seeking "recovery for expenses allegedly incurred in remediating environmental contamination from [its] property." *XDP*, 2004 WL 1103023, at *1. The court dismissed the plaintiff's common law claims for restitution, indemnity, and contribution, finding them to be "in conflict with CERCLA's contribution scheme" and holding that "CERCLA prevents claimants from seeking compensation under state law theories for the same removal costs that are available under CERCLA." *Id.* at *9.[71] As in *XDP*, Oregon is

---

[70] Oregon has conceded its participation in the non-judicial allocation effort at Portland Harbor. *See Arkema* Amicus Memorandum, *supra* note 28, at 1-2 RJN, Ex. 14.

[71] The same logic applies to each of Oregon's state common law claims. *See Appleton Papers Inc. v. George A. Whiting Paper Co.*, 901 F. Supp. 2d 1113, 1115-16 (E.D. Wis. 2012) (plaintiffs' state law tort claims—even if not "contribution" claims—preempted because such claims "would effectively reapportion costs incurred under CERCLA in a fashion that CERCLA itself would not countenance"), *aff'd sub nom. NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682 (7th Cir. 2014); *Cyprus Amax Minerals Co. v. TCI Pac. Commc'ns, Inc.*, 2013 WL 6238485, at *8 (N.D. Okla. Dec. 3, 2013) (unjust enrichment claim preempted where it would allow plaintiff to recoup "its CERCLA costs outside the limitations and conditions of CERCLA.") (internal quotations and citations omitted); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 139 (2d Cir. 2010) (same); *Alabama v. Ala. Wood Treating Corp.*, 2006 U.S. Dist. LEXIS 37372, at *37-42 (S.D. Ala. June 6, 2006) (trespass and nuisance claims preempted because "[t]o award plaintiffs compensatory money damages . . . would provide the same or double recovery provided under CERCLA"); *Matter of Reading Co.*, 115



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

seeking compensation under common law for the same response costs that are available under CERCLA and the subject of an eight-year non-judicial allocation. Such claims are duplicative, risk derailing the ongoing allocation process, and attempt to side-step bars to double recovery.[72] *NCR Corp.*, 768 F.3d at 711 (affirming preemption of common law claims that would "effectively reapportion CERCLA costs in a manner contrary to CERCLA itself").

*Appleton Papers* is similarly analogous. There, the court dismissed defendants' state law counterclaims for negligence, strict liability, nuisance, and contribution after having previously ruled the defendants are not entitled to contribution from the plaintiff under CERCLA because the plaintiff was not responsible for the environmental damage under CERCLA. *Appleton Papers*, 901 F. Supp. 2d at 1115-17. Because defendants' alleged costs arose "because of CERCLA" and the CERCLA framework dictated that plaintiff should be apportioned none of those costs, the court found that allowing recovery of those same costs through a different pathway (i.e., state law counterclaims) would undermine the CERCLA framework for apportioning environmental cleanup costs. *Id.* As in *Appleton*, Oregon's common law claims arose, at least in significant part, because of CERCLA, but Defendants are indisputably not liable parties under CERCLA's statutory definitions. The State's common law claims seeking recovery of CERCLA response costs must therefore be dismissed.

Moreover, CERCLA's restrictions on natural resource damages in Section 107(f)(1) support dismissal of state law claims—like those here—that undermine CERCLA's principle aim of cleaning up hazardous substances. *New Mexico* is instructive. There, the Tenth Circuit found that CERCLA preempted plaintiffs' state law claims because (1) the natural resource damages sought were duplicative of damages available under CERCLA, and (2) CERCLA

---

F.3d 1111, 1117, 1120 (3d Cir. 1997), *abrogation on other grounds recognized by E.I. DuPont De Nemours & Co. v. United States*, 460 F.3d 515, 522-23 (3d Cir. 2006) (plaintiff's contribution and restitution claims preempted because Congress intended § 113 to be the *sole* means of contribution for CERCLA response costs).

[72] Oregon has *already* recovered RI/FS-related response costs from members of the LWG, and thus may not obtain double recovery from Defendants for those same costs. *See* 2006 Consent Judgment, *supra* note 43, RJN, Ex. 18; *see also* 42 U.S.C. § 9614(b) (barring double recovery).



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

requires that any recovery for damages to natural resources be used solely for restoration or replacement of the damaged resource, not to compensate the State treasury. *Id.* at 1245 n.32, 1247-48.

Here, as in *New Mexico*, an unrestricted award of damages conflicts with CERCLA's comprehensive natural resource damages scheme whereby a plaintiff's recovery must be used exclusively to restore natural resources (and not on, for example, attorneys' fees). *See id.* at 1248.[73] To the extent Oregon's state law claims seek natural resource damages available under CERCLA, those claims cannot proceed as they are in direct conflict with CERCLA's mandate in Section 107(f)(1). *Id.*[74] For this additional reason, Oregon's claims are preempted by CERCLA.

**K. The Port's Prayer for Attorney Fees Should Be Dismissed**

In Oregon, attorney fees are not permitted "unless the award is authorized by statute or a specific contractual provision." *Domingo v. Anderson*, 325 Or. 385, 388 (1997). Oregon is not authorized by any statute to collect attorney fees for its common law claims. *See Perry v. Hernandez*, 265 Or. App. 146, 148-49 (2014) (attorney fees not typically authorized for tenant's negligence, nuisance, and negligent trespass claims); *see also, e.g.*, *City of Portland*, ECF. No. 59, at 43, RJN, Ex. 20; *City of Portland*, 2017 WL 4236583, at *3; ORS 20.080 (attorney fees for damages claims only available where damages are $10,000 or less).

Accordingly, the State's prayer for attorney fees must be dismissed.

## IV. CONCLUSION

The State's Complaint should be dismissed in its entirety with prejudice.

---

[73] Oregon's Complaint alleges harm to the State's natural resources, wildlife, habitat, fish, and birds, and seeks damages for those harms. Compl., ¶¶ 3, 7-9, 100, 105-106, 109, 111, 115, 126-128, 138-140, 143. These are classic natural resource damages.

[74] *See also PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 617-18 (7th Cir. 1998) (allowing the plaintiff to recover for the same costs under the Illinois statute that it was specifically denied under CERCLA would "nullify" the requirement that contribution costs be consistent with the national contingency plan); *Feikema v. Texaco*, Inc., 16 F.3d 1408, 1419 (4th Cir. 1994) (EPA consent order preempted state law trespass and nuisance claims because plaintiffs could not "gain indirectly, through the threat of monetary damages, what [the court has] expressly prevented them from gaining directly through an injunction").



LATHAM & WATKINS LLP
12670 HIGH BLUFF DRIVE
SAN DIEGO, CA 92130
858.523.5400

SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
503.222.9981

Dated: February 12, 2018

By /s/ Richard K. Hansen

Richard K. Hansen, OSB #832231
SCHWABE WILLIAMSON & WYATT
1211 SW Fifth Avenue, Suite 1900
Portland, Oregon 97204
Phone: (503) 222-9981
Email: rhansen@schwabe.com

Robert M. Howard, CSB #145870
*(Pro Hac Vice pending)*
Jeffrey P. Carlin, CSB #227539
*(Pro Hac Vice pending)*
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, California 92130
Phone: (858) 523-5400
Emails: robert.howard@lw.com
jeffrey.carlin@lw.com

Donald F. Zimmer, Jr., CSB #112279
*(Admitted Pro Hac Vice)*
Nicholas D. Kayhan, CSB #129878
*(Admitted Pro Hac Vice)*
Alexandra J. Kennedy-Breit, CSB #316590
*(Admitted Pro Hac Vice)*
King & Spalding LLP
101 Second Street, Suite 2300
San Francisco, California 94105
Phone: (415) 318-1200
Emails: fzimmer@kslaw.com
nkayhan@kslaw.com
akennedy-breit@kslaw.com

*Attorneys for Defendants Monsanto Company, Solutia Inc., and Pharmacia LLC*