```
 1              IN THE UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF OREGON

 3   STATE OF OREGON by and through)
     Ellen F. Rosenblum, Attorney  )
 4   General for the State of       )
     Oregon,                        )
 5                                  )
             Plaintiff,             )  Case No. 3:18-cv-00238-MO
 6                                  )
        v.                          )
 7                                  )  July 19, 2018
     MONSANTO COMPANY, SOLUTIA      )
 8   INC., and PHARMACIA LLC; and   )
     DOES 1-10,                     )
 9                                  )  Portland, Oregon
             Defendants.            )
10   _____)
```

<br>

**Oral Argument**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL W. MOSMAN

UNITED STATES DISTRICT COURT CHIEF JUDGE

```
 1
 2                              APPEARANCES
 3   FOR THE PLAINTIFFS:      Mr. Keith A. Ketterling
                             Ms. Nadia H. Dahab
 4                           Ms. Yoona Park
                             Stoll Stoll Berne Lokting & Shlachter,
 5                           P.C.
                             209 S.W. Oak Street, Suite 500
 6                           Portland, OR 9204

 7                           Mr. Daniel P. Mensher
                             Keller Rohrback LLP
 8                           1201 3rd Avenue, Suite 3200
                             Seattle, WA 98101
 9

10                           Mr. Henry Kantor
                             Oregon Department of Justice
11                           100 S.W. Market Street
                             Portland, OR 97201
12

13   FOR THE DEFENDANTS:     Mr. Richard K. Hansen
                             Ms. Kathryn Kelly
14                           Schwabe, Williamson & Wyatt
                             1211 S.W. Fifth Avenue, Suite 1600
15                           Portland, OR 97204

16                           Mr. Donald F. Zimmer, Jr.
                             King & Spalding LLP
17                           101 Second Street, Suite 2300
                             San Francisco, CA 94105
18

19                           Mr. Adam E. Miller
                             Capes Sokol
20                           7701 Forsyth Blvd., 12th Floor
                             St. Louis, Missouri 63105
21

22   COURT REPORTER:         Bonita J. Shumway, CSR, RMR, CRR
                             United States District Courthouse
23                           1000 S.W. Third Ave., Room 301
                             Portland, OR  97204
24                           (503) 326-8188

25
```

| | |
|---|---|
| 1 | (P R O C E E D I N G S) |
| 2 | (July 19, 2018; 3:11 p.m.) |
| 3 | THE CLERK:  We are here for oral argument in Case No. |
| 4 | 3:18-cv-238-MO, State of Oregon v. Monsanto Company, et al. |
| 5 | Counsel, please state your name for the record, |
| 6 | starting with plaintiff. |
| 7 | MR. KETTERLING:  Your Honor, Keith Ketterling for the |
| 8 | plaintiff State of Oregon, along with Nadia Dahab and Yoona |
| 9 | Park.  And also with us are Dan Mensher of the Keller Rohrback |
| 10 | firm and Henry Kantor from Oregon DOJ. |
| 11 | MR. HANSEN:  Richard Hansen, Monsanto, along with |
| 12 | Donald Fritz Zimmer, Katie Kelly, and Adam Miller. |
| 13 | MR. ZIMMER:  Fritz Zimmer, Your Honor, of King & |
| 14 | Spalding for Monsanto. |
| 15 | THE COURT:  Thank you all.  Go ahead and be seated. |
| 16 | Thank you all for your helpful briefing in this |
| 17 | matter.  Quite frankly, the briefing in this case has been a |
| 18 | cut above whatever the average is, and I appreciate the effort |
| 19 | that went into that. |
| 20 | Let me lay out what I'd like to discuss at oral |
| 21 | argument, and I'm going to reach a point where the main thing |
| 22 | we discuss will be on that sheet of paper that you just |
| 23 | received from me. |
| 24 | So, of course, plaintiff brought this lawsuit in |
| 25 | state court, and Monsanto removed under 28 U.S.C. 1442(a)(1). |

1    And that is a provision of federal law that allows a federal

2    officer to remove the case brought under certain circumstances

3    in state court to federal court.  What's relevant for our

4    purposes is the parenthetical that says, "a federal officer (or

5    any person acting under that officer)."  And what's been

6    attempted to be defined since is what that parenthetical means.

7         The core of the statute, of course, gets at an actual

8    federal officer sued initially in state court, and in my

9    experience, its most common application in cases not directly

10   involving federal officers is state and local law enforcement

11   officers acting on task forces.  So that gives you some idea of

12   what the core of the statute gets at.

13        What is clear in cases where someone is relying on

14   this parenthetical, (a)(1)'s parenthetical, is that the person

15   must be acting under the federal officer's subjection, guidance

16   or control.  And that's right out of *Watson*.  Or to put it

17   another way, "acting under" must involve an effort to assist or

18   help carry out the federal superior's duties or tasks.

19        There may be more to discuss about that standard, but

20   I think that's the core of the standard, and I think the

21   parties generally agree, although there's some discussion of

22   what other cases might do at the perimeter of that standard,

23   but none of that really alters that core standard in any

24   meaningful way.

25        And so someone asserting -- a person who is relying

1  on this for proper removal under Section 1442(a)(1) has to show

2  three things:  the one I just mentioned, that it took action

3  under a federal officer's subjection, guidance or control; two,

4  that there's a causal connection between the claimed harm or

5  conduct and the federal control -- that is, that the complaint

6  arises out of the acts done by it under federal control; and

7  three, that it can assert a colorable federal defense.

8          So if I have this right, Monsanto asserts three

9  possibilities here for colorable federal defense:  one is the

10  government contractor defense, which I'll discuss more fully

11  later; and the other is the Defense Production Act defense; and

12  the third is a sort of a defense of preemption.

13          So for oral argument purposes, I'm going to have you

14  rest on the briefing on preemption.  We won't need to discuss

15  that any further under CERCLA, and we'll discuss the other two

16  as it goes along.

17          So the test to apply here is whether, one, this case

18  at this stage involves action taken by Monsanto under a federal

19  officer's subjection, guidance or control; two, is there a

20  causal connection between those controlled actions and the

21  claims; and three, whether Monsanto has a colorable government

22  contractor or DPA defense.

23          I want to get -- I want to talk about and in some

24  cases get rid of some preliminary or predicate matters.  So

25  first is this question of facial versus factual challenge,

1   because it does impact the burden of proof possibly on

2   Monsanto, and in my view, it's a factual challenge that

3   plaintiff raises here.

4        In a factual challenge, plaintiff contests the

5   removing party's factual assertions, and it's true for what

6   it's worth that many of the factual assertions Monsanto makes

7   here are not contested.  Perhaps numerically most of them are

8   not contested for today's purposes.  But when Monsanto asserts,

9   and the State disagrees with the assertion that, quote, the

10  federal government -- just as an example, that the federal

11  government financed the expansion of Old Monsanto's facilities,

12  when Monsanto asserts that and the State disagrees with that,

13  what you have is a factual disagreement, a fact dispute.  And

14  that triggers the burden to produce competent proof of the

15  asserted fact, the burden on Monsanto.

16       Facial, in my view, would be something more abstract.

17  Facial would be somebody arguing -- just to attempt a facial

18  argument here -- that no private party can rely on 1442(a)(1),

19  for example, and the facts don't matter, it's just the statute

20  itself.

21       There's been some discussion about whether *Watson*

22  states the controlling standard in light of subsequent cases --

23  *Leite*, *Cabalce*, even *Goncalves* -- and the answer is yes, it's

24  still the controlling standard, and what I've stated I think is

25  a fair statement of what *Watson* sets out as the controlling

1    standard.

2           There's a discussion of -- so eventually -- again,

3    these housekeeping predicates are not all analytically in

4    order, but eventually we get to a discussion if I thought it

5    was important on whether you get federal question jurisdiction

6    in this case by virtue of the impact on federal enclaves.  And

7    I don't need to hear any oral argument about federal enclaves.

8           There's also some discussion about whether

9    consolidation is a factor that might tilt my thinking towards

10   finding jurisdiction here, and I don't want to hear any further

11   about that.

12          There's been a request that I take judicial notice of

13   a number of facts.  Some are unobjected to, and I also find

14   them, the ones that are unobjected to, at least potentially

15   useful for the analysis, and so I'll take judicial notice of

16   them.

17          I deny the request to the degree that the State

18   objects, because I find the State's objections are those things

19   I don't believe are relevant to my analysis.

20          So what we are left with is taking the asserted basis

21   for federal officer jurisdiction and running them through a

22   sort of three-part matrix:  is there a showing of the necessary

23   degree of control; is there a showing of the necessary nexus;

24   and is there a viable either government contract or a DPA

25   defense available.

1        And so I don't want to do violence to the entire

2   structure of the argument you've presented.  I'm willing to

3   hear it in a way that you think will best allow you to present

4   what you wanted to say, but those are the issues that --

5   grounded in the asserted bases for jurisdiction I think will

6   help me the most.

7        Before I close my little opening soliloquy here, I do

8   want to make sure that the six asserted bases that we've culled

9   from the briefing covers the ground for the asserted bases that

10  Monsanto has before me today.  Does it?

11       MR. ZIMMER:  Your Honor, I've been reviewing that as

12  you've been speaking.  I do see a couple of other things that I

13  don't see registered in the Court's list, if you don't mind my

14  offering that.

15       I think there are some exhibits that refer to

16  unwilling sales that Monsanto made to the government that I'd

17  certainly like to call the Court's attention to, in particular,

18  at Exhibit 6, 21, and 23.

19       And I have to admit I was trying to concentrate on

20  what Your Honor was saying, so I'm not sure that I might not

21  find others, but that's the one --

22       THE COURT:  You'll let me know as you have a chance

23  to consider them further.

24       MR. ZIMMER:  Thank you, Your Honor.

25       THE COURT:  Obviously this isn't anything other than

1  a guide to oral argument, so you're not bound by it.

2           MR. ZIMMER:  Understood.

3           THE COURT:  So it's the State's motion to remand.

4  I'll turn to the State first.

5           MR. KETTERLING:  Thank you, Your Honor, and thank you

6  for the guidance.  I think I'm pretty much done with my

7  argument at this point.

8           What I want to address, given the Court's guidance,

9  is first I want to talk briefly about *Watson* and about *Leite*

10 and *Cabalce*.  And I think what's important is the Court has the

11 right standard from *Watson*, but *Watson* is very specific and

12 says the removal limits are not limitless, that even though

13 there are grounds for removal, they're not limitless.  They

14 have to be applied with some guidance.

15          And *Leite* --

16          THE COURT:  I'm not sure how that advances the ball

17 much.

18          MR. KETTERLING:  Well, I think it says --

19          THE COURT:  I agree.  I agree that the removal

20 standards don't allow for limitless removal.

21          MR. KETTERLING:  And so then you look at *Leite* and

22 *Cabalce*, and one shows, you know, a clear example of what is

23 satisfactory to allow for removal -- that's *Leite* -- and then

24 *Cabalce* shows exactly what's not enough.

25          And if you look at those two cases, I think it's --

1    in our position, it's very difficult to see how Monsanto falls

2    anywhere near the *Leite* standard at all.  And if you look at

3    *Watson* and the history that *Watson* provides us with why this

4    statute came about, again none of that is implicated in this

5    case.  And when we're talking about federal officer control,

6    direction, in one sense it's really a matter of is this

7    essentially an employee acting in the course and scope of their

8    employment or is it an independent contractor.  Does the

9    employer, does the government, the federal officer have such a

10    level of control and direction, much as you look at in the

11    employment independent contractor analysis as well.  Does the

12    government have that much control that it is literally telling

13    the defendant in this case, Monsanto, what we want in this

14    product, not that we want your product to go into this other

15    product.

16          And the evidence that we've seen, nowhere does it

17    provide any specifications of what Monsanto needs to put into

18    its PCBs.  It calls out --

19          THE COURT:  That's a little difficult, right, in a

20    PCB case, because if the federal government orders up a

21    helicopter and then provides detailed specifications for what

22    it wants in the helicopter, then that's understandable.

23    There's a million ways to make a helicopter, and you'd have to

24    say this is what we want:  We want six seats not five, we want

25    four windows not eight, et cetera.  On you go until you've got

1    500 pages of specifications on your helicopter.

2           If the federal government says, well, we want to buy

3    helium from you, well, then they don't need any specifications,

4    right?  We want you to sell us something and it has to have

5    helium in it.  I mean, that's the end of the specifications,

6    right?  You can't further specify helium.

7           MR. KETTERLING:  If you are simply buying a product

8    off the shelf that that company manufactures --

9           THE COURT:  I don't care about off the shelf or not.

10   I'm just talking about specifications.

11          MR. KETTERLING:  But that's not controlling or

12   directing the company in any sense.

13          THE COURT:  What you're saying is that you think it's

14   insufficient if the federal government says, "If you're going

15   to sell us this product, it must have PCBs in it," right?

16   You're saying that's insufficient because that's just one

17   sentence; it's not very specific.

18          Do I have your argument right?

19          MR. KETTERLING:  Except that even in the evidence

20   that's been put forth, the government doesn't just say, "We

21   want your PCBs."  Back in Exhibit 4, I believe it is, it says,

22   "This is simply a suggestion that the supplier can use anything

23   that is equated to this."

24          THE COURT:  Sure, we'll get to that.  That's a

25   factual exception.  But I want to make sure I understand your

1    broader argument, which I thought was that if the government

2    says it wants PCBs in the product and doesn't say anything more

3    about the PCBs, like how they must be made or what they must be

4    composed of or something like that, that that's insufficiently

5    demanding to meet the control standard of *Watson*.  Is that your

6    argument?

7              MR. KETTERLING:  I think it is.

8              THE COURT:  All right.  And so my point was I

9    understand that argument with helicopters and I think it fails

10   with helium.  Right?  Would you agree with that?  If you say,

11   "I want you to put helium in it," there's nothing more you can

12   say, it's either helium or not helium.

13             MR. KETTERLING:  But that doesn't provide federal

14   officer direction.  That's the federal government purchasing a

15   product.  That's not the federal government directing you how

16   to make that product.  If anything the federal government

17   purchased would implicate the federal officer removal statute,

18   then there would be no state court cases.  Every case involving

19   anyone who provided any product to the federal government would

20   implicate 1442(1).

21             THE COURT:  What I'm trying to figure out is the

22   level of control involved here, and I want to understand your

23   argument that it's not there when the government simply says,

24   "We request that PCBs be in the product" or that we request

25   that anything be in what we purchase.  The federal government

1    can buy something and it can say, "When we buy this thing, it

2    has to have the following elements."  And you're saying that if

3    that's all the government does, just says this product that we

4    want to buy must contain the following elements, that's

5    insufficient control?

6            MR. KETTERLING:  Yes, it is.

7            THE COURT:  And if the specification list isn't long

8    and demanding, you know, we want to buy a toilet for our jets,

9    and it's got to be exactly like this, and the specifications go

10   on for 25 pages, is that demanding enough?  I mean, is there a

11   point where it can be so specific about what it wants to buy

12   that it meets the *Watson* standard?  Is there any point where it

13   can meet the *Watson* standard by being so specific about what it

14   wants to buy?

15           MR. KETTERLING:  Depends, I think, on whether you're

16   talking about the actual manufacture of the entire product or

17   if you're talking about just one component of that product.

18   And if you -- if the federal government goes and says, this is

19   how we want our toilets built, and it gets into every detail,

20   every little detail may not -- every supplier, every

21   subcontractor is not necessarily a federal officer directorate,

22   but that overall manufacturer, if it's doing it exactly the way

23   the government says, that could implicate federal officer

24   removal.  We're not at that point here.  We're at a point --

25           THE COURT:  That's a different argument.  That's

1   saying that you're just a supplier to someone who is in a

2   contractual relationship with the government.  That won't

3   work -- or rather that Monsanto is, that that won't work,

4   right?

5          MR. KETTERLING:  Right.

6          THE COURT:  I'm trying to make a more elemental point

7   and make sure I understand your position, and that is you do

8   agree that the federal government in buying something can be so

9   specific that at least as to the person providing the product

10  in the direct selling relationship to the government, it would

11  meet *Watson*'s control standard.  That's possible, do you agree?

12         MR. KETTERLING:  It's possible.  I'd have to see a

13  specific situation, but yes, I would agree that it's possible.

14         THE COURT:  And so what we have to ask is not whether

15  it's merely a purchase by the government but whether it's a

16  purchase by the government that has a lot of specificity and

17  demand to it made not to somebody else but to Monsanto.  And if

18  it has a lot of it, then maybe we're getting there, and if

19  there's not much, we're not getting there, right?

20         MR. KETTERLING:  Right.  If there's specificity to

21  Monsanto as to we want you to produce this compound this way,

22  there are lots of different PCB combinations and --

23         THE COURT:  That's what I wanted to ask.  My point on

24  helium is there's only one way to provide helium:  You go find

25  helium and put it in there.  There's a million ways to make a

1   helicopter.

2            On that continuum, where is PCB?

3            MR. KETTERLING:  On that continuum, PCB is --

4            THE COURT:  There's a lot of ways to make it?

5            MR. KETTERLING:  There's a lot of ways to make it and

6   the government is not calling for a specific -- the government

7   is simply asking for an off-the-shelf product to be contained

8   in the product that it's ordering.  It's not directing

9   Monsanto, we want PCBs and we want you to make them this way or

10  we need it done this way.

11           THE COURT:  All right.  So that's your argument, and

12  then you have two other arguments.  One is that in some of the

13  instances we'll discuss, the requirement to put in PCB isn't

14  even made to Monsanto, it's made to somebody else who then asks

15  Monsanto to help them out.  That's your argument, right?

16           MR. KETTERLING:  That's one of the arguments, yes.

17           THE COURT:  And another argument is that sometimes

18  the government doesn't even say "must."  It just says, "Well,

19  maybe we'd kind of like it, but you can do something else if

20  you would like."

21           MR. KETTERLING:  Yes.

22           THE COURT:  All right.  Let's go with the chart I

23  gave you and walk through it one by one.

24           As to the *Watson* three-part test, what's your

25  argument on necessity certificates?  Does that show enough

1    control?

2         MR. KETTERLING:  Your Honor, I don't think that shows

3    any control.  I think that shows a tax credit.  It doesn't show

4    the government telling Monsanto what to do, how to manufacture

5    PCBs in any sense.  It shows a touch, a connection to the

6    federal government in the manner of tax credits it gets.  It's

7    not the government saying, "We want you to build this factory

8    to build PCBs like this."

9         So I think the necessity certificates aren't even

10   close to being government control of Monsanto.

11        THE COURT:  It encourages PCB production, right?

12        MR. KETTERLING:  Encourages anything else Monsanto

13   wants to make as well with the tax credits.  It's not --

14        THE COURT:  Maybe as well, but not to the elimination

15   of PCB, right?  It does, in fact, encourage PCB production,

16   right?  That's not a hard question, Counsel.

17        Let me state it instead of make it a question.

18        It does encourage PCB production.  Your argument is

19   the government encourages a lot of things.  That's not *Watson*'s

20   control, though.

21        MR. KETTERLING:  It may encourage it through tax

22   credits that this company can make PCBs, yes.

23        THE COURT:  All right.  So as to the necessity

24   certificates, you don't think the control under *Watson* is

25   there.

1          What about the nexus, the expanded facilities -- the

2    PCBs, rather, produced at these expanded facilities, expanded

3    from encouragement of a necessity certificate went to Oregon,

4    made it to Oregon.  Is that known?  Unknown?  Didn't happen?

5    What's the deal?

6          MR. KETTERLING:  There's no proof.  It's not our

7    burden on this.  It's their burden to prove by preponderance of

8    the evidence that there is that causal nexus and the --

9          THE COURT:  Your contention is that right now it's

10   simply not alleged, the nexus is not alleged?

11         MR. KETTERLING:  Yes.  There is no showing of any

12   nexus between the federal government's direction of the

13   necessity certificates and manufacturing of PCBs that were

14   targeted to come to Oregon.

15         THE COURT:  All right.  And as to the -- this one

16   would only involve, I think, the government contractor defense.

17   We didn't talk about its subparts, but you've briefed them, the

18   four subparts to the government contractor defense?

19         MR. KETTERLING:  Yes.

20         THE COURT:  Do you find that any or all of them fail

21   here?

22         MR. KETTERLING:  I think in the government contractor

23   defense, I think first of all, in looking at a colorable

24   federal defense, I think the standards are important, and I

25   think the *Holdren* case talks about the plausibility of the

1    defense, not just saying there's a defense but the colorability

2    relates to whether it's really plausible.

3            In this case there isn't any evidence that it applies

4    or that Monsanto is a contractor who designed and manufactured

5    military equipment for the government.

6            It also doesn't show that the U.S. -- and this is the

7    language from *Boyle*, I believe.  "U.S. approves reasonably

8    precise specifications and contractor warns the U.S. about the

9    dangers of the use of the equipment."

10            Now, that doesn't mean that they don't have the

11    ability to raise a federal defense in state court, but I don't

12    think they have brought it to a level in these pleadings where

13    there's a colorable federal defense that they can assert under

14    these grounds.

15            THE COURT:  All right.  Thank you.

16            I think what I'd like to do, rather than hear all of

17    your arguments on all of this, is just go back and forth one at

18    a time.

19            MR. KETTERLING:  Sure.

20            THE COURT:  Does that pose any problem for you?

21            MR. KETTERLING:  No.

22            THE COURT:  All right.  So I'd like to go through the

23    three-part matrix on the necessity certificates, first as to

24    the degree of control involved under *Watson* by the issuance

25    from the federal government of these necessity certificates.

1      MR. ZIMMER:  Fair enough, Your Honor.  I'm going to

2  take the podium, if I may.

3      THE COURT:  That's fine.

4      MR. ZIMMER:  I also have -- I don't know if you want

5  to get it now or later, but I have a slide deck as well.  It's

6  shorter than Mr. Howard's and I'm not going to put it up on the

7  screen but I'll at least hand it out.

8      THE COURT:  That's fine.  Please do.

9      MR. ZIMMER:  (Handing.)

10     All right.  Thank you, Your Honor.

11     Let me start by saying something about the issue of

12  the helicopter analogy which Your Honor raised.  Helium is

13  about as close to this as you can get.  PCBs are a molecule,

14  and if you change that, then they're no longer a PCB.

15     You saw in evidence that we've submitted that the

16  government, for example, ordered Monsanto, directed them to

17  supply Aroclor 1242 to Raytheon.

18     By the way, as a quick aside, there's no question but

19  that we are a subcontractor in many of these situations.  As

20  our papers indicate, the cases don't distinguish between

21  subcontractors and contractors.  So I think everybody --

22     THE COURT:  Well, they don't distinguish in the sense

23  that the government can exercise sufficient *Watson*-level

24  control over subcontractors as well as contractors.  You still

25  have to show that control by you as a subcontractor.

1    MR. ZIMMER:  Correct.  But in the analogy I'm giving

2    you -- or the example I'm giving you, rather, that's borne out

3    in our papers and the exhibits, when Raytheon needed missile

4    potting material from Monsanto that included Aroclor 1242, that

5    product is specified, and if that molecule were changed, if

6    1242 was altered in some way, it wouldn't have satisfied that.

7    And the evidence shows that the government declined to agree to

8    any other material that would satisfy that purpose.

9        THE COURT:  So it is your position, picking up the

10   sort of semi-parade of horribles you just heard, that any time

11   the government reaches out into the marketplace and says, well

12   what we want to buy must have this component in it, and

13   specifies the competent, that a dispute over that commercial

14   transaction could end up in federal court?

15       MR. ZIMMER:  Well, Your Honor, I think it depends on

16   the type of product that it is and how long and specific, if

17   you will, that process of compulsion goes on.  Here you've seen

18   it transcend several wars and conflicts and a good deal of

19   years.

20       And, of course, what you heard from opposing counsel

21   is that we somehow have to now within 30 days of being served

22   with the complaint prove all these things that occurred

23   somewhere between 40 and 89 --

24       THE COURT:  Counsel is not making you do that.  I

25   mean, that's just what the law is.  Right?

1          MR. ZIMMER:  Right.

2          THE COURT:  And that's everybody -- that's everybody

3     who removes a case.  If you remove a case, you'd better be

4     ready to defend the removal pretty quickly.  That's how civil

5     procedure works.

6          MR. ZIMMER:  Understood, Your Honor.  And I think we

7     have done that but I want to make one observation because it

8     came up earlier as well in Your Honor's comments about facial

9     versus factual attack.  With all respect, I do think this is a

10    little different from a pure factual one, for the primary

11    reason that the *Leite* case talks about what was shown there,

12    and the showing that they made as a factual challenge to what

13    had been proffered when the removal was made was to introduce

14    extensive evidence outside the pleadings.  And that included

15    military specs, technical manuals, warning label guides, and

16    deposition excerpts.  None of that has been done here.  In

17    fact, the only thing that's been done here is for counsel to

18    make their own argument and interpretation.  And I would simply

19    submit that the argument of counsel is not enough to change

20    that from a facial to a factual.

21         THE COURT:  Thank you.  Let's turn to the necessity

22    certificates.

23         MR. ZIMMER:  All right.

24         Now, you've seen in our papers, Your Honor, that the

25    Anniston, Alabama plant was expanded dramatically, and indeed,

1   there's really no dispute that the number is somewhere between

2   and 80 and 100 percent of its production was devoted to

3   wartime.  The papers I think from both sides came to agreement

4   on that.

5            THE COURT:  That doesn't help me with the question of

6   control.  That that fact happened is agnostic on the question

7   of control.

8            MR. ZIMMER:  Well, let me say, Your Honor, I think

9   the exhibits we've submitted -- and you've got the numbers

10   correct there, 11 through 16, there may be one or two more --

11   describe that process as one that the government was insisting

12   upon.  They needed and, in fact, were paying, if you will,

13   Monsanto for production of this essential wartime project.

14   That's why that plant expanded.

15            THE COURT:  Your client was encouraged to expand

16   through a tax credit, right?

17            MR. ZIMMER:  Yes, Your Honor.  And, in fact --

18            THE COURT:  And it did expand because it got a tax

19   credit -- well, in part.  Who knows why else.  But in part

20   because it got a tax credit to expand.

21            So the control is -- they could have not expanded,

22   correct?

23            MR. ZIMMER:  Well, I suppose that's possible, Your

24   Honor, but given the way these exhibits read, it certainly

25   looks as if the government is insisting that they need more and

 1    more of this and that Monsanto is falling short of it, they

 2    need to expand.

 3              THE COURT:  You mention in your brief that this is a

 4    point -- I think this may be one of the points you're talking

 5    about, that Monsanto would have ignored the encouragement of

 6    the government to expand here at its peril.  What does that

 7    mean?

 8              MR. ZIMMER:  Well, for example, Your Honor, there are

 9    orders that are made exhibits to our papers that show that the

10    Defense Production Act was invoked.  So it left us with no

11    option.

12              And one very important detail that I don't think we

13    made enough of in our papers, and I want to make sure I call to

14    the Court's attention here, is that several of the orders that

15    we marked as exhibits -- and I can give you examples in a

16    moment, but several of them talk about orders that we were

17    directed to fill after 1970 and '71.  And in 1970 and '71,

18    that's the time frame in which Monsanto stopped selling PCBs

19    commercially for most uses.  The only ones that continued were

20    in very closed settings, such as capacitors and transformers.

21              THE COURT:  All right.  So on the necessity

22    certificates, your argument is that it was a powerful push by

23    the government that you would have only been able to ignore --

24    that is, say no to -- at your peril, right?  That's the control

25    argument.

1     MR. ZIMMER:  That is correct, Your Honor.

2          And I do want to make one brief point about the

3     financial aspect of this.  I am still a little surprised at

4     whether there is a meaningful distinction between a tax credit

5     and an actual check being written.

6          THE COURT:  There is no financial distinction.  I

7     agree with that.  No economist on Earth thinks there's a

8     financial difference between a payment -- a financial payment

9     by the government and a tax credit.

10         But it can be very different for control purposes.

11    The government could give the states money under the Federal

12    Highway Act and say, "You take this money, the speed limit has

13    got to be 55."  Or the government can give states money under a

14    block grant and say, "Do whatever you want with it."  They're

15    both dollar-for-dollar transfers but they have a different

16    flavor on the question of control.  So to say that there's no

17    economic difference between the two doesn't really advance your

18    argument much.  It's all about control.

19         Let's turn to nexus.  What's the nexus between the

20    necessity certificates and the problem here in Oregon?

21         MR. ZIMMER:  Well, Your Honor, here I have to fall

22    back again on what the Ninth Circuit cases say, *Leite* and

23    others, that indicate that the defense theory of the case is

24    the one that should apply.

25         THE COURT:  Sure.  So do you have allegations here

1  that show that the expanded facilities produced PCBs that ended

2  up here in Oregon?

3          MR. ZIMMER:  We do, Your Honor.

4          THE COURT:  Where?

5          MR. ZIMMER:  Well, we have been charged with, if you

6  will, in plaintiff's complaint, responsibility for virtually

7  every PCB molecule that ever existed.

8          THE COURT:  Well, you just told me that's not the

9  theory I should care about.

10         MR. ZIMMER:  I'm sorry, Your Honor?

11         THE COURT:  You just told me plaintiff's theory is

12 not the one I should care about.  So I'm looking for you to

13 show me where you pled or alleged that the expanded facilities

14 expanded under the necessity certificates produced PCBs that

15 ended up here in Oregon.  Did you do that?

16         MR. ZIMMER:  I can do that, Your Honor, by indicating

17 that all of those PCBs were made for the wartime effort -- this

18 is in World War II when that expansion occurred -- and thus

19 wound up in Navy and other ships, which then, of course, have

20 traversed the whole country, and many of them wound up here in

21 shipyards, where they were repaired, sometimes actually

22 manufactured.

23         THE COURT:  It's not absolutely necessary, but

24 probably at least at some point the answer to my question

25 requires a citation to where you said that in any pleading.

1    Did you say anything like that or are you just saying that here

2    in oral argument?  Did you say the expanded facilities ended up

3    in ships and some of those ships came into the Portland Harbor?

4         MR. ZIMMER:  I can't point you to a specific place in

5    our papers where we did that, Your Honor, but I'm certainly

6    asserting it today, and I don't think that it's in dispute,

7    because the --

8         THE COURT:  Well, it is in dispute.  It's very much

9    in dispute.  That's exactly the dispute.  And the point is --

10   and this is where we get back to factual versus facial.  The

11   point is they say you have to show a nexus and you haven't

12   alleged a nexus.

13        So I'm just asking have you met your burden of

14   alleging a nexus?

15        MR. ZIMMER:  Let me back up a step, then, and

16   indicate perhaps I haven't explained what I think our nexus

17   theory of the case is adequately.

18        What I'm suggesting is if they are tarring us with

19   responsibility for every molecule, then our theory of their

20   case is anywhere it's found, we're going to be responsible for

21   it, so that means every molecule counts, and we don't need to

22   go further than that to say that any expansion --

23        THE COURT:  In fact, then, you don't have to show any

24   particular nexus.  You're just saying if it's a PCB molecule

25   and they say it's ours, then somehow -- I think the argument

1    they posed to you in contrast, at least in the pleadings, is

2    they believe the nexus argument requires that the activity --

3    the asserted basis for jurisdiction that you're asserting has

4    to have resulted in the harm that they claim.

5            So you're saying just anything we did at any time

6    might conceivably have resulted in a Navy warship coming

7    through Portland, and that would be part of the contamination.

8            MR. ZIMMER:  Well, I'm saying a little bit more than

9    that, Your Honor, but I agree with your summary of it.

10           The point is that we know and it really can't be

11   reasonably disputed that several shipyard building operations,

12   repair facilities, and decommissioning operations occurred in

13   the Portland Harbor.  There's a whole host of things that took

14   place there.

15           In fact, I brought with me something that we found

16   after the briefs were filed that I would like to submit and

17   offer to plaintiff's counsel as well, which is from their own

18   website, the State's website.  And it acknowledges that

19   shipyards are, in their view, a suspected source of PCB

20   contamination.  That's not a topic, I don't think, Your Honor,

21   that really can be subject to dispute.

22           Let me, if you don't mind my stepping away --

23           THE COURT:  I don't think you need to add that to the

24   record.  That's not the most shocking thing I've heard today.

25           MR. ZIMMER:  Fair enough.

1    I'm happy to respond to other questions about that
2    point if you would like me to.
3    THE COURT:  No, I understand your nexus argument.
4    It's a broad nexus argument, but I think I understand it.
5    MR. ZIMMER:  And I do think it's supported by the
6    case law, because once again the cases uniformly say in the
7    Ninth Circuit that it's the defense theory of the case that is
8    to apply.  I think that's reflective, Your Honor, of the stage
9    where we are.  And, you know, I practiced for 35 years --
10    THE COURT:  I don't know that saying that the defense
11    theory of the case means that I simply have to accept the
12    defense theory of nexus.  Just because you've stated a theory
13    of nexus doesn't mean it's satisfactory.  I don't know one way
14    or the other if it is or isn't yet.  You seem to suggest that
15    the Ninth Circuit is telling me that if you have a theory of
16    nexus, that's the one I should apply.
17    MR. ZIMMER:  Well, that's my read of the cases.  They
18    actually single out that stage of the test that you're
19    describing, the causal nexus, and they say the defense theory
20    of the case is the one that applies to that.
21    THE COURT:  Are you asserting then a government
22    contractor defense as the defense that you'd have to be able to
23    show under *Watson*?
24    MR. ZIMMER:  Your Honor, we're asserting --
25    THE COURT:  As to the necessity certificate?

1          MR. ZIMMER:  Correct.  Not only that, but also -- and
2    Your Honor already mentioned this, that we have three colorable
3    defenses we're asserting:  a government contractor defense;
4    along with the Defense Production Act that I referenced
5    earlier; and then the topic that I still assume you don't want
6    to hear more about, which would be express and implied
7    preemption under CERCLA.
8          THE COURT:  So how do the necessity certificates
9    satisfy the elements of the government contractor defense?
10          MR. ZIMMER:  Well, I've already acknowledged, Your
11    Honor, that in most of the settings we're talking about here we
12    were acting as a subcontractor to other companies, either
13    Raytheon, GE, Westinghouse -- you saw the names of several
14    others -- when we were supplying these materials to them.  That
15    became an important component part of what they were producing
16    for the military.  But, again, it was one that the military has
17    shown was essential in the communications that are reflected in
18    our exhibits.
19          THE COURT:  One element is that the supplier --
20    that's you -- warned the U.S. about dangers.  Is that --
21          MR. ZIMMER:  I'm sorry, Your Honor?
22          THE COURT:  One element is that the supplier --
23    that's you -- warned the U.S. about dangers.  Is that in the
24    record here?
25          MR. ZIMMER:  That is in the record, Your Honor.  And

1    indeed, going back to the 1972, '73, and '74 exhibits that we

2    were speaking about a moment ago, Monsanto amply did that,

3    informing the government that it no longer was selling these.

4    In fact, there are exhibits that we've submitted that said it

5    didn't want to, and yet it was still compelled to.

6              THE COURT:  All right.  Thank you.

7              MR. ZIMMER:  Thank you, Your Honor.  I have other

8    comments if you'd like to hear them, but they're on slightly

9    different topics.

10             THE COURT:  Let's stick to these in a row.  I'm not

11   going to cut you off.  I'll hear from you later.

12             MR. ZIMMER:  Understood.  Thank you.

13             THE COURT:  On the list I've given you -- Let me make

14   sure I have the right list in here front of me.  The second

15   would be the DPA orders as a group.

16             For the State?

17             MR. KETTERLING:  Your Honor, respectfully, I don't

18   see how the DPA orders add anything to this case.  They -- I

19   think there are two at the most, and they simply tell Monsanto

20   to prioritize these orders that have already been placed by

21   other purchasers.  I don't see how that --

22             THE COURT:  There's two things going on here.

23   There's what the statute says and what the orders say.  And the

24   order reads as though the government is actively directing

25   Monsanto to produce PCBs for Raytheon; that they must do it.

1           Let's assume just for a moment that that's the case,
2    that the government tells Monsanto, you have to produce PCBs
3    for Raytheon even if Monsanto doesn't want to.  Now, that's not
4    a lot of specifications, that's not a lot of, you know,
5    requirements and, you know, things about how it has to be
6    produced or when or under what circumstances or in what kind of
7    factory, but it is a fairly high level of control for the
8    government to tell a manufacturer, you must make this for
9    someone and send it to them.
10           Is that bare fact alone, if it's true -- I'll allow
11   you to disagree in a moment.  But if that fact is true, is that
12   bare fact alone, that the government says to Monsanto, you have
13   to make this, enough to be control?
14           MR. KETTERLING:  And I do contend that that fact is
15   not true, but it is still not enough to be control.  It is
16   not -- it's not any precise specifications as required by
17   *Watson* or the *Holdren* case or the *Boyle* case.
18           THE COURT:  So if the government says, "We don't care
19   how you make it, but what we also don't care about is you don't
20   want to make it.  You must make it, make it now, and send it to
21   Raytheon," that's not enough control?
22           MR. KETTERLING:  No.  It's a product they already
23   have.  It's not we want you to start up this plant and make
24   specifically this type of Aroclor.  It is you have this product
25   and we want you to sell it to Raytheon.

1           THE COURT:  So if the government says to the steel

2      industry, you must quit making cars, you must give us your

3      steel for tanks and planes, that's not control?

4           MR. KETTERLING:  I don't think that's control for

5      federal officer jurisdiction.

6           THE COURT:  All right.  And then on nexus as to the

7      DPA orders?

8           MR. KETTERLING:  I don't think the DPA orders have

9      anything to do with Oregon whatsoever, and I don't think

10     there's any proof that the DPA orders, the ones that are in the

11     record at least, simply say prioritize these shipments.  It

12     doesn't say we want this --

13          THE COURT:  So for you nexus means that Monsanto

14     delivered PCBs to Oregon in response to the DPA orders, right?

15          MR. KETTERLING:  I think there has to be some type of

16     nexus.  That would be ideal, but they don't have any --

17          THE COURT:  If the DPA orders say, make this -- make

18     these PCBs and send them to Maryland, and then we don't know

19     what happens after that, that's insufficient nexus in your

20     view, right?

21          MR. KETTERLING:  If they say make these PCBs and send

22     them to Maryland?

23          THE COURT:  Send them to Raytheon.

24          MR. KETTERLING:  That's a nexus to Oregon.

25          THE COURT:  And what do you make of the idea that we

1    just heard of a nexus theory that says, look, you say you --

2    your client says that the PCBs that are here in Oregon were

3    made by Monsanto, therefore that's nexus.  You say they made

4    them so there's your nexus.

5            What do you think of that nexus theory?

6            MR. KETTERLING:  Well, you can't forget that the

7    nexus has to be also because of the federally directed

8    activity.  The fact that Monsanto made some PCBs for the

9    government or end up in government hands, and many PCBs for

10   other industries doesn't mean that there's a nexus just because

11   we're suing on PCBs here.

12           THE COURT:  So you're not asserting -- you say I

13   shouldn't look at a nexus to Monsanto but rather a nexus to the

14   federally controlled activity by Monsanto?

15           MR. KETTERLING:  As I read the case law, that's

16   what's required is the nexus has to be because of the federally

17   directed activity.

18           THE COURT:  And what about the idea that -- Let's say

19   I find control on, say, the DPA orders or something else.  No

20   direct nexus at that moment to Oregon, but the theory is that,

21   you know, warships floated through the harbor and dropped PCBs

22   while they were here.

23           MR. KETTERLING:  I don't think there's any proof of

24   that nexus at all, and we talk about the factual versus facial.

25   We're not required to disprove a negative.  It's their

```
 1    responsibility to provide factual evidence that proves their
 2    removal basis of federal officer direction and a causal nexus
 3    to Oregon, to the claims we bring here.
 4              THE COURT:  All right.  Thank you.
 5              And as to the last prong, the colorable defense
 6    prong, your argument?
 7              MR. KETTERLING:  I don't see that there's any
 8    evidence in the record that again reasonably precise
 9    specifications done for military purposes, contractor warns the
10    U.S. specifically about the dangers of the product.
11              THE COURT:  Do you agree there was a warning on the
12    record here in this case?
13              MR. KETTERLING:  I don't think there was a warning.
14    I think years after -- I mean, near the end, Monsanto got what
15    could best be classified as a get-out-of-jail-free card or
16    attempt, but not even from the government.  And it wasn't that
17    we don't think these should be produced.  I don't think that's
18    in the record.
19              THE COURT:  All right.  Thank you.
20              On the DPA orders?
21              MR. ZIMMER:  Thank you, Your Honor.
22              And I think I am going to go ahead and submit, if you
23    don't mind, as a supplemental exhibit this State of Oregon
24    website --
25              THE COURT:  That's fine.
```

1          MR. ZIMMER:  -- that we obtained.  (Handing.)

2          THE COURT:  I think I understand your control

3   argument here already.  I believe I've heard your nexus

4   argument.  The same nexus argument you made earlier would apply

5   here, right?

6          MR. ZIMMER:  It would, Your Honor, but with one

7   additional wrinkle.  Let me indicate this is dated -- it's

8   called a PCP "Fact Sheet:  Sources of Polychlorinated

9   Biphenyls."  It's from oregon.gov's website, and it's dated

10  8-6-03.

11         And I want to point out here that they acknowledge in

12  a section right on the first page entitled "background" that

13  "Because of health concerns, in 1971 Monsanto voluntarily

14  restricted manufacturing of PCBs to use only in closed

15  systems."

16         And because we were speaking about the dates of when

17  we were compelled to make additional sales to the government,

18  sometimes postdating that 1971 date, I wanted to make sure you

19  knew that that was in here.

20         THE COURT:  Thank you.

21         MR. ZIMMER:  In addition, on the last -- or sorry,

22  third-to-last page of this exhibit, there is a section in

23  Attachment 2 entitled "Fate and Transport of PCBs."

24         Forgive me, Your Honor, I should be standing.

25         THE COURT:  That's fine.  You can remain seated.

1          MR. ZIMMER:  All right.  Thank you.

2          On this page in the second paragraph, right

3    underneath the PCB molecular structure diagram which is called

4    Figure 1, it says this.  They talk about PCB manufacturing

5    having been banned in the U.S. and then the estimated number of

6    tons of PCBs that were released, et cetera.  And it says,

7    "60,000 tons to fresh and coastal waters," and go on below to

8    say, "Once reemitted, PCBs can be transported long distances in

9    air."

10         Again, these are allegations that the State is making

11   not Monsanto.  I don't know that we even agree with them

12   wholeheartedly.  But the point is, they -- both in their

13   complaint and in things that they have announced to the

14   public -- view the presence of PCBs as ubiquitous, and are

15   attempting to place the blame for them solely on Monsanto.

16         THE COURT:  Right.  I mean, the two of you now are

17   talking past each other, however.  You're saying that they want

18   to blame you for all the PCBs on Earth, certainly all of them

19   in Oregon.  And that's fine, that may well be a colloquial

20   description of what they're saying in their originally

21   state-filed complaint.

22         That's not my question.  My question is you wanted to

23   bring this to federal court, so now you have to show federal

24   actor jurisdiction.  And that means you have to show, in my

25   view, that the actions you took under the control of the

1    federal government resulted in the harms that are at the core

2    of this case.

3              MR. ZIMMER:  I understand.

4              THE COURT:  So if all you've got is that other

5    actions you took resulted in the harms at the core of this

6    case, then we're back in state court.  It doesn't mean that

7    you're wrong in alleging that they're saying you're responsible

8    for all the PCBs or that PCBs float all over the world.  That

9    just means that doesn't help me answer the jurisdictional

10   question.  I've got to find that the federal government made

11   you do certain things that resulted in the harms here.  And in

12   my view, that means that you've got to show as your nexus that

13   the federal government made you do things that resulted in PCBs

14   being here in Oregon, not just that you in other ways may be

15   responsible for them.

16             MR. ZIMMER:  I understand, Your Honor, and I think,

17   as I indicated earlier, it's not much of a leap to make the

18   legitimate inference that because PCB production demanded by

19   the military was so widespread, particularly in war years, that

20   that consistently happened everywhere that Navy ships were

21   constructed, repaired, decommissioned, et cetera, and that

22   included substantial operations here in Oregon, which would

23   then have resulted in PCBs getting into the water and hence --

24             THE COURT:  Right.  And that's where we really come

25   to a burden of proof issue, because, I mean, you could have

1    said exactly that.  You could have said that, among other

2    things, Navy ships with PCBs were constructed, cleaned, docked,

3    retrofitted, and otherwise worked on here for a long period of

4    time in these waters.

5            But the question for today's purposes is did you say

6    that.  I think the answer to that question, as best I can tell,

7    is no.

8            MR. ZIMMER:  Well, I believe we at least inferred it,

9    Your Honor, and if we didn't say it -- you have my sincere

10   apologies -- it's without dispute, however, that that occurred,

11   and that's again what we're being blamed for.

12           THE COURT:  Thank you.  That's all I really need to

13   hear on DPA orders.

14           I'll turn again to the State on the indemnity

15   agreement with the Atomic Energy Commission.  Again, just point

16   by point on the three elements of *Watson*.

17           MR. KETTERLING:  Yes, Your Honor.

18           There are no specifications in here at all.

19   Exhibit 23 actually says:  Nothing herein shall create or imply

20   any duty or obligation of Monsanto to sell or deliver any

21   Therminol or other PCB products.  So I don't think there's any

22   government control whatsoever in connection with that.

23           Secondly, there is again absolutely no nexus to

24   any -- I don't think it's federally directed actions.  Even if

25   it was federally directed, there's no nexus to Oregon in any

1    sense in that exhibit, and --

2         THE COURT:  I've asked counsel, your opponent, a

3    couple times about allegations, and understandably what I've

4    heard so far is that he's not aware or perhaps not sure whether

5    allegations making this nexus, alleging, for example, that

6    items shipped elsewhere would have circumnavigated and made

7    their way to these waters is something that is alleged or not.

8         Do you know for a fact whether that is or is not the

9    case?  Are you asserting that it's not being alleged here, the

10   kind of nexus that we're talking about?

11        MR. KETTERLING:  I don't believe it's been alleged,

12   and certainly hasn't been shown by preponderance of the

13   evidence before the Court.

14        THE COURT:  All right.  Thank you.

15        Anything you wish to add on the indemnity agreement?

16        MR. ZIMMER:  Your Honor, only a brief response that

17   addresses the indemnity agreement in the same fashion that I

18   have with the other documents, and that is I think at that

19   stage our view of what *Leite* and the other Ninth Circuit

20   decisions hold is that we only have to allege facts that we

21   believe sufficient to get us across this threshold.

22        THE COURT:  Because you view it as a facial

23   challenge?

24        MR. ZIMMER:  Well, Your Honor, we do.  I've

25   acknowledged that we do.  And I think, again, absent anything

1    beyond just counsel saying it doesn't say that, I don't know

2    how else --

3            THE COURT:  If it is in fact, as I've intimated, a

4    factual challenge, do you agree you've only alleged it and

5    not proven it?

6            MR. ZIMMER:  Well, I think we have proven, Your

7    Honor, under either of those standards quite a bit of

8    direction, subjection, guidance or control.

9            By the way, I think that word has been left out of

10   our discussions.

11           THE COURT:  We talked about control, but I'm asking

12   whether you think you've met a burden of proof under a factual

13   dispute on nexus.

14           MR. ZIMMER:  I do, Your Honor.  I think we've met it

15   under either standard, but of course we would read it much more

16   readily were it only a facial.

17           I also want to indicate that, again, the leading case

18   analogized, if you will, or invoked 12(b)(1) and 12(b)(6)

19   standards.  I started to mention earlier that I've been

20   practicing for 35 years, and I've, of course, brought many a

21   summary judgment motion.  And many a time I've heard from the

22   bench, "Mr. Zimmer, I appreciate your arguments and they're

23   well taken and I'm quite certain that you'll win your case, but

24   it's probably going to be at trial rather than here today."

25           Well, my view of this -- this probably won't surprise

1  you -- is that the shoe should now be on the other foot because

2  I think we've done plenty, particularly given the passage of

3  time here, to show you how these sales orders were received and

4  fulfilled, and in particular if we now concentrated on --

5          THE COURT:  Well, I want to make sure I get your

6  argument.  So if the shoe were on the other foot, you'd be

7  saying that in the past you've wanted to show facts that would

8  help you win, and the Court reminded you that at summary

9  judgment, it's in the light most favorable to the nonmoving

10 party.  Even at the motion to dismiss stage, it's even more

11 true.

12         MR. ZIMMER:  Precisely.

13         THE COURT:  Here if the shoe were on the other foot,

14 you'd be saying you should just be able to allege certain

15 things, and if you allege them in a plausible -- with the

16 plausible sort of Rule 11 foundation and a colorable basis for

17 doing so, that should be the end of the analysis, right?

18         MR. ZIMMER:  That is exactly what the case law says.

19         THE COURT:  That's true only if it's a facial

20 challenge.  You agree that that's not true; that's not the

21 methodology I'm told I must employ if it's a factual challenge,

22 right?

23         MR. ZIMMER:  That is true.

24         THE COURT:  All right.  So let me make this simpler

25 going forward.  I hold that it is a factual challenge.  I've

1    looked at the case, I believe it's a factual challenge, and you

2    have a burden of proof, and it's not, in my view, a sort of

3    unfair switching of the foot on one shoe versus the other, it's

4    just what the case law and the rules require in the removal

5    context.

6          It is unusual, it is odd, I agree with you, for me to

7    be looking at factual disputes and seeing if someone met a

8    burden of proof here, but that's the nature of remand and

9    removal.  I'm not given a choice in it.  I'm under the control

10   and command of the Ninth Circuit on this one.

11         MR. ZIMMER:  I take your point, Your Honor, and

12   accept it.

13         THE COURT:  So let's go forward with the assumption

14   that what you've got is a burden of proof to meet a factual

15   dispute on nexus, for example.

16         MR. ZIMMER:  Fair enough.

17         And I think we have, again, given my theory of nexus

18   that I've already expressed to you, I do think it is incumbent

19   upon the Court to also weigh each of these issues separately

20   and determine whether or not it is sufficient for simply

21   counsel to say, well, no, we read this differently, it looks

22   like it's merely prioritizing a shipment, when the words "you

23   are directed to" are in that exhibit.

24         THE COURT:  All right.  I agree they must be analyzed

25   separately.  Thank you.

1    MR. ZIMMER:  Thank you, Your Honor.

2    THE COURT:  Let's turn to the State for the

3    specifications on heat-resistant aluminum paint.  And again I

4    don't need you to repeat articles that are identical across

5    multiple categories, but if you have something new to add on

6    the three matrixes, let me know.

7    MR. KETTERLING:  Okay.  On this, I won't get into the

8    fact that there are no specifications, but what I do want to

9    point out to the Court, however, is that it specifically says

10   in Exhibit 4, "Sample composition.  The following is an example

11   of a formulation contemplated by the specification but in no

12   way is a supplier restricted to this formulation."

13   So there is no reasonably specific specification to

14   Monsanto on how to make PCBs.  They're not even called for

15   here.  They're simply used as an example.  And I would stick

16   with my nexus arguments.  I still see no evidence of any causal

17   nexus to Oregon by federally directed action.  And Monsanto

18   says they've submitted all this proof, but over a course of 40

19   years, it seems to me if there is a causal nexus to Oregon,

20   there should be a lot more proof that they're able to come up

21   with.

22   THE COURT:  Thank you.

23   Again, I don't need you to repeat, for example, your

24   nexus argument unless there's a variation on it here that you

25   want to alter.

1    MR. ZIMMER:  No, Your Honor.  I'll keep this one

2    short.  The only thing I would put out here is this is one of

3    the exhibits that we've proffered that shows that Aroclor 1254

4    is indeed specified.  And I take counsel's point that there is

5    language in it that says it's an example of a formulation.  The

6    dilemma we're presented with, though, is it's the only one that

7    would have fulfilled this.  And we know that but don't have a

8    specific exhibit we can submit to you to that effect.  And I

9    would ask the Court's indulgence to understand the position

10   that we're in with the passage-of-time comments I've already

11   made.  Many of these events occurred as long as 89 years ago.

12   The idea that this heat-resistant paint federal

13   specification that was -- I'm looking for the year here --

14   1959 -- and not surrounded by a lot of other paper that the

15   company has retained is a function of the passage of time.

16       THE COURT:  I appreciate that problem, although it

17   seems to me that what that means is that in defending this

18   case, you should have a court's indulgence in having the time

19   you need to do the research you need, and even to take into

20   account the possibility that some of what you need to know

21   won't be available anymore.  But that's the defense of the

22   case.

23       You're not here today trying to defend the case,

24   you're here today trying to remove it, and that means that you

25   took the step of taking it out of state court and bringing it

1   here, and the burden is on you to justify the removal.

2            Now, it may mean that it's really difficult to do,

3   but that's a part of the calculus you had to think about -- I'm

4   sure you did -- before you removed it.  And removal is a fast

5   timetable.  I understand that.

6            MR. ZIMMER:  That's correct, Your Honor, and again

7   I'm not apologizing or looking for extra time, if you will,

8   other than that I think it is worth suggesting to the Court

9   that we have not been able to avail ourselves of any

10  third-party discovery yet, either to branches of the military

11  or to other contractors to whom we supply.  We don't know

12  precisely whether they'd be able to fill in blanks of what some

13  of these documents show, but we again believe that the showing

14  we've made still adequately supports our removal.

15           And the State is trying to impose, with all respect,

16  Your Honor, what we think is an impossible burden, given the

17  passage of time.  They want us to submit proof of precisely

18  where, you know, a bulk-supplied product wound up in each and

19  every instance, and insist again, as we've been describing,

20  that it be without exception that the government either sat

21  right behind us while we made it or designed it for us when,

22  once again, there's no other design that could occur for a PCB

23  molecule.  We've already addressed that topic.

24           THE COURT:  Thank you.

25           The next one is a little more multi-variant, and

1   that's sales to the federal government of PCB-containing

2   products, generally speaking.  And those include some to buyers

3   throughout the country, including Department of the Interior

4   here in Oregon, per Exhibit 8 at least, some in Maine, some to

5   Raytheon.

6           So, for the State, walk me through the three parts.

7           MR. KETTERLING:  Okay.  There's no proof in any of

8   those exhibits of reasonable specific specifications or the

9   government telling Monsanto what to do or how to do it.

10          THE COURT:  So this is the setting that you talked

11  about earlier where you talked about off-the-shelf sales,

12  right?

13          MR. KETTERLING:  They're just buying it like

14  everybody else can buy it.  And, in fact, if you look at

15  Exhibit 8, the page we were given is page 502.  So who knows

16  how long this report was overall, and the -- getting to your

17  third point, which is colorable federal defense, this isn't

18  even a sale to the military.  It's not a military contract

19  sale.  It's a sale to the U.S. Department of the Interior.

20          If you look at Exhibit 9, it's page 668 is what we've

21  received.  And in there they find one Oregon connection, I

22  think, which is Zidell Machinery Company, which isn't the

23  government at all.

24          So I don't think we've got any federal officer

25  direction or specification shown in these exhibits, certainly

1    there's no nexus, and I don't even think you can raise a

2    colorable federal defense on this basis.

3            THE COURT:  Thank you.

4            Go ahead, sir.

5            MR. ZIMMER:  Yes, Your Honor.  Let's look at

6    Exhibit 6, if we could, very briefly.

7            THE COURT:  Go ahead.

8            MR. ZIMMER:  The government has directed us to

9    proceed to manufacture missiles but has refused to authorize

10   Raytheon to qualify a new potting material which would avoid

11   use of Aroclor 1242.

12            Another portion of that same exhibit reads that they

13   are acknowledging the fact that Monsanto in all of our

14   dealings -- this is Raytheon now -- expressed a strong

15   preference not to sell this product to us, and is proceeding

16   with the sale only at the direction of the government.

17            I don't know how that's not direction, subjection and

18   control, Your Honor.  And I want to point out one more time

19   that at that point in time -- and we're looking now at April of

20   1973 -- this is now two years after Monsanto voluntarily

21   stopped selling PCBs for the very use that this is compelling

22   them to do, in a plasticizer setting, because the potting

23   material that was including Aroclor 1242 is such a product.

24            THE COURT:  What is your colorable defense for the

25   sales, let's say, to the most direct Oregon connection, the

1   ones to the Department of Interior here in Oregon?  What

2   colorable defense would you be asserting as to those sales?

3                MR. ZIMMER:  Well, I suppose if it's not one that was

4   ordered by the Defense Production Act, then it would have to be

5   the government contractor defense, Your Honor, and the points

6   we made earlier about CERCLA.

7                THE COURT:  But even that requires some military

8   connection, right?

9                MR. ZIMMER:  True.

10              THE COURT:  And that's missing at least as to those

11  particular sales?

12              MR. ZIMMER:  Well, to a couple of those exhibits that

13  you called out, yes, Your Honor, but not all of them.

14              THE COURT:  Do we know how many of these sales -- I

15  guess you'd like me to assume that all the Raytheon sales are

16  military connected, right?

17              MR. ZIMMER:  Yes, I would, Your Honor.  They were

18  manufacturing missiles for the military.

19              THE COURT:  And that's a fair inference, I think,

20  from the exhibits you've cited.

21              MR. ZIMMER:  I believe it is.

22              THE COURT:  Do we know as to others, where we don't

23  have some obvious military connection like Raytheon or Lockheed

24  or something, do we know as to the others one way or the other

25  whether the sales involved some sort of military connection or

1  military equipment?

2        MR. ZIMMER:  Well, we know, Your Honor, as I

3  mentioned previously, that the expansion of the Anniston,

4  Alabama plant resulted in production nearly exclusively,

5  between 80 and 100 percent, to the military during wartime.

6  That meant that the military was widely using PCBs in many of

7  its products that found their way on ships and, of course, as

8  we've indicated before, I think it's a fair inference to say

9  that they wound up here in Oregon, just as they would in many

10  other states.

11        THE COURT:  Thank you.

12        MR. ZIMMER:  Thank you, Your Honor.

13        THE COURT:  The last asserted basis for federal

14  officer jurisdiction I've listed here is sales to government

15  contractors by Monsanto to government contractors for use in

16  certain products.  The State's argument?

17        MR. KETTERLING:  The State's argument is that there

18  is no reasonably specific specification by the government.

19  There's no government control.  This is simply between Monsanto

20  and someone who wants to buy Monsanto's PCBs.  There's

21  absolutely no nexus to Oregon, and I don't see how there's a

22  federal defense contractor defense to this.

23        THE COURT:  And if the contractor had to have PCBs to

24  meet specifications, what does that mean for Monsanto's -- the

25  degree of control over Monsanto, in your view?

1    MR. KETTERLING:  If the contractor went to Monsanto
2    and essentially controlled the process and said, "We need it
3    exactly in this compound, and we want you to do it this way,"
4    and directed Monsanto's actions, and did that as a government
5    contractor, that might get them somewhere.
6         THE COURT:  Well, that's back to your original
7    argument about control.
8         But what if the federal government tells the
9    contractor, "You must put PCBs in this product," and so then
10   the contractor turn around and says to Monsanto, "We need this
11   product to have PCBs in it, it must have PCBs in it, that's
12   what the federal government is telling us, so that's what we're
13   telling you."
14        Does that work?
15        MR. KETTERLING:  To me that's the same as TSA says we
16   need TV screens and we didn't have this kind of a transformer
17   in them.  But it doesn't mean that the company that makes the
18   transformer, the same transformer you can buy anywhere else
19   around the country, it doesn't make it a federally directed
20   activity on the subcontractor.
21        THE COURT:  Thank you.
22        Go ahead, sir.
23        MR. ZIMMER:  Thank you, Your Honor.
24        Well, let's look at Exhibit 18, one of the ones you
25   asked about.  This doesn't actually deal with transformers but

1    it deals with wire and cable applications.  And here's the line

2    I'd like to read from that and discuss with the Court.

3              "Aroclor 1254 was used exclusively in cellulosic

4    lacquer utilized to meet military specs for lacquer used in

5    wire and cable applications."

6              Your Honor, I don't know how a fair reading of that

7    would not indicate that Aroclor 1254 was required to meet

8    military specs.  That's our take on it.  I think it's again a

9    fair factual allegation that if there's a tie to be broken, it

10   should be made in our favor.

11             THE COURT:  So let's assume for the moment that if

12   the government tells Monsanto, "We want to buy this product,"

13   and the only control it puts on Monsanto is to say it must

14   contain PCBs, let's assume I accept your argument that that's a

15   lot like helium, and I call that control sufficient under

16   *Watson*, is there an analytical difference between that scenario

17   and the government telling Raytheon or telling Acme

18   Corporation, "You want to sell us this product, it must contain

19   PCBs," and then Acme turns around and says, "Monsanto, we want

20   to buy PCBs from you because to meet the government

21   specifications on us, it's got to have PCBs in it."

22             Is that the federal government controlling Monsanto

23   or just Acme?

24             MR. ZIMMER:  I think it's both, Your Honor.

25             THE COURT:  How?  Obviously I'm giving you Acme.  So

1  how as to Monsanto?

2          MR. ZIMMER:  Because once again if you combine all of

3  these things together and look at them collectively, you see

4  that there is a course and pattern of us hearing not just from

5  the contractor who is dealing directly with the government but

6  from the government themselves, when they write to us and say,

7  "You are directed to supply this to Raytheon."

8          THE COURT:  Well, that's a whole nother hypothetical,

9  right?  I didn't say the government tells Acme to put in PCBs,

10  Acme turns to Monsanto and -- oh, then, by the way, the

11  government tells Monsanto to put in PCBs, because then I

12  wouldn't have needed the middleman to make my hypothetical.

13          So I'm just asking if the only thing you get on

14  Monsanto's end is a contractor who is on the hook with the

15  government must have PCBs says to you, "Please sell me PCBs so

16  I can meet this contractual requirement of the government," how

17  is that the government controlling Monsanto?

18          MR. ZIMMER:  Well, I think in the scenario you

19  describe, Your Honor, it's not as good as the one that I did,

20  which is what actually happened, but it is further --

21          THE COURT:  It happened once.  It didn't happen with

22  all of these.

23          MR. ZIMMER:  No, certainly not all of them.

24          THE COURT:  I'm asking you about the other ones.  I'm

25  not concerned -- I'll analyze the one where the government told

1   Monsanto to give a contractor -- that it must give the

2   contractor PCBs.  I'll analyze that the same way as I analyze

3   the government telling Monsanto to sell the government PCBs.

4   Those are the same, I give you that, but there are others where

5   it's just one step removed from that, and I'm curious how you

6   see the government controlling Monsanto in that commercial

7   arrangement.

8            MR. ZIMMER:  I see it as further evidence of the

9   government's need for and insistence upon the product in a

10  variety of military applications.

11           THE COURT:  Fair enough.  But how does it show the

12  government controlling Monsanto?  It's not telling Monsanto to

13  do anything, right?

14           MR. ZIMMER:  It's doing it through the contractor who

15  then has to get that from Monsanto, because again, as the

16  plaintiffs have alleged, we're the only place that someone can

17  go and get PCBs.

18           THE COURT:  All right.  And that fact is one that you

19  find critical in distinguishing this from other sort of

20  off-the-shelf sales?

21           MR. ZIMMER:  Indeed.

22           THE COURT:  The TSA example, for example, is where

23  the TSA could turn to a hundred people to get the screens it

24  needs, and if you don't want to do it, they'll go somewhere

25  else, right?

1    MR. ZIMMER:  That's correct, Your Honor.

2    THE COURT:  Those are the ones I listed.  What other

3    asserted bases for federal officer jurisdiction are you

4    alleging -- or rather proving?

5    MR. ZIMMER:  Yeah.  I mentioned Exhibit 6, Your

6    Honor, which we wound up talking about actually anyway.

7    THE COURT:  Yes.

8    MR. ZIMMER:  And 21, which I'm going to try to find

9    here.  And this is another example of what I characterized

10   earlier as being an unwilling sale by Monsanto, once again in

11   particular because of the date involved.  Exhibit 21 is dated

12   November 17, 1972, and it's a response to -- from Monsanto to

13   someone in the Bureau of Domestic Commerce of the U.S.

14   Department of Commerce.  And it states very plainly that "As

15   you are aware, because of the increasing environmental concerns

16   expressed about products containing polychlorinated biphenyls,

17   (PCBs), Monsanto Company no longer sells Aroclor 1242 for the

18   uses which we understand Emerson & Cuming, Inc. intend for the

19   Aroclor 1242 we have been directed to deliver."

20        So here we're telling the government, look, we think

21   you should find an alternative product.  In fact, further down

22   the page they say, "We therefore respectfully question the

23   wisdom of your directing us to sell this material when, as we

24   understand it, alternative acceptable materials are available

25   for the use to which our Aroclor 1242 is to be put."

 1              Further evidence, Your Honor, of being directed to do

 2    something over our objection.

 3              THE COURT:  Thank you.

 4              Remind me of that exhibit number again.  That was 21?

 5              MR. ZIMMER:  21, Your Honor.

 6              THE COURT:  Thank you.

 7              MR. ZIMMER:  And then 23 is another one.  If you'd

 8    give me just a moment, if you would.

 9              Your Honor, I apologize.  We've already addressed 23.

10    I had my numbers fouled up.  I think 21 is illustrative of the

11    point I wanted to make here.

12              THE COURT:  Thank you.

13              MR. ZIMMER:  Thank you, Your Honor.

14              MR. KETTERLING:  Your Honor, if we're on Exhibit 21,

15    could I make one further comment?

16              THE COURT:  Yes.

17              MR. KETTERLING:  And I think the language in

18    Exhibit 21 is significant because it does say at the end of the

19    first page, "alternative acceptable materials are available for

20    the use to which Aroclor 1242 is to be put."

21              In other words, this is just one of the alternatives

22    the government could have used or could have specified that

23    they wanted Raytheon to use.  They decided to use this.  It

24    doesn't mean that they directed how to produce it.  In fact,

25    there are alternate materials that Monsanto says could also be

1  used.  I think that's significant.  It's not that the

2  government is giving them precise specifications.  They're

3  saying we want this product that you have, but there are other

4  products out there.

5          THE COURT:  They're not saying we want this product.

6  They're saying you must give us this product.

7          MR. KETTERLING:  Well, this letter says that.  We

8  haven't seen the letter that supposedly directs this action.

9  All we've seen is this letter which --

10         THE COURT:  The evidence I have says it.  The

11 evidence I haven't, I don't know what it says.  I can only go

12 by the evidence I have in front of me.

13         MR. KETTERLING:  It's a very self-serving letter, and

14 it's one piece of evidence for them, but does it get to a

15 preponderance of the evidence?

16         THE COURT:  I sincerely doubt this letter was written

17 in order to defeat removal.  So that's the only way it would be

18 self-serving.

19         MR. KETTERLING:  Causal nexus is also completely

20 lacking in this case with Exhibit 21.

21         THE COURT:  Thank you.

22         I'll take a brief recess.

23         THE CLERK:  Court is in recess.

24         (A recess is then taken.)

25         THE COURT:  All right.  I'd like to establish perhaps

1    a couple of goalposts or parameters that help decide the case

2    in between a couple of extremes.

3            So first of all, as a predicate to analyzing the

4    case, I've already held and I reaffirm that it's my view this

5    is a factual dispute, placing on Monsanto the burden of proof

6    that comes with that.

7            I'm sympathetic to the argument that that's difficult

8    in this case -- it's difficult in many removal cases -- to gin

9    up the proof that quickly without the typical tools for ginning

10   up evidence that come in litigation, but there's nothing in the

11   rules or the case law that allows me to say this dispute spans

12   decades, therefore I'm going to excuse the typical requirements

13   under federal law for removal.

14           And so that's how I view this case, that it is a

15   factual dispute requiring or at least placing the burden on

16   Monsanto to meet a certain factual showing at least for the

17   disputed pieces of evidence here or disputed contentions of

18   fact.

19           Then I want to talk about control in the way that

20   it's played out in this case at least.  I started out by

21   suggesting that there's a difference in how to think about

22   control that can be grounded in the -- what you might think of

23   as the complexity of the object.

24           So it's true, in my view, that in this case there are

25   not the lengthy specifications for how to make PCBs that you

1    might find with other products.  There are not pages and pages

2    describing on and on what kind of PCB we want here, nor are

3    there pages and pages describing even the manufacturing

4    process.  But in my view, that's not fatal to an attempt to

5    show *Watson*-style control here.  And I use "control" as an

6    abbreviation for the longer formulation we've already discussed

7    as the test in this case.

8            And that's because it's impossible to go on and on

9    and describe how you want a molecule to look.  So in my view,

10    you can show control in this case by the federal government

11    saying, in essence, to Monsanto, "We demand that the product

12    we're buying from you contain PCBs," or even "We demand that

13    you provide us PCBs."  That's even simpler, so I'll stick with

14    that to start at least.  The government says, "We demand that

15    you produce for us PCBs in order to meet the specifications of

16    this contract."  Then, in my view, that's enough to show

17    control.

18            As I've said, because this case doesn't -- the harm

19    is based on the existence of the molecule in the environment,

20    it's not an artifact of how it was made, so the process doesn't

21    really matter, it's just the molecule is here or not here.  And

22    it's very difficult to think of multiple ways to formulate this

23    molecule.  There's really just one.  So you can get control

24    that way.

25            I don't think you have control if it's more

1   attenuated than that.  So I don't think that you have control

2   if you say, "We'd like this product to contain PCBs."  That's

3   not control.

4          I don't think you have control, for example, if you

5   say, "Here's an example of the product that we want, and it

6   contains PCBs, but don't think by the example that we're

7   requiring PCBs."  That's not control.

8          Similarly, you don't have control over Monsanto if

9   the federal government says to a contractor, "We want you to

10  provide us this product and it must contain PCBs," and Monsanto

11  is not on the scene in that relationship.  It's just that the

12  contractor then turns to Monsanto and says, "We need you to

13  sell us PCBs in order to satisfy the government's

14  requirements."

15         I appreciate that this has an unusual fact to it,

16  which is that the contractor has to turn to Monsanto in

17  practical terms to get the PCBs, but I'm not being asked about

18  how difficult life is for that contractor.  I'm being asked

19  about government control over Monsanto, and that's not a

20  showing of government control over Monsanto.

21         Of course, there is a variation on that, where the

22  government says what I just described to the contractor, and

23  then turns around and tells Monsanto, "You must give the

24  contractor PCBs."  And I've already said I treat that the same

25  as my first hypothetical, that if you've just got a contractor

1   tell Monsanto, "We really need your PCBs because we have to

2   have them to meet a government requirement," that's not

3   control.

4        If you have the government saying to Monsanto, "We'd

5   really, really like PCBs in this product," that's not control

6   either.  It's got to be a must; they've got to demand it.

7        In my view, it's also irrelevant whether the

8   government is demanding that Monsanto give it PCBs in order to

9   meet contractual requirements even though Monsanto is

10  unwilling.  That's a better case for Monsanto, but I'll give

11  Monsanto the victory if it just is required to produce PCBs in

12  order to meet the government's contractual demands.  In my

13  view, that's enough to show *Watson*-style control.

14       I'd like to turn to nexus.  And here I reject

15  Monsanto's arguments about what nexus means in this case.  I

16  understand why that would be an attractive argument here, and

17  it's not a silly argument, because it is true that in some

18  way -- in some ways plaintiffs here are saying to Monsanto in

19  the state court filings, "You are responsible for all these

20  PCBs.  If we find a PCB here in Oregon, it's yours."

21       So Monsanto wants to say, well, there's your nexus.

22  Plaintiff's own statements say if there's a PCB here, Monsanto

23  is responsible for it.

24       But that conflates that question of responsibility,

25  you know, via CERCLA or anything else, tort or whatever it

1    might be, for the PCBs with the very different question I'm

2    being asked here, which is the federal officer basis for

3    jurisdiction.  And that means that Monsanto has to show not

4    just that any of its PCBs through a wide variety of means,

5    including just private sales, ended up in Oregon.  It has to

6    show that the PCBs it made as a federal actor have a nexus to

7    Oregon.

8            So, in my view, it's not enough to just say, hey, we

9    made a lot of PCBs, and the plaintiff says they're all ours and

10   they float and they fly and they travel on ships and they got

11   to Oregon.  I think the obligation on Monsanto is to show that,

12   as against a contested factual dispute, to show that the

13   activities -- the subset of all of its activities that are the

14   activities it engaged in under the control of the federal

15   government produce PCBs that can be linked to Oregon, and it's

16   not plaintiff's obligation to show the PCBs here in Oregon are

17   not so linked.  It's Monsanto's obligation to show that the

18   PCBs here in Oregon are so linked and that they're not the

19   result of any of the myriad non-controlled activities Monsanto

20   also engaged in during the relevant time period.

21           I'll set to one side for a moment the colorable

22   defense issue and just focus on these two prongs of *Watson*.

23   What I've said about nexus means that there is, in fact, no

24   nexus to Oregon for almost all of the asserted bases -- of the

25   activities that amount to the asserted bases for federal

 1   officer jurisdiction.  There's no showing by Monsanto.  There's

 2   often -- maybe always, except in one instance, not even an

 3   allegation, but there's certainly no factual showing sufficient

 4   to meet any burden of proof on the question, with the bare

 5   exception of what I'll call the sort of off-the-shelf sale to

 6   the Department of Interior here in Oregon.  There's a nexus.

 7   The problem is, there's also no control there and no colorable

 8   defense.  Therefore, I grant the motion to remand.

 9               Thank you all.  We'll be in recess.

10               MR. KETTERLING:  Thank you, Your Honor.

11               THE CLERK:  Court is in recess.

12               (Proceedings concluded at 4:54 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

--o0o--

        I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


/s/Bonita J. Shumway                    July 26, 2018
_____               _____
BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
Official Court Reporter

**MR. HANSEN: [1]** 3/10
**MR. KETTERLING:**
**[54]** 3/6 9/4 9/17 9/20
11/6 11/10 11/18 12/6
12/12 13/5 13/14 14/4
14/11 14/19 15/2 15/4
15/15 15/20 16/1 16/11
16/20 17/5 17/10 17/18
17/21 18/18 18/20
30/16 31/13 31/21 32/3
32/7 32/14 32/20 32/23
33/5 33/14 33/22 34/6
34/12 38/16 39/10 43/6
46/6 46/12 49/16 49/25
50/14 55/13 55/16 56/6
56/12 56/18 62/9
**MR. ZIMMER: [78]**
**THE CLERK: [3]** 3/2
56/22 62/10
**THE COURT: [130]**

**'**

**'71 [2]** 23/17 23/17
**'73 [1]** 30/1
**'74 [1]** 30/1
**'s [1]** 4/14

**-**

**--o0o [1]** 63/2

**/**

**/s/Bonita [1]** 63/9

**0**

**03 [1]** 35/10

**1**

**1-10 [1]** 1/8
**10 [1]** 1/8
**100 [1]** 2/11
**100 percent [2]** 22/2
 49/5

**1000 [1]** 2/23
**101 [1]** 2/17
**11 [2]** 22/10 41/16
**12 [2]** 40/18 40/18
**1201 [1]** 2/8
**1211 [1]** 2/14
**1242 [9]** 19/17 20/4
 20/6 47/11 47/23 54/17
 54/19 54/25 55/20
**1254 [3]** 44/3 51/3 51/7
**12th [1]** 2/20
**1442 [4]** 3/25 5/1 6/18
 12/20
**16 [1]** 22/10
**1600 [1]** 2/14
**17 [1]** 54/12
**18 [1]** 50/24
**19 [2]** 1/7 3/2
**1959 [1]** 44/14
**1970 [2]** 23/17 23/17
**1971 [2]** 35/13 35/18
**1972 [2]** 30/1 54/12
**1973 [1]** 47/20

**2**

**2018 [3]** 1/7 3/2 63/9
**209 [1]** 2/5
**21 [9]** 8/18 54/8 54/11
 55/4 55/5 55/10 55/14
 55/18 56/20
**23 [4]** 8/18 38/19 55/7
 55/9
**2300 [1]** 2/17
**25 [1]** 13/10
**26 [1]** 63/9
**28 [1]** 3/25

**3**

**30 [1]** 20/21
**301 [1]** 2/23
**3200 [1]** 2/8
**326-8188 [1]** 2/24

**35 [2]** 28/9 40/20
**3:11 [1]** 3/2
**3:18-cv-00238-MO [1]**
 1/5
**3:18-cv-238-MO [1]** 3/4
**3rd [1]** 2/8

**4**

**40 [2]** 20/23 43/18
**4:54 [1]** 62/12

**5**

**500 [2]** 2/5 11/1
**502 [1]** 46/15
**503 [1]** 2/24
**55 [1]** 24/13

**6**

**60,000 tons [1]** 36/7
**63105 [1]** 2/20
**668 [1]** 46/20

**7**

**7701 [1]** 2/20

**8**

**8-6-03 [1]** 35/10
**80 [2]** 22/2 49/5
**8188 [1]** 2/24
**89 [2]** 20/23 44/11

**9**

**9204 [1]** 2/6
**94105 [1]** 2/17
**97201 [1]** 2/11
**97204 [2]** 2/15 2/23
**98101 [1]** 2/8

**A**

**abbreviation [1]** 58/6
**ability [1]** 18/11
**able [6]** 23/23 28/22
 41/14 43/20 45/9 45/12
**about [62]** 4/19 5/23

**A**

**about... [60]** 6/21 7/7
7/8 7/11 9/9 9/9 10/4
10/5 11/9 11/10 12/3
13/11 13/13 13/16
13/17 17/1 17/17 17/25
18/8 19/11 19/13 21/8
21/11 23/5 23/16 24/2
24/18 25/9 25/12 28/1
29/6 29/11 29/20 29/23
30/2 31/5 31/19 33/18
33/24 34/10 35/16 36/4
39/3 39/10 40/11 45/3
46/11 46/11 48/6 50/7
50/25 52/24 54/6 54/16
57/19 57/21 59/17
59/19 60/15 61/23
**above [2]** 3/18 63/6
**above-entitled [1]** 63/6
**absent [1]** 39/25
**absolutely [3]** 25/23
38/23 49/21
**abstract [1]** 6/16
**accept [3]** 28/11 42/12
51/14
**acceptable [2]** 54/24
55/19
**account [1]** 44/20
**acknowledge [1]** 35/11
**acknowledged [2]**
29/10 39/25
**acknowledges [1]**
27/18
**acknowledging [1]**
47/13
**Acme [6]** 51/17 51/19
51/23 51/25 52/9 52/10
**across [2]** 39/21 43/4
**Act [5]** 5/11 23/10
24/12 29/4 48/4
**acting [6]** 4/5 4/11 4/15

**action [4]** 5/2 5/18
43/17 56/8
**actions [5]** 5/20 36/25
37/5 38/24 50/4
**actively [1]** 30/24
**activities [5]** 61/13
61/13 61/14 61/19
61/25
**activity [5]** 27/2 33/8
33/14 33/17 50/20
**actor [2]** 36/24 61/6
**acts [1]** 5/6
**actual [3]** 4/7 13/16
24/5
**actually [6]** 25/21
28/18 38/19 50/25
52/20 54/6
**Adam [2]** 2/19 3/12
**add [4]** 27/23 30/18
39/15 43/5
**addition [1]** 35/21
**additional [2]** 35/7
35/17
**address [1]** 9/8
**addressed [2]** 45/23
55/9
**addresses [1]** 39/17
**adequately [2]** 26/17
45/14
**admit [1]** 8/19
**advance [1]** 24/17
**advances [1]** 9/16
**after [5]** 23/17 27/16
32/19 34/14 47/20
**again [25]** 7/2 10/4
24/22 28/6 29/16 34/8
36/10 38/11 38/14
38/15 38/23 39/25
40/17 42/17 43/3 43/23
45/6 45/13 45/19 45/22
51/8 52/2 53/15 54/10

**against [1]** 61/12
**agnostic [1]** 22/6
**ago [2]** 30/2 44/11
**agree [16]** 4/21 9/19
9/19 12/10 14/8 14/11
14/13 20/7 24/7 27/9
34/11 36/11 40/4 41/20
42/6 42/24
**agreement [4]** 22/3
38/15 39/15 39/17
**ahead [5]** 3/15 34/22
47/4 47/7 50/22
**air [1]** 36/9
**al [1]** 3/4
**Alabama [2]** 21/25 49/4
**all [57]** 3/15 3/16 7/3
10/2 12/8 13/3 15/11
15/22 16/23 17/15
17/20 17/23 18/15
18/16 18/17 18/22
19/10 20/22 21/9 21/23
23/21 24/18 25/17 30/6
32/6 33/24 34/4 34/19
36/1 36/18 36/18 37/4
37/8 37/8 38/12 38/18
39/14 41/24 42/24
43/18 45/15 46/23
47/13 48/13 48/15 52/2
52/22 52/23 53/18 56/9
56/25 57/3 60/19 61/9
61/13 61/24 62/9
**allegation [2]** 51/9 62/3
**allegations [4]** 24/25
36/10 39/3 39/5
**allege [3]** 39/20 41/14
41/15
**alleged [9]** 17/10 17/10
25/13 26/12 39/7 39/9
39/11 40/4 53/16
**alleging [4]** 26/14 37/7
39/5 54/4

**allow [4]** 8/3 9/20 9/23 31/10
**allows [2]** 4/1 57/11
**almost [1]** 61/24
**alone [2]** 31/10 31/12
**along [4]** 3/8 3/11 5/16 29/4
**already [12]** 29/2 29/10 30/20 31/22 35/3 42/18 44/10 45/23 55/9 57/4 58/6 59/24
**also [15]** 3/9 7/8 7/13 18/6 19/4 29/1 31/19 33/7 40/17 42/19 55/25 56/19 60/7 61/20 62/7
**alter [1]** 43/25
**altered [1]** 20/6
**alternate [1]** 55/25
**alternative [3]** 54/21 54/24 55/19
**alternatives [1]** 55/21
**alters [1]** 4/23
**although [2]** 4/21 44/16
**aluminum [1]** 43/3
**always [1]** 62/2
**am [2]** 24/3 34/22
**among [1]** 38/1
**amount [1]** 61/25
**amply [1]** 30/2
**analogized [1]** 40/18
**analogy [2]** 19/12 20/1
**analysis [4]** 7/15 7/19 10/11 41/17
**analytical [1]** 51/16
**analytically [1]** 7/3
**analyze [3]** 52/25 53/2 53/2
**analyzed [1]** 42/24
**analyzing [1]** 57/3

**Anniston [2]** 21/25 49/3
**announced [1]** 36/13
**another [5]** 4/17 15/17 47/12 54/9 55/7
**answer [4]** 6/23 25/24 37/9 38/6
**any [39]** 4/5 4/23 5/15 7/7 7/10 10/17 11/3 11/12 12/19 13/12 16/3 16/5 17/11 17/20 18/3 18/20 20/8 20/10 25/25 26/22 26/23 27/5 31/16 32/10 32/16 33/23 34/7 38/20 38/20 38/21 38/24 38/25 43/16 45/9 46/7 46/24 61/4 61/19 62/4
**anymore [1]** 44/21
**anyone [1]** 12/19
**anything [14]** 8/25 11/22 12/2 12/16 12/25 16/12 26/1 27/5 30/18 32/9 39/15 39/25 53/13 60/25
**anyway [1]** 54/6
**anywhere [3]** 10/2 26/20 50/18
**apologies [1]** 38/10
**apologize [1]** 55/9
**apologizing [1]** 45/7
**APPEARANCES [1]** 2/2
**application [1]** 4/9
**applications [3]** 51/1 51/5 53/10
**applied [1]** 9/14
**applies [2]** 18/3 28/20
**apply [5]** 5/17 24/24 28/8 28/16 35/4
**appreciate [4]** 3/18 40/22 44/16 59/15

**approves [1]** 18/7
**April [1]** 47/19
**are [61]** 3/3 3/9 6/7 6/7 7/3 7/13 7/14 7/18 7/19 7/20 8/4 8/15 9/12 9/13 11/7 14/22 17/24 19/13 19/19 23/8 23/9 26/1 26/18 27/19 28/9 28/21 29/17 30/4 30/19 32/10 33/2 36/10 36/14 36/16 37/1 38/18 39/9 42/23 42/23 43/4 43/8 47/13 48/15 52/7 53/4 53/4 54/2 54/3 54/15 54/24 55/19 55/25 56/3 57/24 58/1 58/2 60/18 60/19 61/13 61/16 61/18
**aren't [1]** 16/9
**arguing [1]** 6/17
**argument [43]** 1/16 3/3 3/21 5/13 6/18 7/7 8/2 9/1 9/7 11/18 12/1 12/6 12/9 12/23 13/25 15/11 15/15 15/17 15/25 16/18 21/18 21/19 23/22 23/25 24/18 26/2 26/25 27/2 28/3 28/4 34/6 35/3 35/4 35/4 41/6 43/24 49/16 49/17 50/7 51/14 57/7 60/16 60/17
**arguments [6]** 15/12 15/16 18/17 40/22 43/16 60/15
**arises [1]** 5/6
**Aroclor [12]** 19/17 20/4 31/24 44/3 47/11 47/23 51/3 51/7 54/17 54/19 54/25 55/20
**around [4]** 50/10 50/19 51/19 59/23
**arrangement [1]** 53/7

## A

**articles [1]** 43/4
**artifact [1]** 58/20
**as [77]**
**aside [1]** 19/18
**ask [3]** 14/14 14/23 44/9
**asked [5]** 39/2 50/25 59/17 59/18 61/2
**asking [5]** 15/7 26/13 40/11 52/13 52/24
**asks [1]** 15/14
**aspect [1]** 24/3
**assert [2]** 5/7 18/13
**asserted [10]** 6/15 7/20 8/5 8/8 8/9 27/3 49/13 54/3 61/24 61/25
**asserting [8]** 4/25 26/6 27/3 28/21 28/24 33/12 39/9 48/2
**asserting: [1]** 29/3
**asserting: a [1]** 29/3
**assertion [1]** 6/9
**assertions [2]** 6/5 6/6
**asserts [3]** 5/8 6/8 6/12
**assist [1]** 4/17
**assume [5]** 29/5 31/1 48/15 51/11 51/14
**assumption [1]** 42/13
**at [59]** 3/20 4/7 4/12 4/22 5/18 7/14 8/18 9/7 9/21 9/25 10/2 10/2 10/10 13/24 13/24 14/9 17/2 17/23 18/17 19/7 23/6 23/24 24/3 25/24 25/24 27/1 27/5 30/19 32/11 33/13 33/20 33/24 37/1 37/5 38/8 38/18 39/18 40/24 41/8 41/10 42/1 42/7 46/4 46/14 46/20 46/23 47/5 47/16 47/19 47/19 48/10 50/24 52/3 55/18 57/15 57/16 57/20 58/14 62/12
**Atomic [1]** 38/15
**Attachment [1]** 35/23
**attack [1]** 21/9
**attempt [3]** 6/17 34/16 58/4
**attempted [1]** 4/6
**attempting [1]** 36/15
**attention [2]** 8/17 23/14
**attenuated [1]** 59/1
**Attorney [1]** 1/3
**attractive [1]** 60/16
**authorize [1]** 47/9
**avail [1]** 45/9
**available [4]** 7/25 44/21 54/24 55/19
**Ave [1]** 2/23
**Avenue [2]** 2/8 2/14
**average [1]** 3/18
**avoid [1]** 47/10
**aware [2]** 39/4 54/15
**away [1]** 27/22

## B

**back [8]** 11/21 18/17 24/22 26/10 26/15 30/1 37/6 50/6
**background [1]** 35/12
**ball [1]** 9/16
**banned [1]** 36/5
**bare [3]** 31/10 31/12 62/14
**based [1]** 58/19
**bases [6]** 8/5 8/8 8/9 54/3 61/24 61/25
**basis [7]** 7/20 27/3 34/2 41/16 47/2 49/13 61/2
**be [68]**
**became [1]** 29/15
**because [31]** 6/1 7/18 10/20 11/16 21/7 22/18 22/20 26/7 28/6 28/12 33/7 33/10 33/16 35/13 35/16 37/18 37/25 39/22 41/1 47/22 51/20 52/2 52/11 53/15 54/11 54/15 55/18 58/8 58/18 60/1 60/17
**been [21]** 3/17 4/5 6/21 7/12 8/11 8/12 11/20 21/13 21/16 21/17 23/23 25/5 30/20 36/5 39/11 39/12 40/9 40/19 45/9 45/19 54/19
**before [6]** 1/18 8/7 8/10 39/13 45/4 49/8
**behind [1]** 45/21
**being [12]** 13/13 16/10 20/21 24/5 37/14 38/11 39/9 54/10 55/1 59/17 59/18 61/2
**believe [11]** 7/19 11/21 18/7 27/2 35/3 38/8 39/11 39/21 42/1 45/13 48/21
**below [2]** 36/7 63/4
**bench [1]** 40/22
**Berne [1]** 2/4
**best [3]** 8/3 34/15 38/6
**better [2]** 21/3 60/10
**between [14]** 5/4 5/20 17/12 19/20 20/23 22/1 24/4 24/8 24/17 24/19 49/5 49/19 51/16 57/2
**beyond [1]** 40/1
**biphenyls [2]** 35/9 54/16
**bit [2]** 27/8 40/7
**blame [2]** 36/15 36/18

**B**

**blamed [1]** 38/11
**blanks [1]** 45/12
**block [1]** 24/14
**Blvd [1]** 2/20
**Bonita [3]** 2/22 63/9
63/10
**borne [1]** 20/2
**both [4]** 22/3 24/15
36/12 51/24
**bound [1]** 9/1
**Boyle [2]** 18/7 31/17
**branches [1]** 45/10
**brief [4]** 23/3 24/2
39/16 56/22
**briefed [1]** 17/17
**briefing [4]** 3/16 3/17
5/14 8/9
**briefly [2]** 9/9 47/6
**briefs [1]** 27/16
**bring [2]** 34/3 36/23
**bringing [1]** 44/25
**broad [1]** 28/4
**broader [1]** 12/1
**broken [1]** 51/9
**brought [5]** 3/24 4/2
18/12 27/15 40/20
**build [2]** 16/7 16/8
**building [1]** 27/11
**built [1]** 13/19
**bulk [1]** 45/18
**bulk-supplied [1]**
45/18
**burden [16]** 6/1 6/14
6/15 17/7 17/7 26/13
37/25 40/12 42/2 42/8
42/14 45/1 45/16 57/5
57/15 62/4
**Bureau [1]** 54/13
**but [78]**
**buy [13]** 11/2 13/1 13/1

13/4 13/8 13/11 13/14
20/12 46/14 49/20
50/18 51/12 51/20
**buyers [1]** 46/2
**buying [4]** 11/7 14/8
46/13 58/12

**C**

**CA [1]** 2/17
**Cabalce [4]** 6/23 9/10
9/22 9/24
**cable [2]** 51/1 51/5
**calculus [1]** 45/3
**call [4]** 8/17 23/13
51/15 62/5
**called [4]** 35/8 36/3
43/14 48/13
**calling [1]** 15/6
**calls [1]** 10/18
**came [4]** 10/4 21/8
22/3 26/3
**can [33]** 5/7 6/18 11/22
12/11 13/1 13/1 13/11
13/13 14/8 15/19 16/22
18/13 19/13 19/23
23/15 24/10 24/13
25/16 27/21 35/25 36/8
38/6 44/8 46/14 47/1
50/18 52/16 53/16
56/11 57/22 58/10
58/23 61/15
**can't [4]** 11/6 26/4
27/10 33/6
**capacitors [1]** 23/20
**Capes [1]** 2/19
**card [1]** 34/15
**care [5]** 11/9 25/9
25/12 31/18 31/19
**carry [1]** 4/18
**cars [1]** 32/2
**case [52]** 1/5 3/3 3/17
4/2 5/17 7/6 10/5 10/13

10/20 12/18 17/25 18/3
21/3 21/3 21/11 24/23
26/17 26/20 28/6 28/7
28/11 28/20 30/18 31/1
31/17 31/17 33/15
34/12 37/2 37/6 39/9
40/17 40/23 41/18 42/1
42/4 44/18 44/22 44/23
56/20 57/1 57/4 57/8
57/11 57/14 57/20
57/24 58/7 58/10 58/18
60/10 60/15
**cases [12]** 4/9 4/13
4/22 5/24 6/22 9/25
12/18 19/20 24/22 28/6
28/17 57/8
**categories [1]** 43/5
**causal [8]** 5/4 5/20
17/8 28/19 34/2 43/16
43/19 56/19
**cause [1]** 63/6
**cellulosic [1]** 51/3
**CERCLA [4]** 5/15 29/7
48/6 60/25
**certain [6]** 4/2 37/11
40/23 41/14 49/16
57/16
**certainly [8]** 8/17 22/24
26/5 36/18 39/12 46/25
52/23 62/3
**certificate [2]** 17/3
28/25
**certificates [11]** 15/25
16/9 16/24 17/13 18/23
18/25 21/22 23/22
24/20 25/14 29/8
**certified [1]** 63/7
**certify [1]** 63/4
**cetera [3]** 10/25 36/6
37/21
**challenge [10]** 5/25 6/2
6/4 21/12 39/23 40/4

**C** Case 3:18-cv-00238-MO Document 37 Filed 08/01/18 Page 69 of 91

challenge... **[4]** 41/20
41/21 41/25 42/1
chance **[1]** 8/22
change **[2]** 19/14 21/19
changed **[1]** 20/5
characterized **[1]** 54/9
charged **[1]** 25/5
chart **[1]** 15/22
check **[1]** 24/5
CHIEF **[1]** 1/19
choice **[1]** 42/9
Circuit **[5]** 24/22 28/7
28/15 39/19 42/10
circumnavigated **[1]**
39/6
circumstances **[2]** 4/2
31/6
citation **[1]** 25/25
cited **[1]** 48/20
civil **[1]** 21/4
claim **[1]** 27/4
claimed **[1]** 5/4
claims **[2]** 5/21 34/3
classified **[1]** 34/15
cleaned **[1]** 38/2
clear **[2]** 4/13 9/22
client **[2]** 22/15 33/2
close **[3]** 8/7 16/10
19/13
closed **[2]** 23/20 35/14
coastal **[1]** 36/7
collectively **[1]** 52/3
colloquial **[1]** 36/19
colorability **[1]** 18/1
colorable **[14]** 5/7 5/9
5/21 17/23 18/13 29/2
34/5 41/16 46/17 47/2
47/24 48/2 61/21 62/7
combinations **[1]**
14/22

combine **[1]** 52/2
come **[4]** 17/14 37/24
43/20 57/10
comes **[1]** 57/6
coming **[1]** 27/6
command **[1]** 42/10
comment **[1]** 55/15
comments **[3]** 21/8
30/8 44/10
Commerce **[2]** 54/13
54/14
commercial **[2]** 20/13
53/6
commercially **[1]** 23/19
Commission **[1]** 38/15
common **[1]** 4/9
communications **[1]**
29/17
companies **[1]** 29/12
company **[9]** 1/7 3/4
11/8 11/12 16/22 44/15
46/22 50/17 54/17
compelled **[2]** 30/5
35/17
compelling **[1]** 47/21
competent **[2]** 6/14
20/13
complaint **[5]** 5/5 20/22
25/6 36/13 36/21
completely **[1]** 56/19
complexity **[1]** 57/23
component **[3]** 13/17
20/12 29/15
composed **[1]** 12/4
composition **[1]** 43/10
compound **[2]** 14/21
50/3
compulsion **[1]** 20/17
conceivably **[1]** 27/6
concentrate **[1]** 8/19
concentrated **[1]** 41/4
concerned **[1]** 52/25

concerns **[2]** 35/13
54/15
concluded **[1]** 62/12
conduct **[1]** 5/5
conflates **[1]** 60/24
conflicts **[1]** 20/18
conformed **[1]** 63/7
connected **[1]** 48/16
connection **[9]** 5/4
5/20 16/5 38/22 46/21
47/25 48/8 48/23 48/25
consider **[1]** 8/23
consistently **[1]** 37/20
consolidation **[1]** 7/9
constructed **[2]** 37/21
38/2
contain **[6]** 13/4 51/14
51/18 58/12 59/2 59/10
contained **[1]** 15/7
containing **[2]** 46/1
54/16
contains **[1]** 59/6
contamination **[2]** 27/7
27/20
contemplated **[1]**
43/11
contend **[1]** 31/14
contention **[1]** 17/9
contentions **[1]** 57/17
contested **[3]** 6/7 6/8
61/12
contests **[1]** 6/4
context **[1]** 42/5
continued **[1]** 23/19
continuum **[2]** 15/2
15/3
contract **[3]** 7/24 46/18
58/16
contractor **[32]** 5/10
5/22 10/8 10/11 17/16
17/18 17/22 18/4 18/8
28/22 29/3 29/9 34/9

**contractor... [19]** 48/5
49/22 49/23 50/1 50/5
50/9 50/10 52/5 52/14
53/1 53/2 53/14 59/9
59/12 59/16 59/18
59/22 59/24 59/25
**contractors [5]** 19/21
19/24 45/11 49/15
49/15
**contractual [4]** 14/2
52/16 60/9 60/12
**contrast [1]** 27/1
**control [67]**
**controlled [4]** 5/20
33/14 50/2 61/19
**controlling [8]** 6/22
6/24 6/25 11/11 51/22
52/17 53/6 53/12
**core [6]** 4/7 4/12 4/20
4/23 37/1 37/5
**Corporation [1]** 51/18
**correct [8]** 20/1 22/10
22/22 24/1 29/1 45/6
54/1 63/5
**could [14]** 13/23 20/14
22/21 24/11 34/15
37/25 41 45/22 47/6
53/23 55/15 55/22
55/22 55/25
**counsel [10]** 3/5 16/16
20/20 20/24 21/17
21/19 27/17 39/2 40/1
42/21
**counsel's [1]** 44/4
**country [3]** 25/20 46/3
50/19
**counts [1]** 26/21
**couple [5]** 8/12 39/3
48/12 57/1 57/2
**course [11]** 3/24 4/7

40/20 43/18 49/7 52/4
59/21
**court [24]** 1/1 1/19 2/22
3/25 4/3 4/3 4/8 9/10
12/18 18/11 20/14
36/23 37/6 39/13 41/8
42/19 43/9 44/25 45/8
51/2 56/23 60/19 62/11
63/11
**court's [6]** 8/13 8/17
9/8 23/14 44/9 44/18
**Courthouse [1]** 2/22
**covers [1]** 8/9
**create [1]** 38/19
**credit [6]** 16/3 22/16
22/19 22/20 24/4 24/9
**credits [3]** 16/6 16/13
16/22
**critical [1]** 53/19
**CRR [2]** 2/22 63/10
**CSR [2]** 2/22 63/10
**culled [1]** 8/8
**Cuming [1]** 54/18
**curious [1]** 53/5
**cut [2]** 3/18 30/11
**cv [2]** 1/5 3/4

**D**

**Dahab [2]** 2/3 3/8
**Dan [1]** 3/9
**dangers [4]** 18/9 29/20
29/23 34/10
**Daniel [1]** 2/7
**date [3]** 35/18 54/11
63/10
**dated [3]** 35/7 35/9
54/11
**dates [1]** 35/16
**days [1]** 20/21
**deal [3]** 17/5 20/18
50/25

**dealings [1]** 47/14
**deals [1]** 51/1
**decades [1]** 57/12
**decide [1]** 57/1
**decided [1]** 55/23
**decisions [1]** 39/20
**deck [1]** 19/5
**declined [1]** 20/7
**decommissioned [1]**
37/21
**decommissioning [1]**
27/12
**defeat [1]** 56/17
**defend [2]** 21/4 44/23
**defendant [1]** 10/13
**Defendants [2]** 1/9
2/13
**defending [1]** 44/17
**defense [38]** 5/7 5/10
5/11 5/11 5/12 5/22
7/25 17/16 17/18 17/23
17/24 18/1 18/1 18/11
18/13 23/10 24/23 28/7
28/10 28/12 28/19
28/22 28/22 29/3 29/4
29/9 34/5 44/21 46/17
47/2 47/24 48/2 48/4
48/5 49/22 49/22 61/22
62/8
**defense: [1]** 5/9
**defense: one [1]** 5/9
**defenses [1]** 29/3
**defined [1]** 4/6
**degree [4]** 7/17 7/23
18/24 49/25
**deliver [2]** 38/20 54/19
**delivered [1]** 32/14
**demand [5]** 14/17
58/11 58/12 58/14 60/6
**demanded [1]** 37/18
**demanding [4]** 12/5

**demanding... [3]** 13/8 13/10 60/8

**demands [1]** 60/12

**deny [1]** 7/17

**Department [6]** 2/10 46/3 46/19 48/1 54/14 62/6

**depends [2]** 13/15 20/15

**deposition [1]** 21/16

**describe [3]** 22/11 52/19 58/9

**described [1]** 59/22

**describing [4]** 28/19 45/19 58/2 58/3

**description [1]** 36/20

**design [1]** 45/22

**designed [2]** 18/4 45/21

**detail [3]** 13/19 13/20 23/12

**detailed [1]** 10/21

**determine [1]** 42/20

**devoted [1]** 22/2

**diagram [1]** 36/3

**did [11]** 22/18 25/15 26/1 26/2 26/5 27/5 30/2 38/5 45/4 50/4 52/19

**didn't [7]** 17/4 17/17 30/5 38/9 50/16 52/9 52/21

**difference [4]** 24/8 24/17 51/16 57/21

**different [7]** 13/25 14/22 21/10 24/10 24/15 30/9 61/1

**differently [1]** 42/21

**difficult [7]** 10/1 10/19 45/2 57/7 57/8 58/22

**dilemma [1]** 44/6

**direct [3]** 14/10 33/20 47/25

**directed [15]** 19/16 23/17 33/7 33/17 38/24 38/25 42/23 43/17 47/8 50/4 50/19 52/7 54/19 55/1 55/24

**directing [5]** 11/12 12/15 15/8 30/24 54/23

**direction [9]** 10/6 10/10 12/14 17/12 34/2 40/8 46/25 47/16 47/17

**directly [2]** 4/9 52/5

**directorate [1]** 13/21

**directs [1]** 56/8

**disagree [1]** 31/11

**disagreement [1]** 6/13

**disagrees [2]** 6/9 6/12

**discovery [1]** 45/10

**discuss [8]** 3/20 3/22 4/19 5/10 5/14 5/15 15/13 51/2

**discussed [1]** 58/6

**discussion [5]** 4/21 6/21 7/2 7/4 7/8

**discussion of [1]** 7/2

**discussions [1]** 40/10

**dismiss [1]** 41/10

**disprove [1]** 33/25

**dispute [15]** 6/13 20/13 22/1 26/6 26/8 26/9 26/9 27/21 38/10 40/13 42/15 57/5 57/11 57/15 61/12

**disputed [3]** 27/11 57/17 57/17

**disputes [1]** 42/7

**distances [1]** 36/8

**distinction [2]** 24/4 24/6

**distinguish... [2]** 19/20 19/22

**distinguishing [1]** 53/19

**DISTRICT [4]** 1/1 1/2 1/19 2/22

**do [49]** 4/22 8/1 8/7 8/12 11/18 14/7 14/11 15/19 16/4 17/20 18/16 19/8 20/24 21/9 24/2 24/14 24/25 25/3 25/15 25/16 28/5 29/8 30/25 31/14 32/9 32/25 33/5 34/11 37/11 37/13 39/8 39/24 39/25 40/4 40/14 42/18 43/8 44/19 45/2 46/9 46/9 47/22 48/14 48/22 48/24 50/3 53/13 53/24 55/1

**docked [1]** 38/2

**documents [2]** 39/18 45/13

**does [18]** 1/8 6/1 8/10 10/8 10/9 10/11 10/16 13/3 15/25 16/15 16/18 18/20 23/6 49/24 50/14 53/11 55/18 56/14

**doesn't [22]** 11/20 12/2 12/13 15/18 16/3 18/6 18/10 22/5 24/17 28/13 31/3 32/12 33/10 37/6 37/9 40/1 50/17 50/19 50/25 55/24 58/18 58/20

**doing [3]** 13/22 41/17 53/14

**DOJ [1]** 3/10

**dollar [2]** 24/15 24/15

**dollar-for-dollar [1]** 24/15

**Domestic [1]** 54/13

**don't [65]**

**D**

**Donald [2]** 2/16 3/12
**done [8]** 5/6 9/6 15/10
21/7 21/16 21/17 34/9
41/2
**doubt [1]** 56/16
**down [1]** 54/21
**DPA [12]** 5/22 7/24
30/15 30/18 32/7 32/8
32/10 32/14 32/17
33/19 34/20 38/13
**dramatically [1]** 21/25
**dropped [1]** 33/21
**during [2]** 49/5 61/20
**duties [1]** 4/18
**duty [1]** 38/20

**E**

**each [3]** 36/17 42/19
45/18
**earlier [8]** 21/8 29/5
35/4 37/17 40/19 46/11
48/6 54/10
**Earth [2]** 24/7 36/18
**economic [1]** 24/17
**economist [1]** 24/7
**effect [1]** 44/8
**effort [3]** 3/18 4/17
25/17
**eight [1]** 10/25
**either [8]** 7/24 12/12
29/12 40/7 40/15 45/10
45/20 60/6
**element [2]** 29/19
29/22
**elemental [1]** 14/6
**elements [4]** 13/2 13/4
29/9 38/16
**elimination [1]** 16/14
**Ellen [1]** 1/3
**else [11]** 14/17 15/14

15/19 16/12 22/19
33/19 40/2 46/14 50/18
53/25 60/25
**elsewhere [1]** 39/6
**Emerson [1]** 54/18
**employ [1]** 41/21
**employee [1]** 10/7
**employer [1]** 10/9
**employment [2]** 10/8
10/11
**enclaves [2]** 7/6 7/7
**encourage [3]** 16/15
16/18 16/21
**encouraged [1]** 22/15
**encouragement [2]**
17/3 23/5
**encourages [3]** 16/11
16/12 16/19
**end [7]** 11/5 20/14 33/9
34/14 41/17 52/14
55/18
**ended [4]** 25/1 25/15
26/2 61/5
**Energy [1]** 38/15
**enforcement [1]** 4/10
**engaged [2]** 61/14
61/20
**enough [15]** 9/24 13/10
15/25 19/1 21/19 23/13
27/25 31/13 31/15
31/21 42/16 53/11
58/16 60/13 61/8
**entire [2]** 8/1 13/16
**entitled [3]** 35/12 35/23
63/6
**environment [1]** 58/19
**environmental [1]**
54/15
**equated [1]** 11/23
**equipment [3]** 18/5
18/9 49/1
**essence [1]** 58/11

**essential [2]** 22/13
29/17
**essentially [2]** 10/7
50/2
**establish [1]** 56/25
**estimated [1]** 36/5
**et [4]** 3/4 10/25 36/6
37/21
**et cetera [1]** 37/21
**even [22]** 6/23 9/12
11/19 15/14 15/18 16/9
31/3 34/16 36/11 38/24
41/10 41/10 43/14
44/19 46/18 47/1 48/7
58/3 58/12 58/13 60/9
62/2
**events [1]** 44/11
**eventually [2]** 7/2 7/4
**ever [1]** 25/7
**every [9]** 12/18 13/19
13/20 13/20 13/20 25/7
26/19 26/21 45/19
**everybody [4]** 19/21
21/2 21/2 46/14
**everywhere [1]** 37/20
**evidence [20]** 10/16
11/19 17/8 18/3 19/15
20/7 21/14 34/1 34/8
39/13 43/16 53/8 55/1
56/10 56/11 56/12
56/14 56/15 57/10
57/17
**exactly [7]** 9/24 13/9
13/22 26/9 38/1 41/18
50/3
**example [18]** 6/10 6/19
9/22 19/16 20/2 23/8
39/5 42/15 43/10 43/15
43/23 44/5 53/22 53/22
54/9 59/4 59/5 59/6
**examples [1]** 23/15
**except [2]** 11/19 62/2

**exception [3]** 11/25
45/20 62/5
**excerpts [1]** 21/16
**exclusively [2]** 49/4
51/3
**excuse [1]** 57/12
**exercise [1]** 19/23
**exhibit [21]** 8/18 11/21
34/23 35/22 38/19 39/1
42/23 43/10 44/8 46/4
46/15 46/20 47/6 47/12
50/24 54/5 54/11 55/4
55/14 55/18 56/20
**Exhibit 18 [1]** 50/24
**Exhibit 21 [3]** 54/11
55/14 55/18
**Exhibit 23 [1]** 38/19
**Exhibit 4 [2]** 11/21
43/10
**Exhibit 6 [2]** 8/18 47/6
**Exhibit 8 [2]** 46/4 46/15
**Exhibit 9 [1]** 46/20
**exhibits [14]** 8/15 20/3
22/9 22/24 23/9 23/15
29/18 30/1 30/4 44/3
46/8 46/25 48/12 48/20
**existed [1]** 25/7
**existence [1]** 58/19
**expand [5]** 22/15 22/18
22/20 23/2 23/6
**expanded [10]** 17/1
17/2 17/2 21/25 22/14
22/21 25/1 25/13 25/14
26/2
**expansion [4]** 6/11
25/18 26/22 49/3
**experience [1]** 4/9
**explained [1]** 26/16
**express [1]** 29/6
**expressed [3]** 42/18

**extensive [1]** 21/14
**extra [1]** 45/7
**extremes [1]** 57/2

F

**facial [11]** 5/25 6/16
6/17 6/17 21/8 21/20
26/10 33/24 39/22
40/16 41/19
**facilities [7]** 6/11 17/1
17/2 25/1 25/13 26/2
27/12
**fact [27]** 6/13 6/15
16/15 21/17 22/6 22/12
22/17 26/23 27/15 30/4
31/10 31/11 31/12
31/14 33/8 35/8 39/8
40/3 43/8 46/14 47/13
53/18 54/21 55/24
57/18 59/15 61/23
**factor [1]** 7/9
**factory [2]** 16/7 31/7
**facts [4]** 6/19 7/13
39/20 41/7
**factual [27]** 5/25 6/2
6/4 6/5 6/6 6/13 11/25
21/9 21/10 21/12 21/20
26/10 33/24 34/1 40/4
40/12 41/21 41/25 42/1
42/7 42/14 51/9 57/5
57/15 57/16 61/12 62/3
**fail [1]** 17/20
**fails [1]** 12/9
**fair [9]** 6/25 19/1 27/25
42/16 48/19 49/8 51/6
51/9 53/11
**fairly [1]** 31/7
**fall [1]** 24/21
**falling [1]** 23/1
**falls [1]** 10/1
**far [1]** 39/4

**fast [1]** 45/4
**fatal [1]** 58/4
**Fate [1]** 35/23
**favor [1]** 51/10
**favorable [1]** 41/9
**federal [69]**
**federally [7]** 33/7 33/14
33/16 38/24 38/25
43/17 50/19
**Fifth [1]** 2/14
**figure [2]** 12/21 36/4
**filed [2]** 27/16 36/21
**filings [1]** 60/19
**fill [2]** 23/17 45/12
**financed [1]** 6/11
**financial [4]** 24/3 24/6
24/8 24/8
**find [13]** 7/13 7/18 8/21
14/24 17/20 33/19
37/10 46/21 53/19 54/8
54/21 58/1 60/20
**finding [1]** 7/10
**fine [5]** 19/3 19/8 34/25
35/25 36/19
**firm [1]** 3/10
**first [9]** 5/25 9/4 9/9
17/23 18/23 35/12
55/19 57/3 59/25
**five [1]** 10/24
**flavor [1]** 24/16
**float [2]** 37/8 61/10
**floated [1]** 33/21
**Floor [1]** 2/20
**fly [1]** 61/10
**focus [1]** 61/22
**following [3]** 13/2 13/4
43/10
**foot [4]** 41/1 41/6 41/13
42/3
**forces [1]** 4/11
**foregoing [1]** 63/4

**F**

**forget [1]** 33/6
**Forgive [1]** 35/24
**formulate [1]** 58/22
**formulation [4]** 43/11
43/12 44/5 58/6
**Forsyth [1]** 2/20
**forth [2]** 11/20 18/17
**forward [2]** 41/25
42/13
**fouled [1]** 55/10
**found [3]** 26/20 27/15
49/7
**foundation [1]** 41/16
**four [2]** 10/25 17/18
**frame [1]** 23/18
**Francisco [1]** 2/17
**frankly [1]** 3/17
**free [1]** 34/15
**fresh [1]** 36/7
**Fritz [2]** 3/12 3/13
**front [2]** 30/14 56/12
**fulfilled [2]** 41/4 44/7
**fully [1]** 5/10
**function [1]** 44/15
**further [10]** 5/15 7/10
8/23 11/6 26/22 52/20
53/8 54/21 55/1 55/15

**G**

**gave [1]** 15/23
**GE [1]** 29/13
**General [1]** 1/4
**generally [2]** 4/21 46/2
**get [20]** 5/23 5/24 7/4
7/5 11/24 19/5 19/13
26/10 34/15 39/21 41/5
43/7 50/5 52/13 53/15
53/17 53/23 56/14
58/23 59/17
**get-out-of-jail-free [1]**

34/15
**gets [4]** 4/7 4/12 13/19
16/6
**getting [4]** 14/18 14/19
37/23 46/16
**gin [1]** 57/8
**ginning [1]** 57/9
**give [12]** 23/15 24/11
24/13 32/2 53/1 53/1
53/4 55/8 56/6 59/23
60/8 60/10
**given [8]** 9/8 22/24
30/13 41/2 42/9 42/17
45/16 46/15
**gives [1]** 4/11
**giving [4]** 20/1 20/2
51/25 56/2
**go [19]** 3/15 10/14
10/25 13/9 14/24 15/22
18/17 18/22 26/22
34/22 36/7 42/13 47/4
47/7 50/22 53/17 53/24
56/11 58/8
**goalposts [1]** 57/1
**goes [3]** 5/16 13/18
20/17
**going [14]** 3/21 5/13
11/14 19/1 19/6 26/20
30/1 30/11 30/22 34/22
40/24 41/25 54/8 57/12
**Goncalves [1]** 6/23
**good [2]** 20/18 52/19
**got [17]** 10/25 13/9
22/9 22/18 22/20 24/13
34/14 37/4 37/10 37/12
42/14 46/24 51/21
59/25 60/6 60/6 61/10
**government [112]**
**government's [4]**
17/12 53/9 59/13 60/12
**grant [2]** 24/14 62/8
**ground [1]** 8/9

**grounded [2]** 8/5 57/22
**grounds [2]** 9/13 18/14
**group [1]** 30/15
**guess [1]** 48/15
**guidance [7]** 4/15 5/3
5/19 9/6 9/8 9/14 40/8
**guide [1]** 9/1
**guides [1]** 21/15

**H**

**had [4]** 21/13 45/3
49/23 55/10
**hand [1]** 19/7
**Handing [2]** 19/9 35/1
**hands [1]** 33/9
**Hansen [2]** 2/13 3/11
**happen [2]** 17/4 52/21
**happened [4]** 22/6
37/20 52/20 52/21
**happens [1]** 32/19
**happy [1]** 28/1
**harbor [3]** 26/3 27/13
33/21
**hard [1]** 16/16
**harm [3]** 5/4 27/4 58/18
**harms [3]** 37/1 37/5
37/11
**has [26]** 3/17 5/1 5/21
8/10 9/10 11/4 13/2
14/16 14/18 21/16
24/12 27/3 29/16 31/5
32/15 33/7 33/16 40/9
44/15 47/8 47/9 53/15
59/15 59/16 61/3 61/5
**hasn't [1]** 39/12
**have [93]**
**haven't [4]** 26/11 26/16
56/8 56/11
**having [2]** 36/5 44/18
**he's [1]** 39/4
**health [1]** 35/13
**hear [8]** 7/7 7/10 8/3

Case 3:18-cv-00238-MO    Document 97    Filed 08/01/18    Page 75 of 91

**hear... [5]** 18/16 29/6
30/8 30/11 38/13
**heard [7]** 20/10 20/20
27/24 33/1 35/3 39/4
40/21
**hearing [1]** 52/4
**heat [2]** 43/3 44/12
**heat-resistant [2]** 43/3
44/12
**held [1]** 57/4
**helicopter [6]** 10/21
10/22 10/23 11/1 15/1
19/12
**helicopters [1]** 12/9
**helium [12]** 11/3 11/5
11/6 12/10 12/11 12/12
12/12 14/24 14/24
14/25 19/12 51/15
**help [7]** 4/18 8/6 15/15
22/5 37/9 41/8 57/1
**helpful [1]** 3/16
**hence [1]** 37/23
**Henry [2]** 2/10 3/10
**here [74]**
**here's [2]** 51/1 59/5
**herein [1]** 38/19
**hey [1]** 61/8
**high [1]** 31/7
**Highway [1]** 24/12
**history [1]** 10/3
**hold [2]** 39/20 41/25
**Holdren [2]** 17/25
31/17
**Honor [67]**
**Honor's [1]** 21/8
**HONORABLE [1]** 1/18
**hook [1]** 52/14
**horribles [1]** 20/10
**host [1]** 27/13
**housekeeping [1]** 7/3

**how [34]** 9/16 10/1
12/3 12/15 13/19 16/4
20/16 21/4 29/8 30/18
30/21 31/5 31/19 40/2
41/3 43/14 46/9 46/16
47/17 48/14 49/21 51/6
51/25 52/1 52/16 53/5
53/11 55/24 57/14
57/21 57/25 58/9 58/20
59/18
**Howard's [1]** 19/6
**however [3]** 36/17
38/10 43/9
**hundred [1]** 53/23
**hypothetical [3]** 52/8
52/12 59/25

**I**

**I analyze [1]** 53/2
**I'd [8]** 3/20 8/16 14/12
18/16 18/22 51/2 56/25
60/14
**I'll [15]** 5/10 7/15 9/4
19/7 30/11 31/10 38/14
44/1 52/25 53/2 56/22
58/13 60/10 61/21 62/5
**I'm [41]** 3/21 5/13 8/2
8/20 9/6 9/16 11/10
12/21 14/6 19/1 19/6
20/1 20/2 25/10 25/12
26/5 26/13 26/18 27/8
28/1 29/21 30/10 40/11
40/23 41/21 42/9 42/9
44/13 45/3 45/7 51/25
52/13 52/24 52/24 53/5
54/8 57/7 57/12 59/17
59/18 61/1
**I've [22]** 6/24 8/11
27/24 29/10 30/13 35/3
37/10 39/2 39/3 39/24
40/3 40/19 40/20 40/21
41/25 42/18 44/10

**how [34]** 9/16 10/1
49/14 57/4 58/18 59/24
61/23
**idea [4]** 4/11 32/25
33/18 44/12
**ideal [1]** 32/16
**identical [1]** 43/4
**if [87]**
**ignore [1]** 23/23
**ignored [1]** 23/5
**II [1]** 25/18
**illustrative [1]** 55/10
**impact [2]** 6/1 7/6
**implicate [3]** 12/17
12/20 13/23
**implicated [1]** 10/4
**implied [1]** 29/6
**imply [1]** 38/19
**important [5]** 7/5 9/10
17/24 23/12 29/15
**impose [1]** 45/15
**impossible [2]** 45/16
58/8
**in [251]**
**INC [2]** 1/8 54/18
**include [1]** 46/2
**included [3]** 20/4 21/14
37/22
**including [3]** 46/3
47/23 61/5
**increasing [1]** 54/15
**incumbent [1]** 42/18
**indeed [4]** 21/25 30/1
44/4 53/21
**indemnity [3]** 38/14
39/15 39/17
**independent [2]** 10/8
10/11
**indicate [6]** 19/20
24/23 26/16 35/7 40/17
51/7
**indicated [2]** 37/17
49/8

## I

**indicating [1]** 25/16
**indulgence [2]** 44/9 44/18
**industries [1]** 33/10
**industry [1]** 32/2
**inference [3]** 37/18 48/19 49/8
**inferred [1]** 38/8
**informing [1]** 30/3
**initially [1]** 4/8
**insist [1]** 45/19
**insistence [1]** 53/9
**insisting [2]** 22/11 22/25
**instance [2]** 45/19 62/2
**instances [1]** 15/13
**instead [1]** 16/17
**insufficient [4]** 11/14 11/16 13/5 32/19
**insufficiently [1]** 12/4
**intend [1]** 54/18
**Interior [4]** 46/3 46/19 48/1 62/6
**interpretation [1]** 21/18
**intimated [1]** 40/3
**into [9]** 3/19 10/14 10/17 13/19 20/11 26/3 37/23 43/7 44/19
**introduce [1]** 21/13
**invoked [2]** 23/10 40/18
**involve [2]** 4/17 17/16
**involved [4]** 12/22 18/24 48/25 54/11
**involves [1]** 5/18
**involving [2]** 4/10 12/18
**irrelevant [1]** 60/7
**is [230]**

**isn't [7]** 8/25 13/7 15/13 18/3 28/14 46/17 46/22
**issuance [1]** 18/24
**issue [3]** 19/11 37/25 61/22
**issues [2]** 8/4 42/19
**it [196]**
**it's [98]**
**items [1]** 39/6
**its [8]** 4/9 10/18 17/17 22/2 23/6 49/7 61/4 61/13
**itself [1]** 6/20

## J

**jail [1]** 34/15
**jets [1]** 13/8
**Jr [1]** 2/16
**JUDGE [1]** 1/19
**judgment [2]** 40/21 41/9
**judicial [2]** 7/12 7/15
**July [3]** 1/7 3/2 63/9
**jurisdiction [11]** 7/5 7/10 7/21 8/5 27/3 32/5 36/24 49/14 54/3 61/3 62/1
**jurisdictional [1]** 37/9
**just [50]** 3/22 5/2 6/10 6/17 6/19 11/10 11/16 11/20 13/3 13/17 14/1 15/18 18/1 18/17 20/10 20/25 25/8 25/11 26/1 26/13 26/24 27/5 28/12 31/1 33/1 33/10 37/9 37/14 38/15 40/1 41/14 42/4 46/13 49/9 51/23 52/4 52/13 53/5 55/8 55/21 58/21 58/23 59/11 59/22 59/25 60/11 61/4 61/5 61/8

**Justice [1]** 2/10
**justify [1]** 45/1

## K

**Kantor [2]** 2/10 3/10
**Kathryn [1]** 2/13
**Katie [1]** 3/12
**keep [1]** 44/1
**Keith [2]** 2/3 3/7
**Keller [2]** 2/7 3/9
**Kelly [2]** 2/13 3/12
**Ketterling [2]** 2/3 3/7
**kind [5]** 15/19 31/6 39/10 50/16 58/2
**King [2]** 2/16 3/13
**knew [1]** 35/19
**know [28]** 8/22 9/22 13/8 19/4 27/10 28/9 28/10 28/13 31/4 31/5 32/18 33/21 36/11 39/8 40/1 43/6 44/7 44/20 45/11 45/18 47/17 48/14 48/22 48/24 49/2 51/6 56/11 60/25
**known [1]** 17/4
**knows [2]** 22/19 46/15

## L

**label [1]** 21/15
**lacking [1]** 56/20
**lacquer [2]** 51/4 51/4
**language [3]** 18/7 44/5 55/17
**last [4]** 34/5 35/21 35/22 49/13
**later [3]** 5/11 19/5 30/11
**law [9]** 4/1 4/10 20/25 28/6 33/15 41/18 42/4 57/11 57/13
**lawsuit [1]** 3/24

**L**

lay [1] 3/20
leading [1] 40/17
leap [1] 37/17
least [13] 7/14 14/9
19/7 25/24 27/1 32/11
38/8 46/4 48/10 57/15
57/16 57/20 58/14
left [3] 7/20 23/10 40/9
legitimate [1] 37/18
Leite [9] 6/23 9/9 9/15
9/21 9/23 10/2 21/11
24/22 39/19
lengthy [1] 57/25
let [11] 3/20 8/22 16/17
19/11 22/8 26/15 27/22
30/13 35/7 41/24 43/6
let's [13] 15/22 21/21
24/19 30/10 31/1 33/18
42/13 43/2 47/5 47/25
50/24 51/11 51/14
letter [5] 56/7 56/8 56/9
56/13 56/16
letter which [1] 56/9
level [5] 10/10 12/22
18/12 19/23 31/7
life [1] 59/18
light [2] 6/22 41/9
like [24] 3/20 8/17 12/3
12/4 13/9 15/19 15/20
16/8 18/16 18/22 26/1
27/16 28/2 30/8 42/22
46/13 48/15 48/23 51/2
51/15 56/25 59/2 60/5
60/14
limit [1] 24/12
limitless [3] 9/12 9/13
9/20
limits [1] 9/12
line [1] 51/1
linked [3] 61/15 61/17

list [4] 8/13 13/7 30/13
30/14
listed [2] 49/14 54/2
literally [1] 10/12
litigation [1] 57/10
little [7] 8/7 10/19
13/20 21/10 24/3 27/8
45/25
LLC [1] 1/8
LLP [2] 2/7 2/16
local [1] 4/10
Lockheed [1] 48/23
Lokting [1] 2/4
long [6] 13/7 20/16
36/8 38/3 44/11 46/16
longer [4] 19/14 30/3
54/17 58/6
look [13] 9/21 9/25
10/2 10/10 33/1 33/13
46/14 46/20 47/5 50/24
52/3 54/20 58/9
looked [1] 42/1
looking [6] 17/23 25/12
42/7 44/13 45/7 47/19
looks [2] 22/25 42/21
lot [11] 14/16 14/18
15/4 15/5 16/19 31/4
31/4 43/20 44/14 51/15
61/9
lots [1] 14/22
Louis [1] 2/20

**M**

Machinery [1] 46/22
made [26] 8/16 12/3
14/17 15/14 15/14 17/4
21/12 21/13 23/9 23/13
25/17 33/3 33/3 33/8
35/4 37/10 37/13 39/6
44/11 45/14 45/21 48/6
51/10 58/20 61/6 61/9

Maine [1] 46/4
make [40] 8/8 10/23
11/25 12/16 14/6 14/7
14/25 15/4 15/5 15/9
16/13 16/17 16/22 21/7
21/18 23/13 24/2 30/13
31/8 31/13 31/19 31/20
31/20 31/20 31/23
32/17 32/17 32/21
32/25 35/17 35/18
37/17 41/5 41/24 43/14
50/19 52/12 55/11
55/15 57/25
makes [2] 6/6 50/17
making [4] 20/24 32/2
36/10 39/5
manner [1] 16/6
manuals [1] 21/15
manufacture [3] 13/16
16/4 47/9
manufactured [2] 18/4
25/22
manufacturer [2] 13/22
31/8
manufactures [1] 11/8
manufacturing [5]
17/13 35/14 36/4 48/18
58/3
many [11] 6/6 19/19
25/20 33/9 40/20 40/21
44/11 48/14 49/6 49/9
57/8
marked [1] 23/15
Market [1] 2/11
marketplace [1] 20/11
Maryland [2] 32/18
32/22
material [5] 20/4 20/8
47/10 47/23 54/23
materials [4] 29/14
54/24 55/19 55/25

# M

**matrix [1]** 18/23

**matrix: [1]** 7/22

**matrix: is [1]** 7/22

**matrixes [1]** 43/6

**matter [4]** 3/17 6/19 10/6 58/21

**matters [1]** 5/24

**may [9]** 4/19 13/20 16/21 19/2 22/10 23/4 36/19 37/14 45/2

**maybe [4]** 14/18 15/19 16/14 62/2

**me [35]** 3/20 3/23 8/6 8/10 8/22 16/17 19/11 22/5 22/8 25/8 25/11 25/13 26/15 27/15 27/22 28/2 28/15 30/13 30/14 35/7 35/24 37/9 41/24 42/6 43/6 43/19 44/17 46/6 48/15 50/15 52/15 55/4 55/8 56/12 57/11

**mean [15]** 11/5 13/10 18/10 20/25 23/7 28/13 33/10 34/14 36/16 37/6 37/25 45/2 49/24 50/17 55/24

**meaningful [2]** 4/24 24/4

**means [13]** 4/6 26/21 28/11 32/13 36/24 37/9 37/12 44/17 44/24 60/15 61/3 61/4 61/23

**meant [1]** 49/6

**meet [15]** 12/5 13/13 14/11 42/14 49/24 51/4 51/7 51/20 52/16 57/16 58/15 60/2 60/9 60/12 62/4

**meets [1]** 13/12

**Menshen [2]** 2/7 3/9

**mention [2]** 23/3 40/19

**mentioned [4]** 5/2 29/2 49/3 54/5

**merely [2]** 14/15 42/22

**met [4]** 26/13 40/12 40/14 42/7

**methodology [1]** 41/21

**MICHAEL [1]** 1/18

**middleman [1]** 52/12

**might [8]** 4/22 7/9 8/20 27/6 50/5 57/22 58/1 61/1

**military [20]** 18/5 21/15 29/16 29/16 34/9 37/19 45/10 46/18 46/18 48/7 48/16 48/18 48/23 48/25 49/1 49/5 49/6 51/4 51/8 53/10

**Miller [2]** 2/19 3/12

**million [2]** 10/23 14/25

**mind [3]** 8/13 27/22 34/23

**missile [1]** 20/3

**missiles [2]** 47/9 48/18

**missing [1]** 48/10

**Missouri [1]** 2/20

**MO [2]** 1/5 3/4

**molecular [1]** 36/3

**molecule [11]** 19/13 20/5 25/7 26/19 26/21 26/24 45/23 58/9 58/19 58/21 58/23

**moment [8]** 23/16 30/2 31/1 31/11 33/20 51/11 55/8 61/21

**money [3]** 24/11 24/12 24/13

**MONSANTO [101]**

**Monsanto's [7]** 6/11 49/20 49/24 50/4 52/14 60/15 61/17

**more [17]** 4/19 5/10 6/16 12/2 12/11 14/6 22/10 22/25 23/1 27/8 29/6 40/15 41/10 43/20 45/25 47/18 58/25

**MOSMAN [1]** 1/18

**most [9]** 4/9 6/7 8/6 23/19 27/24 29/11 30/19 41/9 47/25

**motion [4]** 9/3 40/21 41/10 62/8

**Mr [7]** 2/3 2/7 2/10 2/13 2/16 2/19 40/22

**Mr. [1]** 19/6

**Mr. Howard's [1]** 19/6

**Ms [3]** 2/3 2/4 2/13

**much [9]** 9/6 9/17 10/10 10/12 14/19 24/18 26/8 37/17 40/15

**multi [1]** 45/25

**multi-variant [1]** 45/25

**multiple [2]** 43/5 58/22

**must [25]** 4/15 4/17 11/15 12/3 12/3 13/4 15/18 20/12 30/25 31/8 31/20 32/2 32/2 41/21 42/24 50/9 50/11 51/13 51/18 52/15 53/1 56/6 59/10 59/23 60/6

**my [33]** 4/8 6/2 6/16 7/9 7/19 8/7 8/13 9/6 12/8 14/23 25/24 27/22 28/17 36/22 36/22 36/24 37/12 38/9 40/25 42/2 42/17 43/16 52/12 55/10 57/4 57/24 58/4 58/9 58/16 59/25 60/7 60/12 61/8

**myriad [1]** 61/19

# N

**Nadia [2]** 2/3 3/8

**name [1]** 3/5
**names [1]** 29/13
**nature [1]** 42/8
**Navy [4]** 25/19 27/6
37/20 38/2
**near [2]** 10/2 34/14
**nearly [1]** 49/4
**necessarily [1]** 13/21
**necessary [3]** 7/22
7/23 25/23
**necessity [13]** 15/25
16/9 16/23 17/3 17/13
18/23 18/25 21/21
23/21 24/20 25/14
28/25 29/8
**need [20]** 5/14 7/7 11/3
15/10 22/25 23/2 26/21
27/23 38/12 43/4 43/23
44/19 44/19 44/20 50/2
50/10 50/16 53/9 59/12
60/1
**needed [3]** 20/3 22/12
52/12
**needs [2]** 10/17 53/24
**negative [1]** 33/25
**new [2]** 43/5 47/10
**next [1]** 45/25
**nexus [60]** 7/23 17/1
17/8 17/10 17/12 24/19
24/19 26/11 26/12
26/14 26/16 26/24 27/2
28/3 28/4 28/12 28/13
28/16 28/19 32/6 32/13
32/16 32/19 32/24 33/1
33/3 33/4 33/5 33/7
33/10 33/13 33/13
33/16 33/20 33/24 34/2
35/3 35/4 37/12 38/23
38/25 39/5 39/10 40/13
42/15 42/17 43/16

48/17 48/19 48/24 47/1
49/21 56/19 60/14
60/15 60/21 61/6 61/23
61/24 62/6
**Ninth [5]** 24/22 28/7
28/15 39/19 42/10
**no [42]** 1/5 3/3 6/18
12/18 17/6 17/11 18/21
19/14 19/18 22/1 23/10
23/24 24/6 24/7 24/16
28/3 30/3 31/22 33/19
38/7 38/18 38/23 38/25
42/21 43/8 43/11 43/13
43/16 44/1 45/22 46/7
47/1 49/18 49/19 49/21
52/23 54/17 61/23 62/1
62/3 62/7 62/7
**non [1]** 61/19
**non-controlled [1]**
61/19
**none [3]** 4/23 10/4
21/16
**nonmoving [1]** 41/9
**nor [1]** 58/2
**not [114]**
**not proven [1]** 40/5
**nother [1]** 52/8
**nothing [3]** 12/11
38/19 57/10
**notice [2]** 7/12 7/15
**November [1]** 54/12
**November 17 [1]** 54/12
**now [15]** 17/9 18/10
19/5 20/21 21/24 31/3
31/20 36/16 36/23 41/1
41/4 45/2 47/14 47/19
47/20
**nowhere [1]** 10/16
**number [4]** 7/13 22/1
36/5 55/4
**numbers [2]** 22/9
55/10

# O

**o0o [1]** 63/2
**Oak [1]** 2/5
**object [1]** 57/23
**objection [1]** 55/2
**objections [1]** 7/18
**objects [1]** 7/18
**obligation [4]** 38/20
61/11 61/16 61/17
**observation [1]** 21/7
**obtained [1]** 35/1
**obvious [1]** 48/23
**Obviously [2]** 8/25
51/25
**occur [1]** 45/22
**occurred [5]** 20/22
25/18 27/12 38/10
44/11
**odd [1]** 42/6
**off [7]** 11/8 11/9 15/7
30/11 46/11 53/20 62/5
**off-the-shelf [4]** 15/7
46/11 53/20 62/5
**offer [1]** 27/17
**offering [1]** 8/14
**officer [18]** 4/2 4/4 4/5
4/8 7/21 10/5 10/9
12/14 12/17 13/21
13/23 32/5 34/2 46/24
49/14 54/3 61/2 62/1
**officer's [3]** 4/15 5/3
5/19
**officers [2]** 4/10 4/11
**Official [1]** 63/11
**often [1]** 62/2
**oh [1]** 52/10
**Okay [2]** 43/7 46/7
**Old [1]** 6/11
**on [87]**
**once [6]** 28/6 36/8

**once... [4]** 45/22 52/2
52/21 54/10
**one [53]** 5/2 5/9 5/17
8/21 9/22 10/6 11/16
13/17 14/24 15/12
15/16 15/23 15/23
17/15 18/17 21/7 21/10
22/10 22/11 23/4 23/12
24/2 24/24 25/12 28/13
28/16 28/20 29/16
29/19 29/22 35/6 42/3
42/10 44/1 44/2 44/6
45/25 46/21 47/18 48/3
48/24 50/24 52/19
52/25 53/5 53/18 55/7
55/15 55/21 56/14
58/23 61/21 62/2
**ones [7]** 7/14 23/19
32/10 48/1 50/24 52/24
54/2
**only [20]** 14/24 17/16
21/17 23/19 23/23 29/1
35/14 39/16 39/20 40/4
40/16 41/19 44/2 44/6
47/16 51/13 52/13
53/16 56/11 56/17
**opening [1]** 8/7
**operations [3]** 27/11
27/12 37/22
**opponent [1]** 39/2
**opposing [1]** 20/20
**option [1]** 23/11
**or [78]**
**oral [7]** 1/16 3/3 3/20
5/13 7/7 9/1 26/2
**order [7]** 7/4 30/24
56/17 58/15 59/13 60/8
60/12
**ordered [2]** 19/16 48/4
**ordering [1]** 15/8

**orders [17]** 10/20 23/9
23/14 23/16 30/15
30/18 30/20 30/23 32/7
32/8 32/10 32/14 32/17
33/19 34/20 38/13 41/3
**OREGON [42]** 1/2 1/3
1/4 1/9 2/10 3/4 3/8
3/10 17/3 17/4 17/14
24/20 25/2 25/15 32/9
32/14 32/24 33/2 33/20
34/3 34/23 36/19 37/14
37/22 38/25 43/17
43/19 46/4 46/21 47/25
48/1 49/9 49/21 60/20
61/5 61/7 61/11 61/15
61/16 61/18 61/24 62/6
**oregon.gov's [1]** 35/9
**original [2]** 50/6 63/6
**originally [1]** 36/20
**other [38]** 4/22 5/11
5/15 8/12 8/25 10/14
15/12 20/8 25/19 28/1
28/14 29/12 30/7 30/21
33/10 36/17 37/4 37/14
38/1 38/21 39/18 39/19
41/1 41/6 41/13 42/3
44/14 45/8 45/11 45/22
48/24 49/10 52/24
53/19 54/2 55/21 56/3
58/1
**others [6]** 8/21 24/23
29/14 48/22 48/24 53/4
**otherwise [1]** 38/3
**our [22]** 4/3 10/1 13/8
13/19 17/6 19/20 20/3
21/24 23/9 23/13 26/5
26/16 26/19 29/18
39/19 40/10 45/14
47/13 51/8 51/10 54/25
55/2
**ours [2]** 26/25 61/9
**ourselves [1]** 45/9

**out [23]** 3/20 4/16 4/18
5/6 6/25 10/18 12/21
15/15 19/7 20/2 20/11
28/18 34/15 35/11 40/9
43/9 44/2 44/25 47/18
48/13 56/4 57/20 57/20
**outside [1]** 21/14
**over [9]** 19/24 20/13
37/8 43/18 49/25 55/2
59/8 59/19 59/20
**overall [2]** 13/22 46/16
**own [3]** 21/18 27/17
60/22

## P

**P.C [1]** 2/5
**p.m [2]** 3/2 62/12
**page [8]** 35/12 35/22
36/2 46/15 46/15 46/20
54/22 55/19
**pages [6]** 11/1 13/10
58/1 58/1 58/3 58/3
**paint [2]** 43/3 44/12
**paper [2]** 3/22 44/14
**papers [7]** 19/20 20/3
21/24 22/3 23/9 23/13
26/5
**parade [1]** 20/10
**paragraph [1]** 36/2
**parameters [1]** 57/1
**parenthetical [4]** 4/4
4/6 4/14 4/14
**Park [2]** 2/4 3/9
**part [8]** 7/22 15/24
18/23 22/19 22/19 27/7
29/15 45/3
**particular [5]** 8/17
26/14 41/4 48/11 54/11
**particularly [2]** 37/19
41/2
**parties [1]** 4/21
**parts [1]** 46/6

**party [3]**  6/18 41/10 45/10
**party's [1]**  6/5
**passage [4]**  41/2 44/10 44/15 45/17
**passage-of-time [1]**  44/10
**past [2]**  36/17 41/7
**pattern [1]**  52/4
**paying [1]**  22/12
**payment [2]**  24/8 24/8
**PCB [22]**  10/20 14/22 15/2 15/3 15/13 16/11 16/15 16/15 16/18 19/14 25/7 26/24 27/19 36/3 36/4 37/18 38/21 45/22 46/1 58/2 60/20 60/22
**PCB-containing [1]**  46/1
**PCBs [81]**
**PCP [1]**  35/8
**people [1]**  53/23
**per [1]**  46/4
**percent [2]**  22/2 49/5
**perhaps [4]**  6/7 26/16 39/4 56/25
**peril [2]**  23/6 23/24
**perimeter [1]**  4/22
**period [2]**  38/3 61/20
**person [4]**  4/5 4/14 4/25 14/9
**PHARMACIA [1]**  1/8
**picking [1]**  20/9
**piece [1]**  56/14
**pieces [1]**  57/17
**place [4]**  26/4 27/14 36/15 53/16
**placed [1]**  30/20
**placing [2]**  57/5 57/15

**plainly [1]**  54/14
**plaintiff [7]**  1/5 3/6 3/8 3/24 6/3 6/4 61/9
**plaintiff's [5]**  25/6 25/11 27/17 60/22 61/16
**plaintiffs [3]**  2/3 53/16 60/18
**planes [1]**  32/3
**plant [4]**  21/25 22/14 31/23 49/4
**plasticizer [1]**  47/22
**plausibility [1]**  17/25
**plausible [3]**  18/2 41/15 41/16
**played [1]**  57/20
**pleading [1]**  25/25
**pleadings [3]**  18/12 21/14 27/1
**please [3]**  3/5 19/8 52/15
**pled [1]**  25/13
**plenty [1]**  41/2
**podium [1]**  19/2
**point [28]**  3/21 9/7 12/8 13/11 13/12 13/24 13/24 14/6 14/23 23/4 24/2 25/24 26/4 26/9 26/11 27/10 28/2 35/11 36/12 38/15 38/16 42/11 43/9 44/4 46/17 47/18 47/19 55/11
**points [2]**  23/4 48/5
**polychlorinated [2]**  35/8 54/16
**portion [1]**  47/12
**Portland [8]**  1/9 2/6 2/11 2/15 2/23 26/3 27/7 27/13
**pose [1]**  18/20
**posed [1]**  27/1
**position [4]**  10/1 14/7

**possibilities [1]**  5/9
**possibility [1]**  44/20
**possible [4]**  14/11 14/12 14/13 22/23
**possibly [1]**  6/1
**postdating [1]**  35/18
**potentially [1]**  7/14
**potting [3]**  20/4 47/10 47/22
**powerful [1]**  23/22
**practical [1]**  59/17
**practiced [1]**  28/9
**practicing [1]**  40/20
**precise [4]**  18/8 31/16 34/8 56/2
**precisely [3]**  41/12 45/12 45/17
**predicate [2]**  5/24 57/3
**predicates [1]**  7/3
**preemption [3]**  5/12 5/14 29/7
**preference [1]**  47/15
**preliminary [1]**  5/24
**preponderance [3]**  17/7 39/12 56/15
**presence [1]**  36/14
**present [1]**  8/3
**presented [2]**  8/2 44/6
**pretty [2]**  9/6 21/4
**previously [1]**  49/3
**primary [1]**  21/10
**prioritize [2]**  30/20 32/11
**prioritizing [1]**  42/22
**private [2]**  6/18 61/5
**probably [3]**  25/24 40/24 40/25
**problem [4]**  18/20 24/20 44/16 62/7
**procedure [1]**  21/5
**proceed [1]**  47/9

Case 3:18-cv-00238-MO    Document 57    Filed 08/01/18

**P**

**proceeding [1]** 47/15
**proceedings [3]** 1/17
62/12 63/5
**process [5]** 20/17
22/11 50/2 58/4 58/20
**produce [8]** 6/14 14/21
30/25 31/2 55/24 58/15
60/11 61/15
**produced [5]** 17/2 25/1
25/14 31/6 34/17
**producing [1]** 29/15
**product [38]** 10/14
10/14 10/15 11/7 11/15
12/2 12/15 12/16 12/19
12/24 13/3 13/16 13/17
14/9 15/7 15/8 20/5
20/16 31/22 31/24
34/10 45/18 47/15
47/23 50/9 50/11 51/12
51/18 53/9 54/21 56/3
56/5 56/6 58/11 59/2
59/5 59/10 60/5
**production [11]** 5/11
16/11 16/15 16/18 22/2
22/13 23/10 29/4 37/18
48/4 49/4
**products [7]** 38/21
46/2 49/7 49/16 54/16
56/4 58/1
**proffered [2]** 21/13
44/3
**project [1]** 22/13
**prong [2]** 34/5 34/6
**prongs [1]** 61/22
**proof [17]** 6/1 6/14
17/6 32/10 33/23 37/25
40/12 42/2 42/8 42/14
43/18 43/20 45/17 46/7
57/5 57/9 62/4
**proper [1]** 5/1

**prove [2]** 57/7 7/20/82
**proven [2]** 40/5 40/6
**proves [1]** 34/1
**provide [6]** 10/17 12/13
14/24 34/1 58/13 59/10
**provided [1]** 12/19
**provides [2]** 10/3 10/21
**providing [1]** 14/9
**proving [1]** 54/4
**provision [1]** 4/1
**public [1]** 36/14
**purchase [3]** 12/25
14/15 14/16
**purchased [1]** 12/17
**purchasers [1]** 30/21
**purchasing [1]** 12/14
**pure [1]** 21/10
**purpose [1]** 20/8
**purposes [6]** 4/4 5/13
6/8 24/10 34/9 38/5
**push [1]** 23/22
**put [13]** 4/16 10/17
11/20 12/11 14/25
15/13 19/6 44/2 50/9
52/9 52/11 54/25 55/20
**puts [1]** 51/13

**Q**

**qualify [1]** 47/10
**question [18]** 5/25 7/5
16/16 16/17 19/18 22/5
22/6 24/16 25/24 36/22
36/22 37/10 38/5 38/6
54/22 60/24 61/1 62/4
**questions [1]** 28/1
**quick [1]** 19/18
**quickly [2]** 21/4 57/9
**quit [1]** 32/2
**quite [3]** 3/17 40/7
40/23
**quote [1]** 6/9

**R**

**raise [2]** 18/11 47/1
**raised [1]** 19/12
**raises [1]** 6/3
**rather [7]** 14/3 17/2
18/16 20/2 33/13 40/24
54/4
**Raytheon [16]** 19/17
20/3 29/13 30/25 31/3
31/21 31/25 32/23 46/5
47/10 47/14 48/15
48/23 51/17 52/7 55/23
**reach [1]** 3/21
**reaches [1]** 20/11
**read [6]** 22/24 28/17
33/15 40/15 42/21 51/2
**readily [1]** 40/16
**reading [1]** 51/6
**reads [2]** 30/24 47/12
**ready [1]** 21/4
**reaffirm [1]** 57/4
**really [15]** 4/23 10/6
18/2 22/1 24/17 27/10
27/21 37/24 38/12 45/2
58/21 58/23 60/1 60/5
60/5
**reason [1]** 21/11
**reasonable [1]** 46/8
**reasonably [5]** 18/7
27/11 34/8 43/13 49/18
**received [3]** 3/23 41/3
46/21
**recess [5]** 56/22 56/23
56/24 62/9 62/11
**record [9]** 3/5 27/24
29/24 29/25 32/11 34/8
34/12 34/18 63/5
**reemitted [1]** 36/8
**refer [1]** 8/15
**referenced [1]** 29/4
**reflected [1]** 29/17

**R**

**reflective [1]** 28/8
**refused [1]** 47/9
**registered [1]** 8/13
**reject [1]** 60/14
**relates [1]** 18/2
**relationship [3]** 14/2
14/10 59/11
**released [1]** 36/6
**relevant [3]** 4/3 7/19
61/20
**rely [1]** 6/18
**relying [2]** 4/13 4/25
**remain [1]** 35/25
**remand [3]** 9/3 42/8
62/8
**Remind [1]** 55/4
**reminded [1]** 41/8
**removal [19]** 5/1 9/12
9/13 9/19 9/20 9/23
12/17 13/24 21/4 21/13
34/2 42/4 42/9 45/1
45/4 45/14 56/17 57/8
57/13
**remove [3]** 4/2 21/3
44/24
**removed [3]** 3/25 45/4
53/5
**removes [1]** 21/3
**removing [1]** 6/5
**repair [1]** 27/12
**repaired [2]** 25/21
37/21
**repeat [2]** 43/4 43/23
**report [1]** 46/16
**REPORTER [2]** 2/22
63/11
**request [4]** 7/12 7/17
12/24 12/24
**require [1]** 42/4
**required [5]** 31/16

38/16 39/25 51/7 60/11
**requirement [3]** 15/13
52/16 60/2
**requirements [4]** 31/5
57/12 59/14 60/9
**requires [3]** 25/25 27/2
48/7
**requiring [2]** 57/15
59/7
**research [1]** 44/19
**resistant [2]** 43/3 44/12
**respect [2]** 21/9 45/15
**respectfully [2]** 30/17
54/22
**respond [1]** 28/1
**response [3]** 32/14
39/16 54/12
**responsibility [4]** 25/6
26/19 34/1 60/24
**responsible [5]** 26/20
37/7 37/15 60/19 60/23
**rest [1]** 5/14
**restricted [2]** 35/14
43/12
**result [1]** 61/19
**resulted [8]** 27/4 27/6
37/1 37/5 37/11 37/13
37/23 49/4
**retained [1]** 44/15
**retrofitted [1]** 38/3
**reviewing [1]** 8/11
**Richard [2]** 2/13 3/11
**rid [1]** 5/24
**right [59]** 4/16 5/8 9/11
10/19 11/4 11/6 11/15
11/18 12/8 12/10 14/4
14/5 14/19 14/20 15/11
15/15 15/22 16/11
16/15 16/16 16/23 17/9
17/15 18/15 18/22
19/10 20/25 21/1 21/23
22/16 23/21 23/24 30/6

30/14 32/6 32/14 32/20
34/14 34/19 35/5 35/12
36/1 36/2 36/16 37/24
39/14 41/17 41/22
41/24 42/24 45/21
46/12 48/8 48/16 52/9
53/13 53/18 53/25
56/25
**RMR [2]** 2/22 63/10
**Rohrback [2]** 2/7 3/9
**Room [1]** 2/23
**Rosenblum [1]** 1/3
**row [1]** 30/10
**Rule [1]** 41/16
**rules [2]** 42/4 57/11
**running [1]** 7/21

**S**

**S.W [4]** 2/5 2/11 2/14
2/23
**said [8]** 25/25 30/4
38/1 38/1 50/2 58/18
59/24 61/23
**sale [6]** 46/18 46/19
46/19 47/16 54/10 62/5
**sales [14]** 8/16 35/17
41/3 46/1 46/11 47/25
48/2 48/11 48/14 48/15
48/25 49/14 53/20 61/5
**same [8]** 35/4 39/17
47/12 50/15 50/18 53/2
53/4 59/24
**Sample [1]** 43/10
**San [1]** 2/17
**sat [1]** 45/20
**satisfactory [2]** 9/23
28/13
**satisfied [1]** 20/6
**satisfy [3]** 20/8 29/9
59/13
**saw [2]** 19/15 29/13
**say [49]** 8/4 10/24

Case 3:18-cv-00238-MO   Document 57   Filed 08/01/18   Page 84 of 91

**say... [47]** 11/20 12/2 12/10 12/12 13/1 15/18 22/8 23/24 24/12 24/14 24/16 24/22 26/1 26/2 26/11 26/22 26/25 28/6 28/19 30/23 32/11 32/12 32/17 32/21 33/1 33/3 33/12 33/18 33/19 36/8 38/5 38/9 40/1 42/21 47/25 49/8 51/13 52/6 52/9 54/22 55/18 57/11 59/2 59/5 60/21 60/22 61/8

**saying [25]** 8/20 11/13 11/16 13/2 14/1 16/7 18/1 19/11 26/1 26/24 27/5 27/8 28/10 36/17 36/20 37/7 40/1 41/7 41/14 56/3 56/5 56/6 58/11 60/4 60/18

**says [39]** 4/4 9/12 9/18 11/2 11/14 11/21 12/2 12/23 13/3 13/18 13/23 15/18 20/11 30/23 31/12 31/18 32/1 33/1 33/2 36/4 36/6 38/19 41/18 43/9 43/18 44/5 50/10 50/15 51/19 52/15 55/25 56/7 56/10 56/11 58/14 59/9 59/12 59/22 61/9

**scenario [2]** 51/16 52/18

**scene [1]** 59/11

**Schwabe [1]** 2/14

**scope [1]** 10/7

**screen [1]** 19/7

**screens [2]** 50/16 53/23

**seated [2]** 3/15 35/25

**seats [1]** 10/24

**Seattle [1]** 2/8

**second [3]** 2/17 30/14 36/2

**Secondly [1]** 38/23

**section [3]** 5/1 35/12 35/22

**see [12]** 8/12 8/13 10/1 14/12 30/18 30/21 34/7 43/16 49/21 52/3 53/6 53/8

**seeing [1]** 42/7

**seem [1]** 28/14

**seems [2]** 43/19 44/17

**seen [5]** 10/16 20/17 21/24 56/8 56/9

**self [2]** 56/13 56/18

**self-serving [2]** 56/13 56/18

**sell [10]** 11/4 11/15 31/25 38/20 47/15 51/18 52/15 53/3 54/23 59/13

**selling [4]** 14/10 23/18 30/3 47/21

**sells [1]** 54/17

**semi [1]** 20/10

**semi-parade [1]** 20/10

**send [5]** 31/9 31/20 32/18 32/21 32/23

**sense [5]** 10/6 11/12 16/5 19/22 39/1

**sentence [1]** 11/17

**separately [2]** 42/19 42/25

**served [1]** 20/21

**serving [2]** 56/13 56/18

**set [1]** 61/21

**sets [1]** 6/25

**setting [2]** 46/10 47/22

**settings [2]** 23/20 29/11

**several [5]** 20/18 23/14 23/16 27/11 29/13

**shall [1]** 38/19

**sheet [2]** 3/22 35/8

**shelf [6]** 11/8 11/9 15/7 46/11 53/20 62/5

**shipment [1]** 42/22

**shipments [1]** 32/11

**shipped [1]** 39/6

**ships [7]** 25/19 26/3 26/3 37/20 38/2 49/7 61/10

**shipyard [1]** 27/11

**shipyards [2]** 25/21 27/19

**Shlachter [1]** 2/4

**shocking [1]** 27/24

**shoe [4]** 41/1 41/6 41/13 42/3

**short [2]** 23/1 44/2

**shorter [1]** 19/6

**should [13]** 24/24 25/9 25/12 28/16 34/17 35/24 41/1 41/14 41/17 43/20 44/18 51/10 54/21

**shouldn't [1]** 33/13

**show [28]** 5/1 15/25 16/3 18/6 19/25 23/9 25/1 25/13 26/11 26/23 28/23 36/23 36/24 37/12 41/3 41/7 45/13 53/11 58/5 58/10 58/16 60/13 61/3 61/6 61/11 61/12 61/16 61/17

**showing [9]** 7/22 7/23 17/11 21/12 45/13 57/16 59/20 62/1 62/3

**shown [4]** 21/11 29/17 39/12 46/25

**shows [7]** 9/22 9/24 16/2 16/3 16/5 20/7

# S

**shows... [1]** 44/3
**Shumway [3]** 2/22 63/9 63/10
**side [1]** 61/21
**sides [1]** 22/3
**signature [2]** 63/7 63/7
**significant [2]** 55/18 56/1
**signing [1]** 63/4
**silly [1]** 60/17
**Similarly [1]** 59/8
**simpler [2]** 41/24 58/13
**simply [12]** 11/7 11/22 12/23 15/7 17/10 21/18 28/11 30/19 32/11 42/20 43/15 49/19
**since [1]** 4/6
**sincere [1]** 38/9
**sincerely [1]** 56/16
**single [1]** 28/18
**sir [2]** 47/4 50/22
**situation [1]** 14/13
**situations [1]** 19/19
**six [2]** 8/8 10/24
**slide [1]** 19/5
**slightly [1]** 30/8
**so [75]**
**Sokol [1]** 2/19
**solely [1]** 36/15
**soliloquy [1]** 8/7
**SOLUTIA [1]** 1/7
**some [25]** 4/11 4/21 5/23 5/24 6/21 7/8 7/13 8/15 9/14 15/12 20/6 25/24 26/3 32/15 33/8 44/20 45/12 46/2 46/4 46/4 48/7 48/23 48/25 60/17 60/18
**somebody [3]** 6/17 14/17 15/14

**somehow [2]** 20/21 26/25
**someone [8]** 4/13 4/25 14/1 31/9 42/7 49/20 53/16 54/13
**something [13]** 6/16 11/4 12/4 13/1 14/8 15/19 19/11 27/15 33/19 39/7 43/5 48/24 55/2
**sometimes [3]** 15/17 25/21 35/18
**somewhere [4]** 20/23 22/1 50/5 53/24
**sorry [3]** 25/10 29/21 35/21
**sort [8]** 5/12 7/22 20/10 41/16 42/2 48/25 53/19 62/5
**source [1]** 27/19
**Sources [1]** 35/8
**Spalding [2]** 2/16 3/14
**spans [1]** 57/11
**speaking [4]** 8/12 30/2 35/16 46/2
**specific [13]** 9/11 11/17 13/11 13/13 14/9 14/13 15/6 20/16 26/4 43/13 44/8 46/8 49/18
**specifically [3]** 31/24 34/10 43/9
**specification [6]** 13/7 43/11 43/13 44/13 46/25 49/18
**specification that [1]** 44/13
**specifications [20]** 10/17 10/21 11/1 11/3 11/5 11/10 13/9 18/8 31/4 31/16 34/9 38/18 43/3 43/8 46/8 49/24 51/21 56/2 57/25 58/15

**specificity [2]** 14/16 14/20
**specified [3]** 20/5 44/4 55/22
**specifies [1]** 20/13
**specify [1]** 11/6
**specs [3]** 21/15 51/4 51/8
**speed [1]** 24/12
**St [1]** 2/20
**stage [5]** 5/18 28/8 28/18 39/19 41/10
**standard [14]** 4/19 4/20 4/22 4/23 6/22 6/24 7/1 9/11 10/2 12/5 13/12 13/13 14/11 40/15
**standards [4]** 9/20 17/24 40/7 40/19
**standing [1]** 35/24
**start [3]** 19/11 31/23 58/14
**started [2]** 40/19 57/20
**starting [1]** 3/6
**state [27]** 1/3 1/4 3/4 3/5 3/8 3/25 4/3 4/8 4/10 6/9 6/12 7/17 9/4 12/18 16/17 18/11 30/16 34/23 36/10 36/21 37/6 38/14 43/2 44/25 45/15 46/6 60/19
**State's [5]** 7/18 9/3 27/18 49/16 49/17
**state-filed [1]** 36/21
**stated [2]** 6/24 28/12
**statement [1]** 6/25
**statements [1]** 60/22
**states [8]** 1/1 1/19 2/22 6/22 24/11 24/13 49/10 54/14
**statute [6]** 4/7 4/12 6/19 10/4 12/17 30/23

**steel [2]** 32/1 32/3
**step [3]** 26/15 44/25 53/5
**stepping [1]** 27/22
**stick [3]** 30/10 43/15 58/13
**still [8]** 6/24 19/24 24/3 29/5 30/5 31/15 43/16 45/14
**Stoll [2]** 2/4 2/4
**stopped [2]** 23/18 47/21
**Street [3]** 2/5 2/11 2/17
**strong [1]** 47/14
**structure [2]** 8/2 36/3
**style [2]** 58/5 60/13
**subcontractor [5]** 13/21 19/19 19/25 29/12 50/20
**subcontractors [2]** 19/21 19/24
**subject [1]** 27/21
**subjection [5]** 4/15 5/3 5/19 40/8 47/17
**submit [5]** 21/19 27/16 34/22 44/8 45/17
**submitted [4]** 19/15 22/9 30/4 43/18
**subparts [2]** 17/17 17/18
**subsequent [1]** 6/22
**subset [1]** 61/13
**substantial [1]** 37/22
**such [3]** 10/9 23/20 47/23
**sued [1]** 4/8
**sufficient [5]** 19/23 39/21 42/20 51/15 62/3
**suggest [1]** 28/14
**suggesting [3]** 26/18

**suggestion [1]** 11/22
**suing [1]** 33/11
**Suite [4]** 2/5 2/8 2/14 2/17
**summary [3]** 27/9 40/21 41/8
**superior's [1]** 4/18
**supplemental [1]** 34/23
**supplied [1]** 45/18
**supplier [6]** 11/22 13/20 14/1 29/19 29/22 43/12
**supply [3]** 19/17 45/11 52/7
**supplying [1]** 29/14
**supported [1]** 28/5
**supports [1]** 45/14
**suppose [2]** 22/23 48/3
**supposedly [1]** 56/8
**sure [14]** 8/8 8/20 9/16 11/24 11/25 14/7 18/19 23/13 24/25 30/14 35/18 39/4 41/5 45/4
**surprise [1]** 40/25
**surprised [1]** 24/3
**surrounded [1]** 44/14
**suspected [1]** 27/19
**switching [1]** 42/3
**sympathetic [1]** 57/7
**systems [1]** 35/15

# T

**take [9]** 7/12 7/15 19/2 24/12 42/11 44/4 44/19 51/8 56/22
**taken [3]** 5/18 40/23 56/24
**taking [2]** 7/20 44/25
**talk [7]** 5/23 9/9 17/17 23/16 33/24 36/4 57/19

46/11
**talking [9]** 10/5 11/10 13/16 13/17 23/4 29/11 36/17 39/10 54/6
**talks [2]** 17/25 21/11
**tanks [1]** 32/3
**targeted [1]** 17/14
**tarring [1]** 26/18
**task [1]** 4/11
**tasks [1]** 4/18
**tax [9]** 16/3 16/6 16/13 16/21 22/16 22/18 22/20 24/4 24/9
**technical [1]** 21/15
**tell [4]** 30/19 31/8 38/6 60/1
**telling [11]** 10/12 16/4 28/15 46/9 50/12 50/13 51/17 51/17 53/3 53/12 54/20
**tells [6]** 31/2 50/8 51/12 52/9 52/11 59/23
**terms [1]** 59/17
**test [4]** 5/17 15/24 28/18 58/7
**than [8]** 8/25 18/16 19/6 26/22 27/8 40/24 45/8 59/1
**thank [34]** 3/15 3/16 8/24 9/5 9/5 18/15 19/10 21/21 30/6 30/7 30/12 34/4 34/19 34/21 35/20 36/1 38/12 39/14 42/25 43/1 43/22 45/24 47/3 49/11 49/12 50/21 50/23 55/3 55/6 55/12 55/13 56/21 62/9 62/10
**that [475]**
**that company [1]** 11/8
**that's [99]**
**their [12]** 10/7 17/7

**T**

**their... [10]** 21/18 26/19 27/17 27/19 33/25 34/1 36/12 36/20 39/7 49/7
**them [33]** 6/7 7/14 7/16 7/21 8/23 15/9 15/15 17/17 17/20 19/16 23/16 25/20 29/14 30/8 31/9 32/18 32/22 32/23 33/4 36/11 36/15 36/18 37/15 41/15 47/22 48/13 50/5 50/17 52/3 52/23 56/2 56/14 60/2
**themselves [1]** 52/6
**then [34]** 9/21 9/23 10/21 10/22 11/3 12/18 14/18 15/12 15/14 19/14 25/19 26/15 26/19 26/23 26/25 28/21 29/5 32/6 32/18 36/5 37/6 37/23 48/4 50/9 51/19 52/10 52/11 53/15 55/7 56/24 57/19 58/16 59/12 59/23
**theory [15]** 24/23 25/9 25/11 26/17 26/19 28/7 28/11 28/12 28/12 28/15 28/19 33/1 33/5 33/20 42/17
**there [53]** 4/19 5/19 7/22 7/23 7/24 8/15 9/13 12/18 12/23 13/10 13/12 14/18 14/19 14/22 14/25 16/25 17/8 17/11 18/3 21/11 22/10 22/10 23/8 24/4 24/6 27/14 30/4 30/19 32/15 34/11 34/13 35/22 38/18 38/23 43/8 43/13 43/19 43/20 44/4 46/21 49/17 51/16 52/4 53/4

55/25 56/3 56/4 57/24 58/1 58/3 59/21 61/23 62/7
**there's [49]** 4/21 5/4 6/21 7/2 7/8 7/12 10/23 12/11 14/19 14/20 14/24 14/25 15/4 15/5 17/6 18/1 18/13 19/18 22/1 24/7 24/16 27/13 30/22 30/23 32/10 33/4 33/10 33/23 34/7 38/21 38/25 43/24 45/22 46/7 47/1 49/19 49/20 49/21 51/9 57/10 57/21 58/23 60/21 60/22 62/1 62/1 62/3 62/6 62/7
**therefore [4]** 33/3 54/22 57/12 62/8
**Therminol [1]** 38/21
**these [29]** 7/3 17/2 18/12 18/14 18/25 19/19 20/22 22/24 29/14 30/3 30/10 30/20 32/11 32/18 32/21 34/17 36/10 38/4 39/7 41/3 42/19 44/11 45/13 46/25 48/14 52/3 52/22 60/19 61/22
**they [53]** 9/13 11/3 12/3 12/3 18/10 18/12 18/13 19/22 21/12 22/12 22/21 22/25 23/1 24/15 25/21 26/11 26/18 26/25 27/1 27/2 27/4 28/17 28/19 29/15 30/18 30/19 30/25 31/22 32/16 32/21 33/3 33/22 35/11 36/4 36/12 36/13 36/17 42/24 45/17 46/21 47/12 48/17 49/9 49/9 52/6 54/22 55/23 55/23

61/10 61/10
**they'd [1]** 45/12
**they'll [1]** 53/24
**they're [16]** 9/13 19/14 24/14 30/8 36/20 37/7 40/22 43/14 43/15 43/20 46/13 56/2 56/5 56/6 61/9 61/18
**they've [2]** 43/18 60/6
**thing [6]** 3/21 13/1 21/17 27/24 44/2 52/13
**things [13]** 7/18 8/12 16/19 20/22 27/13 30/22 31/5 36/13 37/11 37/13 38/2 41/15 52/3
**things: [1]** 5/2
**things: the [1]** 5/2
**think [90]**
**think it's [1]** 9/25
**thinking [1]** 7/9
**thinks [1]** 24/7
**third [5]** 2/23 5/12 35/22 45/10 46/17
**third-party [1]** 45/10
**third-to-last [1]** 35/22
**this [131]**
**those [14]** 5/20 7/18 8/4 9/25 25/17 26/3 40/7 46/2 46/8 48/2 48/10 48/12 53/4 54/2
**though [5]** 9/12 16/20 30/24 44/6 60/9
**thought [2]** 7/4 12/1
**three [11]** 5/2 5/7 5/8 5/21 7/22 15/24 18/23 29/2 38/16 43/6 46/6
**three-part [3]** 7/22 15/24 18/23
**threshold [1]** 39/21
**through [12]** 1/3 7/21 15/23 16/21 18/22

Case 3:18-cv-00238-MO Document 14d 09/02018 Page 88 of 91

**through... [7]** 22/10 22/16 27/7 33/21 46/6 53/14 61/4
**throughout [1]** 46/3
**thus [1]** 25/18
**tie [1]** 51/9
**tilt [1]** 7/9
**time [15]** 18/18 20/10 23/18 27/5 38/4 40/21 41/3 44/10 44/15 44/18 45/7 45/17 47/18 47/19 61/20
**times [1]** 39/3
**timetable [1]** 45/5
**today [6]** 8/10 26/6 27/24 40/24 44/23 44/24
**today's [2]** 6/8 38/5
**together [1]** 52/3
**toilet [1]** 13/8
**toilets [1]** 13/19
**told [4]** 25/8 25/11 41/21 52/25
**tons [2]** 36/6 36/7
**took [5]** 5/2 27/13 36/25 37/5 44/25
**tools [1]** 57/9
**topic [3]** 27/20 29/5 45/23
**topics [1]** 30/9
**tort [1]** 60/25
**touch [1]** 16/5
**towards [1]** 7/9
**transaction [1]** 20/14
**transcend [1]** 20/18
**transcript [3]** 1/17 63/5 63/6
**transfers [1]** 24/15
**transformer [3]** 50/16 50/18 50/18

**transformers [2]** 23/20 50/25
**Transport [1]** 35/23
**transported [1]** 36/8
**travel [1]** 61/10
**traversed [1]** 25/20
**treat [1]** 59/24
**trial [1]** 40/24
**triggers [1]** 6/14
**true [11]** 6/5 31/10 31/11 31/15 41/11 41/19 41/20 41/23 48/9 57/24 60/17
**try [1]** 54/8
**trying [6]** 8/19 12/21 14/6 44/23 44/24 45/15
**TSA [3]** 50/15 53/22 53/23
**turn [9]** 9/4 21/21 24/19 38/14 43/2 50/10 53/23 59/16 60/14
**turns [4]** 51/19 52/10 59/12 59/23
**TV [1]** 50/16
**two [12]** 5/3 5/15 5/19 9/25 15/12 22/10 24/17 30/19 30/22 36/16 47/20 61/22
**type [3]** 20/16 31/24 32/15
**typical [2]** 57/9 57/12

**U**

**U.S [9]** 18/6 18/7 18/8 29/20 29/23 34/10 36/5 46/19 54/13
**U.S.C [1]** 3/25
**ubiquitous [1]** 36/14
**under [27]** 3/25 4/2 4/5 4/15 4/17 5/1 5/3 5/6 5/15 5/18 16/24 18/13 18/24 24/11 24/13

**transformers [2]** 25/14 28/23 29/7 31/6 36/25 40/7 40/12 40/15 42/9 51/15 57/13 61/14
**underneath [1]** 36/3
**understand [14]** 11/25 12/9 12/22 14/7 28/3 28/4 35/2 37/3 37/16 44/9 45/5 54/18 54/24 60/16
**understandable [1]** 10/22
**understandably [1]** 39/3
**Understood [3]** 9/2 21/6 30/12
**unfair [1]** 42/3
**uniformly [1]** 28/6
**UNITED [3]** 1/1 1/19 2/22
**Unknown [1]** 17/4
**unless [1]** 43/24
**unobjected [2]** 7/13 7/14
**until [1]** 10/25
**unusual [2]** 42/6 59/15
**unwilling [3]** 8/16 54/10 60/10
**up [21]** 10/20 19/6 20/9 20/14 21/8 25/2 25/15 25/19 25/20 26/2 26/15 31/23 33/9 43/20 45/18 49/9 54/6 55/10 57/9 57/10 61/5
**upon [3]** 22/12 42/19 53/9
**us [24]** 3/9 10/3 11/4 11/15 23/10 26/18 32/2 39/21 45/17 45/21 45/21 47/8 47/15 50/12 51/18 51/21 52/4 52/6 54/23 56/6 58/13 58/15 59/10 59/13

# U

**use [11]** 11/22 18/9 35/14 47/11 47/21 49/15 54/25 55/20 55/23 55/23 58/5
**used [5]** 43/15 51/3 51/4 55/22 56/1
**useful [1]** 7/15
**uses [2]** 23/19 54/18
**using [1]** 49/6
**utilized [1]** 51/4

# V

**variant [1]** 45/25
**variation [2]** 43/24 59/21
**variety [2]** 53/10 61/4
**versus [5]** 5/25 21/9 26/10 33/24 42/3
**very [13]** 9/11 10/1 11/17 23/12 23/20 24/10 26/8 47/6 47/21 54/14 56/13 58/22 61/1
**via [1]** 60/25
**viable [1]** 7/24
**victory [1]** 60/11
**view [21]** 6/2 6/16 27/19 32/20 36/14 36/25 37/12 39/19 39/22 40/25 42/2 49/25 57/4 57/14 57/24 58/4 58/9 58/16 60/7 60/13 61/8
**violence [1]** 8/1
**virtually [1]** 25/6
**virtue [1]** 7/6
**voluntarily [2]** 35/13 47/20

# W

**WA [1]** 2/8
**walk [2]** 15/23 46/6

**want [58]** 5/23 5/23 7/10 8/1 8/8 9/8 9/9 10/13 10/14 10/24 10/24 10/24 11/2 11/4 11/21 11/25 12/11 12/22 13/4 13/8 13/19 14/21 15/9 15/9 16/7 19/4 20/12 21/7 23/13 24/2 24/14 29/5 30/5 31/3 31/20 31/23 31/25 32/12 35/11 36/17 40/17 41/5 43/8 43/25 45/17 47/18 50/3 51/12 51/18 51/19 53/24 56/3 56/5 57/19 58/2 58/9 59/5 59/9
**wanted [7]** 8/4 14/23 35/18 36/22 41/7 55/11 55/23
**wants [7]** 10/22 12/2 13/11 13/14 16/13 49/20 60/21
**war [2]** 25/18 37/19
**warned [2]** 29/20 29/23
**warning [3]** 21/15 34/11 34/13
**warns [2]** 18/8 34/9
**wars [1]** 20/18
**warship [1]** 27/6
**warships [1]** 33/21
**wartime [4]** 22/3 22/13 25/17 49/5
**was [34]** 7/5 8/19 8/20 12/1 12/8 20/6 21/11 21/13 21/13 21/25 22/2 22/11 22/15 23/10 23/22 29/16 29/17 30/3 30/5 34/11 34/13 35/19 37/19 38/25 44/13 46/16 47/23 48/3 49/6 51/3 51/7 55/4 56/16 58/20

**wasn't [1]** 34/16
**water [1]** 37/23
**waters [3]** 36/7 38/4 39/7
**Watson [22]** 4/16 6/21 6/25 9/9 9/11 9/11 10/3 10/3 12/5 13/12 13/13 15/24 16/24 18/24 19/23 28/23 31/17 38/16 51/16 58/5 60/13 61/22
**Watson's [2]** 14/11 16/19
**Watson-level [1]** 19/23
**Watson-style [2]** 58/5 60/13
**way [24]** 4/17 4/24 8/3 13/22 14/21 14/24 15/9 15/10 19/18 20/6 22/24 28/13 39/7 40/9 43/12 48/24 49/7 50/3 52/10 53/2 56/17 57/19 58/24 60/18
**ways [7]** 10/23 14/25 15/4 15/5 37/14 58/22 60/18
**we [117]**
**we'd [3]** 15/19 59/2 60/4
**we'll [4]** 5/15 11/24 15/13 62/9
**we're [23]** 10/5 13/24 13/24 14/18 14/19 26/20 28/24 29/3 29/11 33/11 33/25 37/6 38/11 39/10 44/6 44/10 47/19 50/12 53/16 54/20 55/14 58/12 59/6
**we're asserting [1]** 28/24
**we've [17]** 8/8 10/16 19/15 22/9 30/4 40/14

# W

**we've... [11]** 41/2 44/3 45/14 45/19 45/23 46/20 46/24 49/8 55/9 56/9 58/6

**website [4]** 27/18 27/18 34/24 35/9

**weigh [1]** 42/19

**well [43]** 9/18 10/11 11/2 11/3 15/18 16/13 16/14 19/5 19/22 19/24 20/11 20/15 21/8 22/8 22/19 22/23 23/8 24/21 25/5 25/8 26/8 27/8 27/17 28/17 29/10 33/6 36/19 38/8 39/24 40/6 40/23 40/25 41/5 42/21 48/3 48/12 49/2 50/6 50/24 52/8 52/18 56/7 60/21

**went [3]** 3/19 17/3 50/1

**were [25]** 17/13 20/5 22/12 23/16 23/19 25/17 25/21 27/16 29/12 29/14 29/15 30/2 33/2 33/22 35/16 35/17 36/6 37/20 38/2 40/16 41/3 41/6 41/13 46/15 48/17

**Westinghouse [1]** 29/13

**what [79]**

**what's [8]** 4/3 4/5 9/10 9/24 15/24 17/5 24/19 33/16

**whatever [3]** 3/18 24/14 60/25

**whatsoever [2]** 32/9 38/22

**when [15]** 6/8 6/12 10/5 12/23 13/1 20/3

21/13 25/18 29/14 31/6 35/16 42/22 45/21 52/6 54/23

**where [21]** 3/21 4/13 13/11 13/12 15/2 18/12 25/4 25/13 25/21 25/25 26/5 26/10 28/9 37/24 45/18 46/11 48/22 52/25 53/4 53/22 59/21

**whether [17]** 5/17 5/21 6/21 7/5 7/8 13/15 14/14 14/15 18/2 24/4 39/4 39/8 40/12 42/20 45/12 48/25 60/7

**which [22]** 5/10 12/1 19/12 23/18 25/19 27/17 29/6 36/3 37/22 46/17 46/22 46/22 47/10 52/20 54/6 54/8 54/18 54/25 55/20 56/9 59/16 61/2

**while [2]** 33/22 45/21

**who [12]** 4/25 12/19 14/1 15/14 18/4 21/3 22/19 46/15 49/20 52/5 52/14 53/14

**whole [3]** 25/20 27/13 52/8

**wholeheartedly [1]** 36/12

**whom [1]** 45/11

**why [4]** 10/3 22/14 22/19 60/16

**wide [1]** 61/4

**widely [1]** 49/6

**widespread [1]** 37/19

**will [8]** 3/22 8/3 8/5 20/17 22/12 25/6 40/18 45/7

**Williamson [1]** 2/14

**willing [1]** 8/2

**win [2]** 40/23 41/8

**windows [1]** 10/25

**wire [2]** 51/1 51/5

**wisdom [1]** 54/23

**wish [1]** 39/15

**within [1]** 20/21

**without [4]** 38/10 45/20 57/9 63/6

**won't [6]** 5/14 14/2 14/3 40/25 43/7 44/21

**word [1]** 40/9

**words [2]** 42/22 55/21

**work [3]** 14/3 14/3 50/14

**worked [1]** 38/3

**works [1]** 21/5

**world [2]** 25/18 37/8

**worth [2]** 6/6 45/8

**would [39]** 6/16 6/17 12/10 12/17 12/18 12/19 14/10 14/13 15/20 17/16 20/8 21/18 23/5 23/23 27/7 27/16 28/2 29/6 30/15 32/16 35/4 35/6 37/22 39/6 40/15 41/7 43/15 44/2 44/7 44/9 47/10 48/2 48/4 48/17 49/9 51/7 55/8 56/17 60/16

**wouldn't [2]** 20/6 52/12

**wound [5]** 25/19 25/20 45/18 49/9 54/6

**wrinkle [1]** 35/7

**write [1]** 52/6

**written [2]** 24/5 56/16

**wrong [1]** 37/7

**Wyatt [1]** 2/14

# Y

**Yeah [1]** 54/5

**year [1]** 44/13

**years [8]** 20/19 28/9 34/14 37/19 40/20

**years... [3]** 43/19 44/11
47/20
**yes [15]** 6/23 13/6
14/13 15/16 15/21
16/22 17/11 17/19
22/17 38/17 47/5 48/13
48/17 54/7 55/16
**yet [3]** 28/14 30/5
45/10
**Yoona [2]** 2/4 3/8
**you [253]**
**you'd [8]** 10/23 21/3
28/22 30/8 41/6 41/14
48/15 55/7
**you'll [2]** 8/22 40/23
**you're [19]** 9/1 11/13
11/14 11/16 13/2 13/15
13/17 14/1 23/4 26/24
27/3 27/5 28/18 33/12
36/17 37/7 37/7 44/23
44/24
**you've [16]** 8/2 8/12
10/25 17/17 20/17
21/24 22/9 28/12 37/4
37/12 40/4 40/12 41/7
42/14 48/20 59/25
**your [115]**
**yours [1]** 60/20

**Z**

**Zidell [1]** 46/22
**Zimmer [4]** 2/16 3/12
3/13 40/22